**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RICHARD SIMON, JANELLE SIMON,
ERIC CURTIS and JOSE VEGA,

Plaintiffs,

vs. No. CIV 12-0096 JB/WDS

HEATH TAYLOR, JERRY WINDHAM,
PAT WINDHAM, MARTY L. COPE, ARNOLD
J. REAL, B. RAY WILLIS, THOMAS FOWLER,
LARRY DELGADO, and THE NEW MEXICO
RACING COMMISSION,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendants Heath Taylor, Jerry Windham and Pat Windham's ("Defendants") Motion to Dismiss Under Rule 12(b) and Memorandum in Support Thereof, filed May 9, 2012 (Doc. 7)("Motion to Dismiss").[1] The Court conducted a hearing on September 24, 2012. The primary issues are: (i) whether New Mexico law provides a cause of action for prospective economic losses between competitors in a sporting contest; (ii) whether the Plaintiffs have a private right of action under the New Mexico Horse Racing Act, N.M. Stat. Ann. §§ 60-1A-1 *et seq.*, and under the New Mexico Racing Commission's rules and regulations promulgated pursuant to the Act; and (iii) whether collateral estoppel bars the

[1] The Plaintiffs also brings claims against the New Mexico Racing Commission and against members of the New Mexico Racing Commission during the operative time period Marty L. Cope, Arnold J. Rael, B. Ray Willis, Thomas Fowler, and Larry Delgado (collectively, the "State Defendants"). *See* Plaintiffs' Original Complaint ¶¶ 105-10, at 19-20, filed January 31, 2012 (Doc. 1) ("Complaint"). The State Defendants do not join the Defendants' Motion to Dismiss.

Plaintiffs' claims. The Court will grant the Motion to Dismiss in part and deny it in part.[2]

The Court rejects the Defendants' argument that New Mexico law does not support a cause of action for prospective economic losses between competitors in a sporting contest, because public policy militates against litigating the winner of a sporting event, the speculative nature of the outcome of a sporting event bars litigation of the claims, causes of action premised on a rules violation that an administrative agency already has determined did not occur are not viable, and the Complaint does not state claims for intentional interference with prospective contractual relations or prima facie tort. The Court does not believe that the Supreme Court of New Mexico would hold that the public policy of preventing a flood of litigation bars the Plaintiffs' claims for prospective economic losses, because the Court holds only that public policy does not preclude litigation between sporting competitors premised on a rules violation where the administrative body charged with adjudicating the violation conducted an unfair and incomplete review, the agency insulated itself from all judicial review, and the agency denied the Plaintiffs the right to participate in the administrative process despite the Plaintiffs' demonstrated interest in the outcome.

Furthermore, the Court does not believe that the Supreme Court of New Mexico would hold that the speculative nature of the outcome of the sporting event precludes the Plaintiffs' claims, because, on the facts alleged, the outcome of the horse race was not uncertain. If the New Mexico Racing Commission ("Commission") had upheld the stewards' disqualification of Stolis

[2] The Court entered an Order, filed March 29, 2013 (Doc. 30), denying the Motion to Dismiss, stating: "The Court will . . . issue an opinion more fully detailing its rationale for this decision." Doc. 249 at 1 n.1. This Memorandum Opinion and Order is the promised opinion. This Memorandum Opinion and Order also amends the March 29, 2013, Order to the extent that order differs from the holding contained herein.

Winner, the Plaintiffs' horse was certain to be the first place finisher of the race. The Plaintiffs also allege that their horse was an extremely close second, finishing only a "neck" behind Stolis Winner, Complaint ¶ 12, at 4, and thus the allegations plausibly indicate that the Plaintiffs had at least a high probability of winning the race.

In addition, the Court does not believe that the Supreme Court of New Mexico would hold that the Commission's finding that the Defendants did not violate the rules of racing is fatal to the Plaintiffs' claims, because the Court's adjudication of the Plaintiffs' tort claims is separate and distinct from the Commission's adjudication of the regulatory and disciplinary issues, and the Court is entitled to determine anew whether the Plaintiffs have alleged facts sufficient to state a claim for relief premised on a violation of the rules of racing. The Court also does not believe that the Supreme Court of New Mexico would dismiss the Plaintiffs' intentional interference claim or the Plaintiffs' prima facie tort claim premised on the intentional act of improperly training Stolis Winner, because the Complaint alleges that the Defendants interfered with the Plaintiffs' prospective contractual relations and because the Complaint contains allegations that satisfy the elements of a prima facie tort. The Court concludes, however, that the Supreme Court of New Mexico would dismiss the Plaintiffs' prima facie tort claim premised on the act of providing Stolis Winner with a performance enhancing substance, because this act does not constitute an intentional *lawful* act as required by the first element of a prima facie tort claim. Accordingly, the Court will deny the Motion to Dismiss the common-law claims with the exception of the prima facie tort claim premised upon the intentional act of providing Stolis Winner with caffeine.

The Court further rejects the Defendants' argument that the Plaintiffs do not have a private right of action under the New Mexico Horse Racing Act, and under the Commission's rules and

regulations promulgated pursuant to the Act. The Court concludes that it is the public policy of New Mexico to ensure that horse racing is conducted fairly and honestly, and to protect the participants of racing. The Court concludes that the Supreme Court of New Mexico would likely hold that, pursuant to *National Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. 590, 874 P.2d 798, 801 (Ct. App. 1994), this public policy forms the predicate for an implied private right of action under the New Mexico Horse Racing Act. Furthermore, the Court believes that the Supreme Court of New Mexico would likely find that the legislative intent behind the Horse Racing Act supports an implied private right of action.

The Court also rejects the Defendants' argument that collateral estoppel precludes the litigation of the Plaintiffs' claims. Although the Defendants may assert the affirmative defense of collateral estoppel in a motion to dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, they may prevail on their motion only if the facts necessary to support a finding of preclusion appear on the face of the Complaint. Because the Plaintiffs' allegations do not support a legal conclusion that the Plaintiffs were in privity with the State prosecuting the administrative complaint, the Defendants cannot prevail on their motion. Furthermore, the Court will deny the Motion to Dismiss, because the application of collateral estoppel to the facts of this case would be fundamentally unfair given that the Plaintiffs have alleged that the Commission was not neutral, that the administrative process was "fatally defective," and that the Commission wrongfully excluded them from the administrative process. *See* Complaint ¶ 28, at 6; ¶¶ 40-41, at 8; ¶¶ 43, 44, at 9; ¶¶ 46, 48, at 10; ¶ 78, at 15.

**FACTUAL BACKGROUND**

The Complaint contains the following factual allegations. This dispute arises out of a

horse race called the All American Futurity Run at Ruidoso Downs Race Track in New Mexico on September 1, 2008. *See* Complaint ¶ 1, at 2. The All American Futurity is widely recognized in the quarter horse racing world as the major quarter horse event. *See* Complaint ¶ 3, at 3. The winning horse in the event receives a purse of approximately one million dollars. *See* Complaint ¶ 3, at 3. The winner also receives publicity, and earns for its owners tremendous stud and breeding fees. *See* Complaint ¶¶ 3-4, at 3.

Stolis Winner, a horse that Defendants Jerry and Pat Windham owned and Defendant Heath Taylor trained, just barely crossed the finish line ahead of Jet Black Patriot, a horse that the Plaintiffs Richard and Janelle Simon owned, Plaintiff Eric Curtis trained, and Plaintiff Jose Vega rode. *See* Complaint ¶¶ 2, 9-11, at 2-3. Jet Black Patriot finished the race approximately "a neck" behind Stolis Winner. Complaint ¶ 12, at 4. Jet Black Patriot was recorded as winning second place. *See* Complaint ¶ 8, at 3.

A licensed veterinarian collected test samples for banned substances for each of the horses that competed in the race and divided the test samples for each horse into two containers. *See* Complaint ¶¶ 13-14, at 4. Both of the samples taken from Stolis Winner tested positive for caffeine. *See* Complaint ¶¶ 16, 21, at 4-5. The rules and regulations promulgated by the Commission list caffeine as a level 2 drug. *See* Complaint ¶ 17, at 5. The substance is banned pursuant to the Commission's no-tolerance policy for level 2 drugs. *See* Complaint ¶ 18, at 5-6. In violation of the Commission's rules, New Mexico officials released the race purse to the Defendants before all of the test results were received, but after the staff had received a suspicious test. *See* Complaint ¶ 23, at 5.

The Commission scheduled a hearing of the stewards[3] to consider disciplinary action against the Defendants. *See* Complaint ¶¶ 22, 24, at 5. The Plaintiffs were not permitted to bring their own administrative complaint against the Defendants for violating the Commission's rules, because the facts underlying the violations were concealed until after the deadline to file a complaint. *See* Complaint ¶ 25, at 6.

After conducting a hearing on January 8, 2009, the stewards disqualified Stolis Winner and declared Jet Black Patriot the winner. *See* Complaint ¶ 24, at 5. The stewards entered two orders. *See* Complaint ¶ 24, at 5. The first order issued penalties against Taylor, Stolis Winner's trainer, and the second order altered the winners of the race, placing the Plaintiffs' horse first. *See* Complaint ¶ 24, at 5. Taylor appealed the decision and requested a de novo review. *See* Complaint ¶ 26, at 6. For the first time in New Mexico racing history, the Commission appointed a three-judge administrative panel. *See* Complaint ¶ 26, at 6.

The Plaintiffs attempted to participate in the appeal by filing a motion to appear at the administrative panel's hearing. *See* Complaint ¶ 27, at 6. The panel recommended that the Commission deny the motion to appear. *See* Complaint ¶ 28, at 6. Although the Plaintiffs demonstrated that they "ha[d] an effected [sic] interest sufficient to create standing in the case," which is the test set forth in New Mexico Administrative Code 15.2.1.9(C)(1)(d) for an interested party to intervene, they were prohibited from participating in the review process. *See* Complaint ¶ 29, at 6. In an effort to obtain a final ruling regarding the administrative panel's

[3] Section 60-1A-2 of the Horse Racing Act defines "steward" as "an employee of the commission who supervises horse races and oversees a race meet while in progress, including holding hearings regarding licensees and enforcing the rules of the commission and the horse racetrack." N.M. Stat. Ann. § 60-1A-2(GG). One of the duties of the stewards includes conducting hearings on complaints brought on the stewards' motion or on receipt of a complaint from an official or third party. *See* N.M. Admin. Code § 15.2.1.9(B)(2)(a).

recommendation to exclude them, the Plaintiffs filed a petition for writ of certiorari to the First Judicial District Court, State of New Mexico. *See* Complaint ¶ 33, at 7.

The New Mexico Assistant Attorney General prosecuting the administrative case requested that Taylor be required to post a bond in the amount of the purse that was prematurely released, and the Commission scheduled a hearing on October 29, 2009, to consider this request. *See* Complaint ¶ 34, at 7. The Plaintiffs' counsel attended the hearing in an attempt to have the Plaintiffs' arguments heard. *See* Complaint ¶ 36, at 8. No representative from the Attorney General's Office appeared to argue on behalf of the motion to require a bond. *See* Complaint ¶ 37, at 8. Taylor's counsel appeared and vigorously argued against posting a bond. *See* Complaint ¶ 38, at 8. The Plaintiffs' counsel asked to present argument, but the Commission denied the request. *See* Complaint ¶¶ 39, 40, at 8.

On November 3, 2009, the First Judicial District Court, State of New Mexico, held a hearing on the Plaintiffs' petition for writ of certiorari. *See* Complaint ¶ 41, at 8. The court ruled that it lacked jurisdiction, because the Commission had not entered a final order with respect to whether to adopt the administrative panel's recommendation to exclude the Plaintiffs from the review process. *See* Complaint ¶ 41, at 8.

On November 19, 2009, the Commission conducted a hearing to determine whether to permit the Plaintiffs to participate in the administrative review hearing. *See* Complaint ¶ 43, at 9. The Commission adopted the administrative panel's recommendation to exclude the Plaintiffs from the process. *See* Complaint ¶ 43, at 9. Thereafter, the Plaintiffs filed a second petition for writ of certiorari with the First Judicial District Court, State of New Mexico, and requested an emergency hearing. *See* Complaint ¶ 44, at 9-10. The state court again denied the Plaintiffs the

right to participate in the administrative proceeding. *See* Complaint ¶ 44, at 9-10.

On May 11, 2010, the administrative panel conducted an evidentiary hearing in support of Taylor's request for a de novo review of the stewards' decision. *See* Complaint ¶ 45, at 10. Counsel for the Plaintiffs appeared at the hearing, but the panel denied the Plaintiffs the right to participate. *See* Complaint ¶ 46, at 10. At the hearing's conclusion, the administrative panel found in Taylor's favor. *See* Complaint ¶ 46, at 10. For the "first known time in history, the Racing Commission was recommended to turn a blind eye to proven doping." Complaint ¶ 46, at 10. The Commission "blindly adopted" the administrative panel's decision without evidence or serious inquiry. Complaint ¶ 47, at 10. "The Commission determined Plaintiffs were not entitled to the race purse even though . . . the race rules dictated that Stolis Winner be disqualified." Complaint ¶ 98, at 18.

The evidentiary hearing was "fatally defective in numerous respects." Complaint ¶ 48, at 10. First, a few weeks before the evidentiary hearing the "longtime Assistant Attorney General assigned to prosecute cases involving the Commission was removed from the case for alleged unknown health concerns," and "[a] new Assistant Attorney General, with no experience prosecuting Racing Commission cases, was assigned to the matter." Complaint ¶¶ 49, 50, at 10-11. Second, the "new Assistant Attorney General, entered into stipulations with Heath Taylor's counsel as to various facts" and "[a]t least one of those stipulations was blatantly false." Complaint ¶ 51, at 11. Specifically, the State stipulated that there was no theophylline, a caffeine metabolite, in the horse's blood at the time of the test, when in fact the under-oath testimony from the laboratory personnel who performed the test was that theophylline was likely present. *See* Complaint ¶ 51, at 11. The presence of theophylline is important, because it proves that Stolis

Winner metabolized the caffeine. *See* Complaint ¶ 51, at 11. Third, none of the sworn depositions were offered as evidence, including the testimony from the laboratory personnel that theophylline was likely present, as well as depositions from other laboratory personnel, test barn staff, Commission staff, and race track staff. *See* Comp. ¶¶ 51-53, at 11. Fourth, the State made virtually no objections to Taylor's evidence, which was both irrelevant and not scientific, conducted no significant cross-examination of Taylor's witnesses, *see* Complaint ¶¶ 58, 59, 61, at 12-13, and failed to present evidence of Taylor's "substantial history of doping violations by racing authorities around the nation." Complaint ¶ 62, at 13. Fifth, Taylor's lawyers offered argument, without evidence, that there was a "possibility" of contamination of the horse during the race or in the test barn, and the State failed to challenge this evidence or present contrary deposition testimony indicating that there was no contamination. *See* Complaint ¶¶ 63, 69, 70, at 13-14.

Sixth, the Commission has "never (a) imposed any other penalty other than loss of purse for a positive caffeine test, and (b) released a purse of this size without first obtaining clean drug tests." Complaint ¶ 73, at 14. "[T]he New Mexico Racing Commission could face liability for the negligent release of purse funds should Plaintiffs pursue a lawsuit in New Mexico state or federal court," Complaint ¶ 74, at 14, and "could avoid liability if the administrative process "'blesses'" the Commission's behavior in this case." Complaint ¶ 77, at 15. Thus, the "Commission benefitted by not aggressively pursuing Defendant Taylor insofar as it [wa]s a way to cover for [its] serious error in releasing the race purse prematurely." Complaint ¶ 78, at 15.

Winning the All American Futurity entitled the owners of the first place horse to a one million dollar purse. *See* Complaint ¶ 92, at 17. The second place horse owners were entitled to

a purse of $285,000. *See* Complaint ¶ 92, at 17. Because of the significance of the All American Futurity within the racing community, first place horses are valuable for marketing, stud fees, and other benefits to the horse owner, trainer, and jockey. *See* Complaint ¶¶ 93, 94, at 17. A horse recorded as placing second in the race is substantially less valuable than the horse placing first. *See* Complaint ¶ 94, at 17. "Plaintiffs to this day have not had an opportunity to present their case to any tribunal much less a fair and impartial tribunal." Complaint ¶ 99, at 18.

The Plaintiffs filed a complaint in the United States District Court for the Western District of Texas on November 11, 2008, seeking nearly the same relief as the relief requested in the Complaint in this case. *See Richard Simon, Janelle Simon & Eric Curtis v. Health Taylor, Jerry Windham & Pat Windham*, No. CIV 08-0827 LY (W.D. Tex., filed Nov. 11, 2008)("Texas Complaint"); Complaint ¶ 82, at 15-16. In the Texas Complaint, however, the Plaintiffs did not name the State Defendants, but rather named only Heath Taylor, Jerry Windham, and Pat Windham. On November 4, 2010, the Honorable Lee Yeakel, United States District Judge for the Western District of Texas, entered an order dismissing the Texas Complaint for failure to state a claim upon which relief can be granted. *See Richard Simon, Janelle Simon & Eric Curtis v. Health Taylor, Jerry Windham & Pat Windham*, No. CIV 08-0827 LY, Order at 6, filed Nov. 5, 2010 (Doc. 1-1)("W.D. Tex. Order"). Judge Yeakel's order was based, in part, on the Commission's decision that no violation of the rules of racing had occurred and that Stolis Winner was the first place finisher of the race. *See* W.D. Tex. Order at 5. The Plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit. *See Richard Simon*, *Janelle Simon*, *Eric Curtis & Jose Vega v. Heath Taylor, Jerry Windham, & Pat Windham*, No. 10-51148, Appeal (5th Cir., filed Apr. 29, 2011)(Doc. 1-2). On December 22, 2011, the United States Court of Appeals

for the Fifth Circuit vacated the district court opinion and ordered the case dismissed for lack of diversity jurisdiction. *See Richard Simon, Janelle Simon, Eric Curtis & Jose Vega v. Heath Taylor, Jerry Windham, & Pat Windham*, No. 10-51148, Order (5th Cir., filed Dec. 22, 2011)(Doc. 1-3)("5th Cir. Order"); Complaint, ¶ 88, at 16. This dismissal was without prejudice. *See* 5th Cir. Order at 3; Complaint ¶ 88, at 16.

**PROCEDURAL BACKGROUND**

On January 31, 2012, the Plaintiffs filed their Complaint in this district, alleging that the Court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332(a). The Complaint involves the same allegations and claims for relief against the non-state Defendants as the Texas Complaint, but adds additional claims against the State Defendants. *See* Complaint ¶¶ 153-67, 168-73, at 26-28, 29. *See also supra* note 1. Specifically, at issue in the Motion to Dismiss are the following four counts against the non-state Defendants: (i) intentional interference with prospective contractual relations; (ii) fraud; (iii) prima facie tort; and (iv) negligence. *See* Complaint ¶¶ 127-52, at 23-26.

In support of their claim for intentional interference with prospective contractual relations, the Plaintiffs allege in relevant part: the "Plaintiffs had an economic relationship with third . . . parties, with the probability of future economic benefit to the Plaintiffs," Complaint ¶ 128, at 23, and the Defendants' "actions of intentionally providing Stolis Winner with performance substances were designed to disrupt these relationships," Complaint ¶¶ 129, 130, at 23. In support of their claim for fraud, the Plaintiffs allege in relevant part: the "Defendants Windham and Taylor made false representations to Plaintiffs that Stolis Winner had been trained in compliance with New Mexico Racing Commission Rules." Complaint ¶134, at 24, and the

"Defendants . . . further represented Stolis Winner was not under the influence of substances prohibited by New Mexico Racing Commission Rules," Complaint ¶ 135, at 24. In support of their claim for prima facie tort, the Plaintiffs allege that the "Defendants Windham and Taylor made an intentional act to improperly train Stolis Winner or provide the horse with performance enhancing substances." Complaint ¶ 141, at 25. In support of their claim for negligence, the Plaintiffs allege in relevant part: (i) the "Defendants Windham and Taylor owed a duty to Plaintiffs to comply with the standards of race horse owners and trainers;" and (ii) the "Defendants . . . owed a duty to Plaintiffs to comply with the New Mexico Racing Commission Rules in all respects before allowing Stolis Winner to compete in the All American Futurity." Complaint ¶¶ 148, 149, at 25-26.

The Complaint seeks the following relief: (i) an order to the Commission to release all the blood and urine samples taken from any horse on the day of the race so that the samples can be tested for the presence of caffeine to determine whether contamination occurred; (ii) an order prohibiting the Defendants from stating, advertising, or declaring that Stolis Winner was the winner of the 2008 All American Futurity; (iii) an order declaring Jet Black Patriot the winner of the 2008 All American Futurity; (iv) an order requiring the Defendants to state that a court has declared Jet Black Patriot the winner of the 2008 All American Futurity when inquired; (v) an order awarding the Plaintiffs the difference in purse between the first and second place finishers at the All American Futurity; (vi) an order awarding the Plaintiffs the difference in value of Jet Black Patriot had he been declared the winner of the All American Futurity without court intervention; (vii) an order awarding the Plaintiffs reasonable stud fees and other income Jet Black Patriot would have earned but for the Defendants' wrongful conduct; (viii) in the alternative to an order awarding

the race purse and a declaration of the race order, an order requiring the Commission to conduct a new hearing, allowing the Plaintiffs to present evidence and argument, and granting the Plaintiffs the right to appeal the decision of the hearing if necessary; and (ix) an order awarding the Plaintiffs their reasonable attorneys' fees and costs incurred in prosecuting this suit. *See* Complaint ¶ 175, at 30.

On May 9, 2012, the Defendants filed the Motion to Dismiss. *See* Motion to Dismiss. The Defendants advance three primary arguments in support of their Motion to Dismiss: (i) the Plaintiffs fail to state claims for relief for intentional interference with prospective contractual relations, fraud, prima facie tort, and negligence, because "there is no cause of action for prospective economic losses between competitors in a sporting contest," Motion to Dismiss at 6; (ii) the "Plaintiffs lack standing and have failed to state a claim, because the applicable statutes and regulations do not authorize a private right of action," Motion to Dismiss at 9; and (iii) the "New Mexico Racing Commission's determination that there has been no violation of the applicable statutes and regulations precludes Plaintiffs' claims" pursuant to the doctrine of collateral estoppel. Motion to Dismiss at 10.

With respect to their first argument, the Defendants contend that New Mexico public policy bars tort claims for prospective economic losses between competitors in a sporting contest. *See* Motion to Dismiss at 7-9. The Defendants argue that "it is not for the courts to litigate the outcome of competitive sporting events and second-guess the regulatory body of the sport and the sanctioned official results." Motion to Dismiss at 8 (citations omitted). According to the Defendants:

> If Plaintiffs have a valid claim, it is not difficult to imagine how the results of any and all sporting events will be held in limbo during years of subsequent litigation.

> This Court could be asked to review each and every call made by umpires during Albuquerque Isotopes games because a player with better statistics obviously could have garnered a larger contract or a call-up to the Major Leagues. Obviously, policy considerations argue against this Court being bogged down in determining the "winner" of a horse race or baseball game.

Motion to Dismiss at 9. The Defendants also argue that the Plaintiffs have not alleged facts indicating that Jet Black Patriot would have won but for the presence of caffeine in Stolis Winner's system and that the Plaintiffs' claims are, therefore, speculative. *See* Reply at 2. The Defendants further maintain that the Plaintiffs do not state a claim for prospective economic relief, because the Commission already determined that the Defendants did not violate the rules and all of the Plaintiffs' causes of action are "premised on a finding that Stolis Winner ran the 2008 All American Futurity in violation of the New Mexico Racing Commission regulations." Motion to Dismiss at 6.

With respect to their second primary argument -- i.e., that the Plaintiffs do not have a private right of action under the New Mexico Horse Racing Act, or under the Commission's rules and regulations -- the Defendants maintain that, because "the relevant statutes and regulations relating to horse racing in New Mexico [do not] elicit an intention to sanction the [Plaintiffs'] claimed private right of action, the [Plaintiffs] are precluded from asserting any private right of action." Motion to Dismiss at 9 (citations omitted). Given the absence of legislative intent, the Defendants argue that the Plaintiffs do not have standing under the racing statute and regulations, and that the Court therefore should dismiss the Plaintiffs' claims. *See* Motion to Dismiss at 10.

With respect to their third primary argument, the Defendants maintain that the Plaintiffs' claims are barred by collateral estoppel. *See* Motion to Dismiss at 10. The Defendants argue that federal courts must give preclusive effect to determinations of state agencies acting in a

judicial capacity, *see* Motion to Dismiss at 10 (citing *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 798-99 (1986); *Mascarenas v. City of Albuquerque*, 2012-NMCA-031, 274 P.3d 781 (Ct. App. 2012)), and the Defendants contend that the Commission acted in an adjudicatory capacity when it conducted a "lengthy trial-like hearing process, . . . resolved disputed issues," and "determined no violation occurred and the order of finish would stand," Motion to Dismiss at 11. The Defendants further argue: "While Plaintiffs were not a named party to the administrative proceedings, they are bound by privity because, under New Mexico law, the New Mexico Racing Commission acted to vindicate their interests during the proceedings at issue." Motion to Dismiss at 11. Thus, according to the defendants, the Plaintiffs' interests "were necessarily represented by the administrative prosecutor." Motion to Dismiss at 12. Furthermore, the Defendants maintain that, under New Mexico law, an agency's representation is presumed to be adequate when the state is a named party to an action. *See* Motion to Dismiss at 12 (citing *New Mexico Right to Choose/NARL v. Johnson*, 126 N.M. 788, 975 P.2d 841, 848 (1998)). According to the defendants, "[b]ecause the interests of the Plaintiffs were adequately represented in the New Mexico Racing Commission proceedings, the Plaintiffs are bound by the Racing Commission's adverse findings." Motion to Dismiss at 12.

On May 23, 2012, the Plaintiffs filed the Plaintiffs' Richard Simon, Janelle Simon, Eric Curtis, and Jose Vega, Response to Defendants' Motion to Dismiss (Doc. 11) ("Response"). In opposition to the Defendants' first argument that "there is no cause of action for prospective economic losses between competitors in a sporting contest," Motion to Dismiss at 6, the Plaintiffs contend: "Though no racing cases such as the instant can be located in New Mexico opinions, New Mexico law clearly permits the claims raised in this case" pursuant to the general tort theories of

intentional interference with prospective contractual relations, fraud, prima facie tort, and negligence. Response at 17-20. Furthermore, the Plaintiffs argue that damages are not speculative, because New Mexico courts follow the English common law, *see* Response at 21 (citing N.M. Stat. Ann. § 38-1-3), and the English common law "plainly recognize[s] th[at the] damaged party from a cheated contest or sport [is] entitled to recover his damages" for the value of the lost chance to win. *See* Response at 21 (citations omitted). Moreover, according to the Plaintiffs, the weight of authority in this country permits either "the recovery of the benefits that reasonably would have been earned . . . [or] the value of the chance to win when the Plaintiff is unable to prove he would have won but for the wrongful conduct." Response at 22 (citations omitted).

With respect to the Defendants' second argument, that the Plaintiffs lack standing, because the Commission's regulations do not authorize a private right of action, *see* Response at 9, the Plaintiffs distinguish the authorities the Defendants cite: "The Defendants cite . . . federal court opinions but these opinions merely find that Congress is presumed not to create a cause of action by statute unless the federal statute clearly gives a private right of action." Response at 26 (citations omitted). The Plaintiffs argue that they "are not alleging causes of action created by or related to a federal statute," Response at 26, and that in determining whether a private right of action exists pursuant to a state statute, a court may look beyond legislative intent to public policy in exercising common-law authority to recognize a private right of action, *see* Response at 27 (citing *Nat'l Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. 590, 593, 874 P.2d 798, 801 (Ct. App. 1994)).

With respect to the Defendants' third primary argument -- i.e., that collateral estoppel

precludes the Plaintiffs' claims, *see* Response at 10 -- the Plaintiffs argue that the requirements necessary to find preclusion are not present, because the Plaintiffs were not in privity with the State prosecuting the administrative action, and the issue precluded was not actually litigated and decided in the prior proceeding. *See* Response at 30 (citing *Rex v. Mfr. Hous. Comm.*, 134 N.M. 533, 80 P.3d 470 (Ct. App. 2003)). First, the Plaintiffs contend they were not in privity with the State prosecuting the administrative case, because the State opposed the Plaintiffs appearing in the case, was trying to avoid liability for wrongfully paying the purse and was motivated not to pursue the disciplinary charges, mishandled the prosecution of the case, and is charged with enforcing the Commission's rules and regulations and not with seeking recovery of the Plaintiffs' economic damages. *See* Response at 31. Furthermore, the Plaintiffs maintain that the Defendants' authorities are distinguishable and do not support the proposition that New Mexico law creates a presumption that the State adequately represents the interests of private parties, because the authorities address preclusion in the context of the right to intervene and not in the context of collateral estoppel. *See* Response at 31.

Second, the Plaintiffs argue that the Defendants cannot establish the third requirement of collateral estoppel -- i.e., that the issue precluded was actually litigated and decided in the prior proceeding. *See* Response at 30-31 (citing *Rex v. Mfr. Hous. Comm.*, 134 N.M. 533, 80 P.3d 470 (Ct. App. 2003)). The Plaintiffs cite *Gonzales v. McDow* for the proposition that a party seeking to invoke collateral estoppel must "introduce a sufficient record of the prior proceedings to enable the court to pinpoint the exact issues previously litigated," and for the proposition that at least one court has determined that "simply introduc[ing] the decision of the state court" will not suffice. *See* Response at 31-32 (citing *Gonzales v. McDow*, 1:07-CV-54 MCA/WDS (D.N.M. Mar. 30,

2008)). The Plaintiffs argue that the Defendants have merely attached the opinion from the underlying administrative action, and that the Defendants therefore have not met their burden of enabling the Court to determine precisely what issues were actually and necessarily determined in the administrative forum. *See* Response at 31-32.

The Defendants subsequently filed their Reply in Support of Motion to Dismiss under Rule 12(b), filed June 11, 2012 (Doc. 14) ("Reply"). In their Reply, the Defendants advance the same arguments that they asserted in their opening brief, but add additional arguments in opposition to the Plaintiffs' individual tort claims. *See* Reply at 3-4. Specifically, the Defendants maintain that the Plaintiffs' intentional interference with prospective contractual relations must fail, because there are no allegations in the Complaint that the Plaintiffs "interfered with any contractual relations or that they 'either induced Plaintiffs not to enter into or continue a prospective relation with anyone, or prevented Plaintiffs from acquiring or continuing a prospective relation with anyone.'" Reply at 4 (quoting *Gregory Rockhouse Ranch, LLC v. Glenn's Water Well Serv.*, 114 N.M. 690, 700, 191 P.3d 548, 558 (Ct. App. 2008), *abrogated by Helena Chem. Co. v. Uribe*, 2012-NMSC-021, 281 P.3d 237 (2012)). The Defendants further argue that the Plaintiffs' prima facie tort claim "is an entirely inappropriate application of [the theory], which 'should not be used to evade stringent requirements of other established doctrines of law.'" Reply at 7 (quoting *Stock v. Grantham*, 125 N.M. 564, 575, 964 P.2d 125, 136 (Ct. App.), *cert. denied*, 125 N.M. 322, 961 P.2d 167 (1998)). The Defendants also maintain that the Plaintiffs' claims must fail, because they never allege that "Stolis Winner beat Jet Black Patriot because of caffeine." Reply at 2.

The Court held a hearing on the Motion to Dismiss on September 24, 2012. At the hearing, the Court asked counsel for the Plaintiffs whether the Plaintiffs wanted to convert their

Motion to Dismiss into a motion for summary judgment. *See* Sept. 24, 2012, Transcript of Hearing at 3:6-10 ("Tr.")(Court).[4] The Plaintiffs' counsel indicated that the Plaintiffs did not wish to convert the motion, but that they attached exhibits to their response to refute the Defendants' contention that the State administrative proceeding was adequate. *See* Tr. at 3:11-12, 23-25 (Dunn); Tr. at 4:3-4 (Dunn). The Court indicated that it would not convert the motion to a motion for summary judgment, and that it would consider only documents referenced on the face of the Complaint, documents attached to the Complaint, and documents subject to judicial notice. *See* Tr. at 4:5-15 (Court). The Defendants' counsel agreed. *See* Tr. at 4:16 (Blackburn).

The Court next asked the Defendants' counsel whether there were any exceptions to the rule that the Commission's decisions are not subject to judicial review. *See* Tr. at 6:14-23 (Court). The Court further inquired whether, assuming the Legislature granted the Commission the authority to hear any and all cases related to horse racing, this administrative power necessarily divests the state judicial system of its authority to hear horse racing cases. *See* Tr. at 9:19-25 (Court). In response to these inquiries, the Defendants' counsel opined that no judicial review applies. *See* Tr. at 7:2-20, 8:2 (Blackburn); Tr. at 7:21-25, 8:1 (Court). The Court asked the Defendants' counsel whether a constitutional concern arises when a state insulates its agency by prohibiting judicial review of the agency's decisions. *See* Tr. at 35:6-10 (Court). The Defendants' counsel responded by arguing that, because the horse racing industry is heavily regulated, it becomes solely the agency's domain, and affected parties receive due process through

[4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

the agency review process. *See* Tr. at 35:15-17 (Blackburn).

The Court next asked the Defendants' counsel whether they maintain that a jurisdictional bar prohibits the courts from reviewing the Commission's decisions or whether they maintain that a doctrinal bar precludes judicial review. *See* Tr. at 39:21-25 (Court). The Defendants' counsel did not respond to the Court's inquiry, but, rather, argued that the Court cannot hear the Plaintiffs' claims, because the agency already has decided the issue whether the Defendants violated the Commission's rules: "[I]n order for [the Plaintiffs] to prevail on their claims . . . they have to find a violation of the New Mexico Racing Commission rules," but "the New Mexico Racing Commission [has] already . . . litigated that issue and determined that there was no violation of those rules." Tr. at 40:3-9 (Blackburn). The Defendants' counsel further argued: "[C]ourts . . . should not be in a position to turn and relitigate something that is so specialized . . . [and] regulated because otherwise you're going to be [in court]" regularly. Tr. at 40:9-13 (Blackburn).

The Defendants' counsel also inquired: "[W]hat would prevent an appeal . . . if there was an acquittal in a criminal case?" *See* Tr. at 38:23-25 (Blackburn). The Court responded: "I think that is a good example[.] [A] lot of times there[ is] a state criminal case . . . [and] the[n a 42 U.S.C. §] 1983 action[.] [The jury] may, for example, acquit [an] officer of, say, battery[,] but the 1983 case goes forward." Tr. at 39:6-12 (Court). The § 1983 claim, the Court explained, is evaluated with reference to the standards in the federal Constitution while the criminal case requires proof beyond a reasonable doubt of the elements of the state crime. *See* Tr. at 39:14-16 (Court). The Court explained that we are "talking about two different animals." Tr. at 39:19 (Court).

The Court also inquired whether any remedy would exist if the Commission arbitrarily

decided to award first place to the second place horse. *See* Tr. at 36:14-20 (Court). The Defendants' counsel responded that the State attorney prosecuting the case would have the right to appeal the hearing officer's or panel's decision to the Commission, but did not respond how that appeal would be meaningful if the Commission itself was biased. *See* Tr. at 36:21-25, 37:1-2 (Blackburn). The Court asked the Defendants' counsel to identify the legal principle that prohibits an aggrieved party from appealing to state court. *See* Tr. at 37:6-9 (Court). The Defendants' counsel responded by arguing that, when an industry is heavily regulated, when an aggrieved party has due process in the form of an administrative appeal, and when the "state effectively represented the rights of the party of the State of New Mexico," judicial review is unnecessary. Tr. at 38:18-25 (Blackburn).

Counsel for the Defendants also indicated that their argument is twofold: (i) the Plaintiffs do not have standing to bring their common-law claims; and (ii) if the Plaintiffs' allegations that "the Racing Commission didn't do what it was supposed to do" are true, then the Plaintiffs' claims nonetheless must fail, because the Plaintiffs have not alleged that the Defendants "were in conspiracy with the government officials." Tr. at 41:5-13, 41:17 (Blackburn).

Thereafter, the Defendants' counsel again addressed the question of policy and argued that allowing litigation to go forward after the Commission has reached a decision "opens a door to any sporting event," and "regardless of the outcome or what the official said, it's now going to be open to litigation." Tr. at 46:6-8 (Blackburn). The Court responded by stating: "Well, there's no doubt that I'm troubled by that prospect, but . . . what [is] the doctrine . . . that says . . . we shut down the state tort claims[?]" Tr. at 46:10-13 (Court). The Defendants' counsel indicated that not all litigation would be precluded; rather, the Defendants' counsel opined that a bar to litigation

between contestants exists when the Commission finds no violation of the rules, but that litigation might be allowed between contestants if the Commission concluded that a violation of the rules had occurred. *See* Tr. at 47:9-13 (Blackburn). The Defendants' counsel again cautioned that, if courts were to allow litigation between contestants when the Commission finds no violation, courts would be "opening a door that no court should want to walk through, because you're going to be hearing everything from flag football plays to intramural sports to any professional sporting event, any number of plays, any number of races, and it is just an unworkable solution." Tr. at 48:10-15 (Blackburn).

The Court next asked the Plaintiffs what limitations would prevent the opening of a floodgate of litigation between sporting competitors. *See* Tr. at 55:2-6 (Court). The Plaintiffs indicated that there were five limiting principles that distinguish this case from others and that would prevent a ruling in the Plaintiffs' favor from becoming a "parade of horribles." Tr. at 56:20-21 (Dunn). First, the Plaintiffs argued that the Complaint alleges that the Commission paid the purse prematurely and in violation of its rules, and thus the Commission is no longer a neutral body. *See* Tr. at 56:21-25, 57:1-15 (Dunn). Second, the Complaint alleges that the Commission wrongfully excluded interested parties, i.e., the Plaintiffs, from the administrative proceeding. *See* Tr. at 57:15-16 (Dunn). Third, the Complaint alleges that an objective drug test was administered and that that test was positive for a prohibited substance. *See* Tr. at 59:7-13 (Dunn). Fourth, the Complaint alleges that the Commission deviated from its ordinary procedures and for the first time found no violation of the rules despite the fact that a horse tested positive for a banned substance. *See* Tr. at 59:3-5 (Dunn). Fifth, the Complaint alleges that the Plaintiffs were not allowed to present their claims in any forum, i.e., the Commission denied the Plaintiffs the right to

participate in the administrative forum and now contends that the Plaintiffs have no right to judicial review. *See* Tr. at 59:22-25, 60:1-2 (Dunn).

The Plaintiffs next argued that New Mexico law supports the Plaintiffs' claims under three independent bases. *See* Tr. at 65:7-8 (Dunn). First, the Plaintiffs argued that general New Mexico tort law permits the Plaintiffs' claims for intentional interference with prospective contractual relations, fraud, prima facie tort, and negligence. *See* Tr. at 68:16-23 (Dunn). Second, the Plaintiffs maintained that the English common law, which the New Mexico Legislature has adopted, supports a cause of action if a plaintiff has a "reasonable opportunity of prevailing." Tr. at 67:11-17, 24-25 (Dunn). The Plaintiffs argued: "Here we absolutely know who would have won if the rules had been followed." Tr. at 68:6-7 (Dunn). Third, the Plaintiffs stated that a private right of action exists pursuant to the Court of Appeals of New Mexico's decision in *National Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. 590, 874 P.2d 798 (Ct. App. 1994). *See* Tr. at 65:10-16 (Dunn).

In response to the Defendants' argument that collateral estoppel bars the Plaintiffs' claims, the Plaintiffs argued that preclusion does not apply under the test the Court of Appeals of New Mexico set forth in *Rex v. Manufactured Housing Committee*. *See* Tr. at 69:20-21 (Dunn). That test requires the Plaintiffs to be a party to the administrative hearing or in privity with the State prosecutor from the administrative hearing. *See* Tr. at 69:23-25 (Dunn). The Plaintiffs argued that they were not in privity with the State, because the Plaintiffs were not allowed to present evidence and witnesses. *See* Tr. at 70:1-3 (Dunn). The Plaintiffs further maintained, with respect to the test's final requirement that the issue was actually litigated, "only part of the issues [i.e., whether the rules were violated] were litigated . . . [b]ut none of the other . . . elements in . . .

the[] other causes action were determined like the amounts of damages, causation issues, . . . [and] breach of the . . . standard of care." Tr. at 70:12-16, 70:24-25 (Dunn).

After the Plaintiffs completed their argument in opposition to the Motion to Dismiss, the Court inquired whether it is determinative that New Mexico does not allow a party excluded from the administrative process to appeal the exclusion from the hearing. *See* Tr. at 79:22-25 (Court). The Plaintiffs responded that it is determinative, but also stated, even if appeal had been allowed,

> [We] would be standing here . . . claiming there are private causes of action against the defendants because of common law [and] because of [N]ational [T]rust [and] because we're relying upon . . . well recognized . . sanctioned state law cases of action. But[,] yes[,] I think this makes it [a] particularly inflammatory case that we're excluded . . . from the process.

Tr. at 80:18-25 (Dunn). The Plaintiffs further explained:

> [T]he will [of the] Legislature could clearly constitutionally decide you're getting an adjudication by the commission and you're a part of it and you're stuck with the result and there will be no private cause of action. . . . But that didn't happen here and [therefore] the New Mexico case law and the common law . . . permit a private cause of action.

Tr. at 82:18-25 (Dunn). The Plaintiffs concluded: "[S]o until the Legislature makes that policy judgment then this private cause of action is permitted regardless of whether or not there is participation in the administrative proceeding." Tr. at 83:1-4 (Dunn).

After the Plaintiffs completed their argument, the Court asked the Commission the following: "[The Defendants] have said that you represent the public, and, therefore, the Plaintiffs here were, in fact, represented . . . . Your thoughts on that?" Tr. at 85:5-10 (Court). The Commission's counsel responded:

> I think what . . . the commission found was that the interests of the proposed intervenors were adequately served by the state. I think in a way that's certainly true, although I do think it's fair to say that in prosecuting this case on behalf of the commission I was not there to represent the owners of Jet Black Patriot[,] I was

> there to represent the state and the racing commission. That said, I think the interests should be for the most part co-extensive.

Tr. at 85:10-19 (Fuqua).

The Defendants also added the following in response to the Plaintiffs' argument that the Commission had a vested interest in the outcome of the administrative hearing: "[W]hen plaintiffs['] attorneys say that . . . this was not a . . . fair hearing because the commission had already paid out the million dollars, . . . there are ways under the rules and regulations had we lost that hearing that it would have been returned." Tr. at 88:2-7 (Blackburn).

In closing, the Court asked the Defendants' counsel the following: "I think you're the one that said if the . . . adjudication process has been fair and complete then the Court should accept it[.] [H]ow can I on a Rule 12(b)(6) motion [and] make th[e] determination [to bar the Plaintiffs' claims] if they've alleged that [the hearing] wasn't fair and complete[?]"; if the standard advanced is that the Court should accept the Commission's decision if the process is fair and complete, "how do I . . . cut them off at the 12(b)(6) stage" when the Plaintiffs allege it was not fair and complete? Tr. at 100:21-25, 101:1-5 (Court).

The Defendants' counsel responded that if the "[C]ommission decided it was going to fix this whole thing to save its own hide, how does that make the [Defendants] liable for that process? The [Plaintiffs] have not alleged that there was a conspiracy between the commission and the [Defendants]." Tr. at 102:1-5 (Blackburn). The Defendants' counsel further maintained:

> I think that participants in sporting events have every right to rely on the ruling of the governing bodies of those events, and if the governing body has said there's no violation of [the] rules . . . , then I think that should foreclose the issue as to disagreements between the contestants themselves. Whether or not there is some sort of constitutional claim that the racing commission was acting unconstitutionally to try to make sure that Jet Black Patriot would never be declared the winner . . . is a completely separate issue than the claims . . . against these three

defendants.

Tr. at 103:1-11 (Blackburn).

Finally, the Defendants argued that *National Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801, is distinguishable, because it addresses

> whether or not an individual can sue a governmental body to force [the government body] to follow the law [and] here[] . . . we have private individuals. . . . The [Plaintiffs'] reliance on [N]ational [T]rust to say we . . . have a private cause of action . . . is misplaced, because, if anything, National Trust might stand for -- [and] I don't believe it does in any way [--] a cause of action a[gainst the] racing commission but it definitely does not stand for the proposition that the statute and regulatory scheme would create a private cause of action against another private individual.

Tr. at 104:6-11 (Blackburn). The Defendants further maintained:

> [W]e did not spend much time addressing [the] argument [on] the common-law claims [because] they cite cases that all rely on rigged games of chance. That's not what this is. This is a sporting event, it is relies on skill. Any claim as to fraud in a game of chance really doesn't apply to this situation. And so I think that reliance on the common-law claims is also very misplaced.

Tr. at 104:12-19 (Blackburn).

At the close of the parties' arguments, the Court took the Motion to Dismiss under advisement. *See* Tr. at 105:13-19 (Court). On March 29, 2013, the Court issued an Order denying the Motion to Dismiss. *See* Mar. 29, 2013, Order (Doc. 30). The Court indicated that it would issue an opinion more fully detailing the rationale for its decision at a later date. *See* Mar. 29, 2013, Order.

## **LAW REGARDING DIVERSITY JURISDICTION AND CHOICE OF LAW**

Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). "A federal court sitting in diversity

applies the substantive law, including choice of law rules, of the forum state." *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). *See also Mosley v. Titus*, 762 F. Supp. 2d 1298, 1313-14 (D.N.M. 2010)(Browning, J.)(stating that when a court's jurisdiction rests on diversity of citizenship under § 1332, "the court should look to the forum state's choice-of-law rules to determine which state's substantive law to apply")(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Pepsi-Cola Bottling Co. v. PepsiCo., Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005)).

In New Mexico, choice-of-law analysis is a two-step process. *See Mosely v. Titus*, 762 F. Supp. 2d at 1314 (citing *Terrazas v. Garland & Loman, Inc.*, 140 N.M. 293, 296, 142 P.3d 374, 377 (Ct. App. 2006)). "First, the Court must characterize the 'area of substantive law -- *e.g.*, torts, contracts, domestic relations -- to which the law of the forum assigns a particular claim or issue.'" *Mosely v. Titus*, 762 F. Supp. 2d at 1314 (quoting *Terrazas v. Garland & Loman, Inc.*, 140 N.M. at 296, 142 P.3d at 377). The next step is to apply New Mexico's choice-of-law rule. *See Mosely v. Titus*, 762 F. Supp. 2d at 1314 (citing *Terrazas v. Garland & Loman, Inc.*, 140 N.M. at 296, 142 P.3d at 377).

"In tort actions, New Mexico courts follow the doctrine of lex loci delicti commissi and apply the law of the place where the wrong took place." *Mosely v. Titus*, 762 F. Supp. 2d at 1314 (citing *Torres v. State*, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995)). The place of the wrong is the location of the last act necessary to complete the injury. *See Mosely v. Titus*, 762 F. Supp. 2d at 1314 (citing *Torres v. State*, 119 N.M. at 613, 894 P.2d at 390). "Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred." *Mosely v. Titus*, 762 F. Supp. 2d at 1314 (citing *First Nat'l Bank v. Benson*, 89 N.M.

481, 482, 553 P.2d 1288, 1289 (Ct. App. 1976)).

In a diversity jurisdiction case, a federal district court applies "state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). *Accord Mem. Hosp. v. Healthcare Realty Trust Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007). This Court has held that if a federal district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the federal district court] must . . . predict how the Supreme Court of New Mexico would [rule]." *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). If the Court finds only an opinion from the Court of Appeals of New Mexico, "[w]hile certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." *Mosley v. Titus*, 762 F. Supp. 2d at 1332 (noting that the only opinion on point is "from the Court of Appeals, and the Court's task, as a federal district court sitting [in diversity jurisdiction] in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")). "Ultimately, . . . the Court's task is to predict what the state supreme court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007). *Accord Mosley v. Titus*, 762 F. Supp. 2d at 1332 (citation omitted); *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1188-89 (D.N.M. 2008)(Browning, J.)(quoting *Wade v.*

*EMCASCO Ins. Co.*, 483 F.3d at 665-66).

**LAW REGARDING RULE 12(b)(6)**

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(citation omitted), *cert. denied*, 558 U.S. 1148 (2010).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)(citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma.*, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570)(internal citations omitted).

**RELEVANT LAW REGARDING DOCUMENTS OUTSIDE**
**<u>THE PLEADINGS ON A MOTION TO DISMISS</u>**

Generally, the sufficiency of a complaint must rest on its contents alone. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). Emphasizing this point, the Tenth Circuit has stated: "When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state

a claim; the district court cannot review matters outside of the complaint." *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322; (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322. If a district court intends to rely on evidence that does not fall within these three exceptions, it must convert the rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties. *See* Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

## RELEVANT NEW MEXICO LAW REGARDING TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

The Supreme Court of New Mexico recognizes the tort of interference with prospective contractual relations and has adopted the definition found in § 766B of the *Restatement (Second) of Torts*. *See Horizon AG-Prods. v. Precision Sys. Eng'g, Inc.*, No. CIV 09-1109 JB/DJS, 2010 WL 4054131, *6 (D.N.M. Sept. 28, 2010)(Browning, J.)(citing *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 452-453, 612 P.2d 241, 244-245 (Ct. App. 1980)). Section 766B states:

> One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of:
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

*Restatement (Second) of Torts* § 766B (1979). *Accord Horizon AG-Prods. v. Precision Sys. Eng'g, Inc.*, 2010 WL 4054131, *6-7 (quoting *Restatement (Second) of Torts* § 766(B) (1979)(citing *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. at 453, 612 P.2d at 245). To state a claim for interference with prospective contractual relations, "a plaintiff must allege that 'there was an actual prospective contractual relation which, but for the [defendant's] interference, would have been consummated.'" *Horizon AG-Prods. v. Precision Sys. Eng'g, Inc.*, 2010 WL 4054131, *7 (quoting *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 159, 637 P.2d 837, 841 (1981)).

**RELEVANT NEW MEXICO LAW REGARDING FRAUD**

The elements of fraudulent misrepresentation are: "(i) a misrepresentation of fact, (ii) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (iii) intent to deceive and to induce reliance on the misrepresentation, and (iv) detrimental reliance on the misrepresentation." *Pedroza v. Lomas Auto Mall, Inc.*, 600 F. Supp. 2d 1162, 1167 (D.N.M. 2009)(Browning, J.)(quoting *Cain v. Champion Window Co.*, 142 N.M. 209, 216, 164 P.3d 90, 97 (Ct. App. 2007))(internal quotation marks omitted). Fraudulent "[i]ntent may be inferred from the circumstances surrounding the dealings. . . ." *Maxey v. Quintana*, 84 N.M. 38, 42, 499 P.2d 356, 360 (Ct. App.), *cert. denied*, 84 N.M. 37, 499 P.2d 355 (1972). *Accord Pedroza v. Lomas Auto Mall, Inc.*, 600 F. Supp. 2d at 1167. The party asserting fraudulent misrepresentation must prove each of those elements by clear-and-convincing evidence. *See Applied Cap., Inc. v. Gibson*, No. CIV 05-98 JB/ACT, 2007 WL 5685131, *13

(D.N.M. Sept. 27, 2007)(citing *Cyprus Amax Minerals Co. v. Duran Sand & Gravel, Inc.*, No. CIV 03-1473 JB/ACT, 2006 WL 4079084, at *10 (D.N.M. May 31, 2006)).

**RELEVANT NEW MEXICO LAW REGARDING PRIMA FACIE TORT**

In *Schmitz v. Smentowski*, the Supreme Court of New Mexico recognized a cause of action for prima facie tort. *See* 109 N.M. 386, 396, 785 P.2d 726, 736 (1990). The underlying premise of prima facie tort is that a party who intends to cause injury to another should be liable for that injury if the conduct is generally culpable and is not justifiable under the circumstances. *See Schmitz v. Smentowski*, 109 N.M. at 394, 785 P.2d at 734. There are four generally recognized elements of prima facie tort: (i) commission of an intentional, lawful act; (ii) an intent to injure the plaintiff; (iii) injury to the plaintiff as a result of the intentional act; and (iv) the absence of sufficient justification for the injurious act. *See Lexington Ins. Co. v. Rummel*, 123 N.M. 774, 777, 945 P.2d 992, 995 (1997); U.J.I. 13-1631, N.M. Rules Ann.[5]

In *Schmitz v. Smentowski*, the Supreme Court of New Mexico emphasized the importance of limiting the cause of action for prima facie tort, because the prima facie tort was not intended to provide a remedy for every intentionally caused harm. *See Schmitz v. Smentowski*, 109 N .M. at 394, 785 P.2d at 734. *See also Lexington Ins. Co. v. Rummel*, 123 N.M. at 777, 945 P.2d at 995. Because not every intentionally caused harm gives rise to an actionable tort, once a plaintiff establishes intent to injure, the trial court must balance the defendant's act or acts against the justification for the act or acts and the severity of the injury, weighing three factors: (i) the injury; (ii) the culpable character of the conduct; and (iii) whether the conduct is unjustifiable under the

[5] The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by the standing committee of the Supreme Court establishes a presumption that the instructions are correct statements of law. *See State v. Wilson*, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994).

circumstances. *See Portales Nat'l Bank v. Ribble*, 134 N.M. 238, 240, 75 P.3d 838, 840 (Ct. App. 2003). The Court of Appeals of New Mexico refined these factors in *Beavers v. Johnson Controls World Services, Inc.*, 120 N.M. 343, 901 P.2d 761 (Ct. App. 1995), and the Uniform Jury Instructions incorporate the following factors the *Beavers v. Johnson Controls World Services, Inc.* court articulated: (i) the nature and seriousness of the harm to the plaintiff; (ii) the fairness or unfairness of the means used by the defendant; (iii) the defendant's motive or motives; and (iv) the value to defendant or to society in general of the interests that the defendant's conduct advances. *See* U.J.I. 13-1631A, N.M. Rules Ann.

**RELEVANT NEW MEXICO LAW REGARDING NEGLIGENCE**

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach must be a cause-in-fact and proximate cause of the plaintiff's damages. *See Herrera v. Quality Pontiac*, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003). "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." *Ramirez v. Armstrong*, 100 N.M. 538, 541, 673 P.2d 822, 825 (1983), *overruled on other grounds by Folz v. State*, 110 N.M. 457, 460, 797 P.2d 246, 249 (1990). Generally, negligence is a question of fact for the jury. *See Schear v. Bd. of County Comm'rs*, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984). "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant." *Schear v. Bd. of County Comm'rs*, 101 N.M. at 672, 687 P.2d at 729. "Whether a duty exists is a question of law for the courts to decide." *Schear v. Bd. of County Comm'rs*, 101 N.M. at 672, 687 P.2d at 729 (citation omitted). Once courts recognize that a duty exists, that duty triggers "a legal obligation to

conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons." *Baxter v. Noce*, 107 N.M. 48, 51, 752 P.2d 240, 243 (1988).

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owed a duty to the plaintiff. *See Herrera v. Quality Pontiac*, 134 N.M. at 48, 73 P.3d at 186. The New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect." *Herrera v. Quality Pontiac*, 134 N.M. at 49, 73 P.3d at 187 (internal quotation marks omitted). To determine whether the obligation of the defendant is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law. *See Herrera v. Quality Pontiac*, 134 N.M. at 48, 73 P.3d at 186.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." *Herrera v. Quality Pontiac*, 134 N.M. at 56, 73 P.3d at 194. "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case." *Herrera v. Quality Pontiac*, 134 N.M. at 57, 73 P.3d at 195.

"A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred." *Herrera v. Quality Pontiac*, 134 N.M. at 57, 73 P.3d at 195. "It need not be the only cause, nor the last nor nearest cause." *Herrera v. Quality Pontiac*, 134 N.M. at 57,

73 P.3d at 195. "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." *Herrera v. Quality Pontiac*, 134 N.M. at 57, 73 P.3d at 195.

**RELEVANT LAW REGARDING THE SPECULATIVE NATURE OF THE OUTCOME OF SPORTING EVENTS**

Scholarly authority opines that the speculative nature of the outcome of sporting events and contests often results in a denial of recovery in court. Professors Prosser and Keeton summarize the prevailing rule and the rationale for denying recovery in sports contests as follows:

> When the attempt has been made to carry liability for interference . . . into such areas as . . . deprivation of the chance of winning a contest, the courts have been disturbed by a feeling that they were embarking upon uncharted seas, and recovery has been denied; and it is significant that the reason usually given is that there is no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits.

W. Prosser & W. Keeton, Torts § 130, at 1006 (5th ed. 1984). The *Restatement (Second) of Torts* describes circumstances under which the results of races or contests will not be speculative. *See Restatement (Second) of Torts*, § 744B, special note, at 59-60 (1979).[6] In commenting on the

[6] "The New Mexico courts often look to the law as stated in the *Restatement (Second) of Torts*." *Coffey v. United States*, 906 F. Supp. 2d 1114, 1170 n.31 (D.N.M. 2012)(Browning, J.)(citing *Montanez v. Cass*, 89 N.M. 32, 38, 546 P.2d 1189, 1195 (Ct. App. 1975)("It has long been the policy of our courts to follow in the footsteps of the Restatement of Torts, 2d."), *rev'd on other grounds sub nom N.M. Elec. Serv. Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976); *Start-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 805 F. Supp. 2d 1145, 1177 n.24 (D.N.M. 2011)(Browning, J)). *See also Pena v. Greffet*, 922 F. Supp. 2d 1187, 1228 (D.N.M. 2013 (Browning, J.)(noting that, in New Mexico, "the *Restatement of Torts* reigns" and citing the *Restatement (Second) of Torts* to define the elements of battery)(citations omitted); *Schmitz v. Smentowski*, 109 N.M. 386, 393, 785 P.2d 726, 736 (1990)("We have also been very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas."). Although there is a *Restatement (Third) of Torts*, the Supreme Court of New Mexico has relied on it primarily in the contexts of products liability, *see, e.g.*, *Brooks v. Beech Aircraft Corp.*, 120 N.M. 372, 902 P.2d 54 (1995), apportionment of liability, *see, e.g.*, *Baker v. Hedstrom*, No. 33,635, 2013 WL 4760950 (Sept. 5, 2013), and foreseeability with respect to liability for physical and emotional

possible situations that may justify liability for interferences with prospective economic benefits of a noncommercial character, the *Restatement* authors point to

> [c]ases in which the plaintiff is wrongfully deprived of the expectancy of winning a race or a contest, when he has had *a substantial certainty or at least a high probability of success.* For example, the plaintiff is entered in a contest for a large cash prize to be awarded to the person who, during a given time limit, obtains the largest number of subscriptions to a magazine. At a time when the contest has one week more to run and the plaintiff is leading all other competitors by a margin of two to one, the defendant unjustifiably strikes the plaintiff out of the contest and rules him ineligible. In such a case there may be sufficient certainty established so that the plaintiff may successfully maintain an action for loss of the prospective benefits.

*Restatement (Second) of Torts*, *supra* § 744B, at 59-60 (emphasis added). The *Restatement* authors further opine: "On the other hand, if the plaintiff has a horse entered in a race and the defendant wrongfully prevents him from running, there may well not be sufficient certainty to entitle the plaintiff to recover . . . ." *Restatement (Second) of Torts*, *supra* § 744B, at 59-60.

In *Youst v. Longo*, 729 P.2d 728, 738 (Cal. 1987), the Supreme Court of California specifically addressed the question of the speculative nature of tort claims between competitors in the context of horse racing. In *Youst v. Longo,* the plaintiff alleged that the defendant drove his horse into the path of the plaintiff's horse and that the defendant struck the plaintiff's horse with a whip, thereby causing the plaintiff's horse to break stride. *See* 729 P.2d at 730-31. The plaintiff's horse finished sixth while the defendant's horse finished second. *See* 729 P.2d at 730-31. The California Horse Racing Board reviewed the events of the race and disqualified the defendant's horse, which moved the plaintiff's horse into fifth place, entitling the plaintiff to a fifth place purse of $5,000. *See* 729 P.2d at 731. The plaintiff requested compensatory damages in

harm, *see, e.g.*, *Edward C. v. City of Albuquerque*, 148 N.M. 646, 241 P.3d 1086 (2010).

the purse amount for either first, second, or third place, less the fifth place prize of $5,000. *See* 729 P.2d at 731. The Supreme Court of California held that tort liability was not available as a matter of law, because the outcome of a sporting event, including a horse race, is speculative. *See* 729 P.2d at 732-33, 737. The Supreme Court of California stated: "It is a well-settled general tort principle that interference with the *chance* of winning a contest, such as the horserace at issue here, usually presents a situation too uncertain upon which to base tort liability." *Youst v. Longo*, 729 P.2d at 730. The Supreme Court of California explained that, to "[a]scertain[] the amount of actual damages," the court "would need to determine the position in which [the plaintiff's horse] would have finished but for defendant's interference." 729 P.2d at 731. The court explained that such an inquiry presented a seemingly "impossible" task. 729 P.2d at 736. Specifically, the court opined:

> Determining the probable expectancy of winning a sporting contest but for the defendant's interference seems impossible in most if not all cases, including the instant case. Sports generally involve the application of various unique or unpredictable skills and techniques, together with instances of luck or chance occurring at different times during the event, any one of which factors can drastically change the event's outcome. In fact, certain intentional acts of interference by various potential "defendant" players may, through imposition of penalties or increased motivation, actually allow the "victim" player or team to prevail. Usually, it is impossible to predict the outcome of most sporting events without awaiting the actual conclusion.

729 P.2d at 736. In distinguishing cases in which courts have allowed a cause of action to proceed, the court drew support from the *Restatement (Second) of Torts*, which "indicate[s] . . . certain contests may have a higher probability of ultimate success than others." 729 P.2d at 736 (citing *Restatement (Second) of Torts, supra* § 744B, at 59-60). The court reasoned: "To this end, the cases cited by the Court of Appeal here, awarding damages to competitors in contests, are distinguishable because in each case there was a high probability of winning." 729 P.2d at 736-37

(citation omitted).

Under California law, a threshold requirement for an interference with prospective business advantage claim is "the *probability* of future economic benefit." *Youst v. Longo*, 729 P.2d at 733 (citations omitted). The *Youst v. Longo* court explained that application of the threshold requirement in the context of a sporting contest prevents the opening of the "proverbial floodgates to a surge of litigation based on alleged missed opportunities to win various types of contests, despite the speculative outcome of many of them." 729 P.2d at 735. The court held that the plaintiff had not established the threshold probable expectancy of future economic benefit, because the plaintiff's complaint did not adequately allege facts showing interference with a *probable* economic gain, i.e., that the plaintiff's horse would have won the horse race, or at least won a larger prize, if the defendant had not interfered. *See* 729 P.2d at 737. The Supreme Court of California therefore concluded that "the threshold element of probability for interference with prospective economic advantage was not met by the facts alleged" and that "[i]t was not reasonably *probable*, on the facts alleged, that [the plaintiff's horse] would have finished in a better position." 729 P.2d at 737.

**RELEVANT LAW REGARDING IMPLIED STATUTORY PRIVATE RIGHTS OF ACTION**

When a party seeks to enforce a statute that provides no express mechanism for its enforcement, a court must examine whether a cause of action may be implied through the common law. *See Starko, Inc. v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, ¶ 33, 276 P.3d 252, 264-65 (Ct. App. 2011). In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court of the United States held: "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." 532 U.S. at 286 (citation omitted). The Supreme

Court explained: "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. at 286 (citation omitted). "Statutory intent on this latter point is determinative," and "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. at 286-87 (citations omitted).

The federal test for determining whether legislative intent exists is set forth in *Cort v. Ash*, 422 U.S. 66, 78 (1975). *See Alexander v. Sandoval*, 532 U.S. at 287. In *Cort v. Ash*, the Supreme Court of the United States set forth the test for determining whether to recognize an implied private cause of action:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted -- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Cort v. Ash*, 422 U.S. at 78 (internal quotation marks and citations omitted). *See also Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801 (citing *Cort. v. Ash*, 422 U.S. at 78).[7]

The Supreme Court of the United States has recognized, however, that the standard for discerning whether state statutes create private rights of action is less stringent than the federal standard: "Raising up causes of action where a statute has not created them may be a proper

[7] Although the *Cort v. Ash* test also includes a fourth factor -- whether implying a federal remedy would be inappropriate, because the subject matter is one traditionally relegated to state law -- the Court of Appeals of New Mexico has held that the fourth factor is not applicable to claims based upon state statutes, because it invokes federalism, which has no application when a state court is interpreting state law. *See Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801.

function for common-law courts, but not for federal tribunals." *Alexander v. Sandoval*, 532 U.S. at 287. In recognition of this distinction between federal and state statutes, the Court of Appeals of New Mexico in *National Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. 590, 874 P.2d 798 (Ct. App. 1994), rejected the argument that the federal test articulated in *Cort v. Ash* exclusively applies to determine whether an implied private right of action under a state statute exists. *See* 117 N.M. at 593, 874 P.2d at 801. The Court of Appeals applied a less stringent standard for implying a private right of action from a state statute. *See* 117 N.M. at 593, 874 P.2d at 801. In adopting this standard, the Court of Appeals of New Mexico explained that a "state court, because it possesses common-law authority, has significantly greater power than a federal court to recognize a cause of action not explicitly expressed in a statute." 117 N.M. at 593-94, 874 P.2d at 801-02. The Court of Appeals of New Mexico rejected the notion that statutory intent alone is determinative and instead held that a New Mexico court may "look beyond legislative intent in exercising common-law authority to recognize a private cause of action." 117 N.M. at 593, 874 P.2d at 801. The Court of Appeals of New Mexico explained that "a common-law court may utilize the statute solely to demonstrate what is public policy," and the "public policy then forms the predicate for a common-law cause of action." 117 N.M. at 593, 874 P.2d at 801 (citations omitted). The Supreme Court of New Mexico has advanced the proposition that a state court may imply a private right of action based upon public policy, and not legislative intent, and has cited *National Trust for Historical Preservation v. City of Albuquerque* in support of this proposition. *See San Juan Agr. Water Users Ass'n v. KNME-TV*, 150 N.M. 64, 73, 257 P.3d 884, 893 (2011) (explaining that while "federal courts do not presume that Congress intended for the common law to apply when interpreting a statute, . . . 'a state court, because it possesses

common-law authority, has significantly greater power than a federal court to recognize a cause of action not explicitly expressed in a statute' and may do so in order to further public policy") (quoting *Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 593-94, 874 P.2d at 801-02).

The *National Trust for Historical Preservation v. City of Albuquerque* court held that the federal legislative intent test articulated in *Cort v. Ash* did not control, because that test "was developed to assist in the interpretation of federal statutes," and "[d]ifferent considerations arise when state courts decide matters of state law." 117 N.M. at 593, 874 P.2d at 801. One such consideration stems from the fact that "[f]ederal courts have very limited authority beyond that conferred by statute or the Constitution. As the United States Supreme Court has stated, 'The instances where we have created federal common law are few and restricted.'" 117 N.M. at 593, 874 P.2d at 801 (quoting *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963)). Thus, the *Cort v. Ash* test essentially is a test to determine whether the United States Congress intended to create, either expressly or by implication, a private cause of action. *See Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801 (citation omitted). The Court of Appeals of New Mexico explained that the *Cort v. Ash* factors are not irrelevant to the question whether a private right of action exists under a state statute, but rather that they are not exclusive. *See Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 592, 874 P.2d at 800 (citation omitted). Instead, "a state's public policy, independent of the first three *Cort v. Ash* factors, may be determinative in deciding whether to recognize a cause of action." *See Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 594, 874 P.2d at 802 (citation omitted).

**RELEVANT LAW REGARDING THE PRECLUSIVE EFFECT OF STATE ADMINISTRATIVE PROCEEDINGS**

"Applying the principles of collateral estoppel, or issue preclusion, to decisions of state administrative bodies serves to promote federalism, conserve judicial resources, and encourage parties to minimize the expense and burden of repetitive litigation." *Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004)(citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986)). *Accord Cordova v. N.M. Tax. & Rev. Dep't*, No. CIV 08-0681 JB/ACT, 2011 WL 7164459, *10 (D. N.M. Dec. 28, 2011)(Browning, J.). In *University of Tennessee v. Elliott*, the Supreme Court of the United States established that a state agency's decision will have the same preclusive effect in federal court that it would receive in state court if the state agency: (i) acts in a "judicial capacity"; (ii) resolves "disputed issues of fact properly before it"; and (iii) the parties have had "an adequate opportunity to litigate" the issue. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986). *Accord Salguero v. City of Clovis*, 366 F.3d at 1173; *Cordova v. N.M. Tax. & Rev. Dep't*, 2011 WL 7164459, at *10. If the proponent of preclusion demonstrates that the factors articulated in *University of Tennessee v. Elliot* have been met, then the court looks to New Mexico law to determine whether preclusion is proper. *See Salguero v. City of Clovis*, 366 F.3d at 1173; *Cordova v. N.M. Tax. & Rev. Dep't*, 2011 WL 7164459, at*10.

New Mexico law provides that, "[a]dministrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 115 N.M. 293, 298, 850 P.2d 996, 1001 (1993) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). *Accord Cordova v. N.M. Tax. & Rev. Dep't*, 2011 WL 7164459, *11. For preclusion to apply to an administrative decision, the administrative body

must be acting in a judicial capacity and resolve disputed questions of fact properly before it. *See Guzman v. Laguna Dev. Corp*, 147 N.M. 244, 248, 219 P.3d 12, 16 (Ct. App.), *cert. denied*, 147 N.M. 421, 224 P.3d 648 (2009); *Cordova v. N.M. Tax. & Rev. Dep't*, 2011 WL 7164459, *11.

**RELEVANT NEW MEXICO LAW REGARDING COLLATERAL ESTOPPEL**

Under New Mexico law, "collateral estoppel, also called issue preclusion, prevents a party from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit.'" *Ullrich v. Blanchard*, 142 N.M. 835, 839, 171 P.3d 774, 778 (Ct. App. 2007) (quoting *Deflon v. Sawyers*, 139 N.M. 637, 137 P.3d 577 (2006); *Adams v. United Steelworkers of Am.*, 97 N.M. 369, 373, 640 P.2d 475, 479 (1982)). *Accord Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d 1278, 1286 (D.N.M. 2011)(Browning, J.). For collateral estoppel to apply, four elements must be met: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined." *Ullrich v. Blanchard*, 142 N.M. at 839, 171 P.3d at 778 (quoting *City of Sunland Park v. Macias*, 134 N.M. 216, 220, 75 P.3d 816, 820 (Ct. App. 2003)). *Accord Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286. If the party invoking the doctrine establishes a prima facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding. *See Padilla v. Intel Corp.*, 125 N.M. 698, 701, 964 P.2d 862, 865 (Ct. App. 1998); *State v. Bishop*, 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct. App.), *cert. denied*, 113 N.M. 690, 831 P.2d 989 (1992); *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286.

Whether the doctrine of collateral estoppel should be applied is within the trial court's discretion, and the exercise of discretion is reviewed for an abuse of discretion on appeal. *See Shovelin v. Cent. N.M. Elec. Coop.*, 115 N.M. at 299, 850 P.2d at 1002; *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286. Even when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine. *See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct. App.), *cert. denied*, 115 N.M. 60, 846 P.2d 1069 (1993); *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286. Collateral estoppel should be applied only where the judge determines that its application would not be fundamentally unfair. *See Reeves v. Wimberly*, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App. 1988); *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286.

Collateral estoppel is an affirmative defense on which the party raising the defense bears the burden of proof. *See Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1256 (10th Cir. 1997), *cert. denied*, 523 U.S. 1064 (1998); Fed. R. Civ. P. 8(c). A defendant may properly raise the defense in a rule 12(b)(6) motion when the facts necessary to support the defense are apparent on the face of the pleadings. *See Prospero Assocs. v. Burroughs Corp.*, 714 F.2d 1022, 1024 (10th Cir. 1983)("The motion is also procedurally defective," because "[t]he affirmative defense of res judicata does *not* appear on the face of the Complaint")(emphasis added); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)(reversing court's decision to grant a motion to dismiss based on defense of res judicata, where the facts that would support the defense were not contained in the complaint). *See also Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)(acknowledging that the affirmative defense of res judicata may be raised through a motion to dismiss under rule

12(b)(6), but only if it clearly appears on the face of the complaint). Furthermore, "it must be remembered that disputes over material issues of fact cannot be resolved on a motion to dismiss . . . but must be reserved for resolution at trial by the appropriate trier," and thus the affirmative defense of collateral estoppel can raise no disputed issues of fact. C. Wright & A. Miller, *Federal Practice & Procedure* § 1277, at 328-30, 332 (3d ed. 1998).

> When there is no disputed issue of fact raised by an affirmative defense, or the facts are completely disclosed on the face of the pleadings, and realistically nothing further can be developed by pretrial discovery or a trial on the issue raised by the defense, the recent cases seem to agree that the matter may be disposed of by a motion to dismiss under Rule 12(b).

C. Wright & R. Miller, *supra* § 1277, at 328-30, 332. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)("Ordinarily affirmative defenses such as collateral estoppel may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact"). Alternatively, the party asserting collateral estoppel through a motion to dismiss may request the court to take judicial notice of additional documents filed of record in the prior case. *See Merswin v. Williams Cos.*, No. 09-5096, 2010 WL 373672, *2 (10th Cir. Feb. 3, 2010)(citations omitted).[8] *See also Andrews v. Daw*, 201 F.3d at 524 n.1 (stating that, "when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of

[8] The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005), *cert. denied*, 546 U.S. 1194 (2006). The Court finds that this unpublished opinion has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.")(citations omitted).

**ANALYSIS**

The Defendants first argue that the Court should grant their Motion to Dismiss, because New Mexico law does not support a cause of action for prospective economic losses between competitors in a sporting contest. In support of this contention, the Defendants argue that public policy militates against litigating the winner of a sporting event, the speculative nature of the outcome of the sporting event bars the claims, and causes of action premised on a rules violation that an administrative agency already has determined did not occur are not viable. The Defendants also argue that the allegations of the Complaint do not state a claim for intentional interference with prospective contractual relations and that the tort of prima facie tort is not available on the facts alleged in the Complaint.

The Court concludes that the Supreme Court of New Mexico would likely hold that the public policy of preventing a floodgate of litigation is not implicated where a court holds only that public policy does not preclude litigation between sporting competitors premised on a rules violation when there are allegations that the administrative body charged with the underlying adjudication conducted an unfair and incomplete review, the agency insulated itself from all judicial review, and the agency denied the plaintiffs the right to participate in the administrative process despite the showing that the plaintiffs had an affected interest in the outcome of the administrative proceeding. Furthermore, the Court concludes that the Supreme Court of New Mexico would likely hold that the speculative nature of the outcome of the horse race does not preclude the Plaintiffs' claims, because, on the facts alleged, the outcome of the race was not

uncertain. If the Commission had upheld the stewards' disqualification of Stolis Winner, the Plaintiffs' horse was certain to be the first place finisher of the race. The Plaintiffs also allege that their horse was an extremely close second, finishing only a "neck" behind Stolis Winner. Complaint ¶ 12, at 4. Thus, the allegations indicate that the Plaintiffs had either a substantial certainty or at least a high probability of winning the race. In addition, the Court does not believe that the Supreme Court of New Mexico would hold that the Commission's finding that Taylor did not violate the rules of racing is fatal to the Plaintiffs' tort claims, because the judicial adjudication of the Plaintiffs' claims is separate and distinct from the Commission's adjudication of the regulatory and disciplinary issues. The Court also concludes that the Supreme Court of New Mexico would hold that the Complaint states a valid claim for intentional interference with prospective contractual relations and a valid claim for prima facie tort to the extent the prima facie tort claim is premised on the intentional act of improperly training Stolis Winner. The Court further concludes, however, that to the extent the Plaintiffs' prima facie tort claim is premised on the intentional act of providing Stolis Winner with a performance enhancing substance, the Supreme Court of New Mexico would hold that that claim does not satisfy the first element of prima facie tort, because that element requires the commission of an intentional *lawful* act.

The Defendants next argue that the Court should grant their Motion to Dismiss, because the Plaintiffs do not have a private right of action under the New Mexico Horse Racing Act, and under the Commission's rules and regulations promulgated pursuant to the Act. The Court is not persuaded. It is the public policy of New Mexico to ensure that horse racing is conducted fairly and honestly, and to protect racing participants. The Court holds that the Supreme Court of New Mexico would likely find that pursuant to *National Trust for Historical Preservation v. City of*

*Albuquerque*, 117 N.M. 590, 874 P.2d 798, 801 (Ct. App. 1994), this public policy forms the predicate for an implied private right of action under the New Mexico Horse Racing Act. Furthermore, the Court believes that the Supreme Court of New Mexico would also likely hold that the legislative intent behind the Horse Racing Act supports an implied private right of action.

The Defendants also argue that the Court should grant their Motion to Dismiss, because collateral estoppel precludes the litigation of the Plaintiffs' claims. The Court does not agree with this argument. Because the allegations in the Complaint do not support a legal conclusion that the Plaintiffs were in privity with the State of New Mexico with respect to prosecuting the administrative complaint, the Defendants cannot prevail on their motion. Furthermore, the Court will deny the Motion to Dismiss, because the application of collateral estoppel to the facts of this case would be fundamentally unfair.

## I. THE COURT WILL NOT RELY ON THE DOCUMENTS THE PLAINTIFFS' ATTACHED TO THEIR RESPONSE TO THE MOTION TO DISMISS.

The Plaintiffs attach numerous exhibits to their response to the Motion to Dismiss, including, among other things, the deposition testimony of witnesses, and the stipulations to which the State and Taylor entered during the administrative hearing. *See* N.M. Racing Comm'n Rules, filed May 23, 2012 (Docs. 11-1 to 11-4); Stipulated Facts, filed May 23, 2012 (Doc. 11-5); *Deposition of Dr. Walter Hyde*, filed May 23, 2012 (Docs. 11-6, 11-7); *Deposition of Dr. Albert Kind*, filed May 23, 2012 (Doc. 11-8); *Deposition of Dr. Jesse Unruh*, filed May 23, 2012 (Doc. 11-9); *Deposition of Rosemary Leeder*, filed May 23, 2012 (Doc. 11-10); *Deposition of Jodene Chase*, filed May 23, 2012 (Doc. 11-11); *Deposition of Leasa Johnson*, filed May 23, 2012 (Doc. 11-12); *Deposition of Shirley Hart*, filed May 23, 2012 (Doc. 11-13); *Deposition of Julian Luna*, filed May 23, 2012 (Docs. 11-14, 11-15); *Deposition of Kenneth Hart*, filed May 23, 2012 (Doc.

11-16); *Records from the Ass'n of Racing Comm'rs Int'l*, filed May 23, 2012 (Doc. 11-17)*; Richard Simon, Janelle Simon & Eric Curtis v. Health Taylor, Jerry Windham & Pat Windham v. N.M. State Racing Comm'n*, (First Judicial Dist. Ct., State of N.M), filed May 23, 2012 (Docs. 11-18, 11-19); *El Paso Healthcare Sys. v. Molina Healthcare of N.M.*, No. EP-09-CV-54-KC (W.D. Tex., Jan. 21, 2010), filed May 23, 2012 (Doc. 11-20); *Christine Gonzales v. Kennedy McDow et al.*, No. 1:07-cv-54 MCA/WDS, Mem. Op. & Order (D.N.M. Mar. 30, 2008), filed May 23, 2012 (Doc. 11-21). Generally, the sufficiency of a complaint must rest on its contents alone. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the Plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322. If a district court intends to rely on evidence that does not fall within these three exceptions, it must convert the rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties. *See* Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

The Plaintiffs attach deposition testimony and stipulations from the underlying administrative proceeding to their response. At the September 24, 2012, hearing on the Motion to Dismiss, the Court asked the Plaintiffs' counsel whether -- by attaching these documents -- the Plaintiffs intended to convert the Motion to Dismiss into a motion for summary judgment. *See* Tr. at 3:6-10 (Court). The Plaintiffs' counsel indicated that the Plaintiffs did not wish to convert the

motion, but that they attached exhibits to refute the Defendants' contention that the state administrative proceeding was adequate and to substantiate the Plaintiffs' argument that their claims were not precluded. *See* Tr. at 3:11-12, 23-25 (Dunn); Tr. at 4:3-4 (Dunn). The Defendants' counsel agreed that the Defendants did not want to convert the motion to a motion for summary judgment. *See* Tr. at 4:16 (Blackburn).

Based upon counsel's agreement, the Court indicated at the hearing that it would not convert the motion to a motion for summary judgment, and that -- consistent with the three limited exceptions to the rule that the sufficiency of a complaint must rest on the complaint's contents alone -- it would only consider documents referenced on the face of the Complaint, documents attached to the Complaint, and documents subject to judicial notice. *See* Tr. at 4:5-15 (Court). *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322; *Jacobsen v. Deseret Book Co.*, 287 F.3d at 941. Accordingly, the Court declines to consider the deposition testimony and stipulations attached to the response in ruling upon the Motion to Dismiss.

## II. NEW MEXICO RECOGNIZES A CAUSE OF ACTION FOR PROSPECTIVE ECONOMIC LOSSES BETWEEN COMPETITORS IN A SPORTING CONTEST.

The Defendants contend that the Plaintiffs fail to state a claim for interference with prospective contractual relations, fraud, prima facie tort, and negligence, because, in New Mexico, there is no cause of action for prospective economic losses between competitors in a sporting contest. The Defendants make several arguments in support of this contention. First, the Defendants advance a public policy argument that allowing the Plaintiffs' claim for prospective economic losses between competitors in a sporting contest will open a floodgate of litigation and place the judicial system in the position of declaring the winner of sporting events. *See* Motion to Dismiss at 9. Second, the Defendants contend that the Plaintiffs have not alleged facts sufficient

to establish that Jet Black Patriot would have won but for the fact that Stolis Winner had caffeine in his system and that the Plaintiffs' damages are too uncertain to support tort liability. *See* Reply at 2. Third, the Defendants argue that the Plaintiffs' tort claims must fail, because the Commission determined that the Defendants did not violate the Commission's rules and all of the Plaintiffs' claims are premised on the allegation that the Defendants violated the rules. *See* Motion to Dismiss at 6. Fourth, the Defendants argue that the Plaintiffs' intentional interference claim must fail because the Complaint does not allege that the Defendants interfered with any prospective contractual relations and that the prima facie tort claim must fail because the Plaintiffs cannot use that tort to evade the more stringent elements of other torts.

With respect to the Defendants' first argument, while the Plaintiffs concede that "it is true no New Mexico case can be located concerning facts such as these," they argue that their causes of action are nonetheless viable, because New Mexico law generally recognizes these individual tort claims. Response at 17-20, 21. *See also* Tr. at 68:16-23 (Dunn). The Plaintiffs further contend that public policy does not bar their claims, because the Legislature has not prohibited the claims, *see* Tr. at 82:18-25 (Dunn); Tr. at 83:1-4 (Dunn), and because the public policy concerns raised by the Defendants are not implicated on the facts of this case, *see* Tr. at 56:20-21 (Dunn).

With respect to the Defendants' second argument, the Plaintiffs maintain that damages are not speculative, because if the Commission had upheld the finding that the Defendants violated the rules of racing and that the finish of the race should be reordered, the outcome of the race would be certain. Moreover, the Plaintiffs argue that damages are not speculative, because the English common law, which New Mexico has adopted, permits recovery for the value of the lost chance to prevail in a sporting event or contest. *See* Response at 21 (citing N.M. Stat. Ann. § 38-1-3); Tr. at

67:11-17 (Dunn). The Plaintiffs further argue that the weight of the authority in this country "permit[s either] the recovery of the benefits that reasonably would have been earned" or the "value of the chance to win when the Plaintiff is unable to prove he would have won but for the wrongful conduct." Response at 22 (citing *Miller v. Allstate Ins. Co.*, 573 So. 2d 24, 29 (Fla. Dist. Ct. App. 1990); *Wachtel v. Nat'l Alfalfa Journal Co.*, 176 N.W. 801 (Iowa 1920); *Van Gulik v. Resource Dev. Council*, 695 P.2d 1071 (Alaska 1985); *Kansas City, M. & O. Ry. Co. v. Bell*, 197 S.W. 322 (Tex. Civ. App. 1917); *Hobbs v. Boatright*, 195 Mo. 693, 93 S.W. 934 (Mo. 1906); *McPeek v. Western Union Tel. Co.*, 107 Iowa 356, 78 N.W. 63 (1899); *Webb v. Fulchire*, 25 N.C. 485 (1843); *Restatement (Second) of Contracts* § 348(3) (1979); C. McCormick, *Damages* § 31, at 122-23; W. Malone, *Ruminations on Cause-in-Fact*, 9 Stan. L. Rev. 60, 80 (1956)).

With respect to the Defendants' third and fourth arguments, the Plaintiffs do not directly address the arguments but rather maintain that their claims are viable under general New Mexico tort principles and under the English common law, which New Mexico has adopted. *See* Response at 16-25. The Court will address each of the Defendants' arguments in turn.

**A. PUBLIC POLICY DOES NOT PRECLUDE THE PLAINTIFFS' CAUSES OF ACTION.**

The Defendants maintain that countervailing public policies preclude recovery for injuries under the Plaintiffs' tort theories. In support of this argument, the Defendants contend: "[I]t is not for the courts to litigate the outcome of competitive sporting events and second-guess the regulatory body of the sport and the sanctioned official results." Motion to Dismiss at 8. The Defendants further maintain that the "courts . . . should not be in a position to turn and relitigate something that is so specialized . . . [and] regulated because otherwise you're going to be [in court]" regularly. Tr. at 40:9-13 (Blackburn).

> If Plaintiffs have a valid claim, it is not difficult to imagine how the results of any and all sporting events will be held in limbo during years of subsequent litigation. . . . Obviously, policy considerations argue against this Court being bogged down in determining the "winner" of a horse race or baseball game.

Motion to Dismiss at 9. *See* Tr. at 46:6-8, 48:10-15 (Blackburn)(arguing that allowing litigation to go forward after the Commission has reached a decision "opens a door to any sporting event," "from flag football plays to intramural sports to any professional sporting event, any number of plays, any number of races").

In response, the Plaintiffs contend that it is the New Mexico Legislature's role -- and not the judiciary's -- to make a policy determination that precludes litigation of tort claims for economic losses between competitors in a sporting contest, and that, absent such a policy judgment by the Legislature, the Plaintiffs' claims are viable pursuant to New Mexico tort principles and the English common law. *See* Tr. at 82:18-25 (Dunn); Tr. at 83:1-4 (Dunn). At the hearing, the Plaintiffs' counsel explained:

> [T]he will [of the] Legislature could clearly constitutionally decide you're getting an adjudication by the commission and you're a part of it and you're stuck with the result and there will be no private cause of action. . . . But that didn't happen here and [therefore] the New Mexico case law and the common law . . . permit a private cause of action.

Tr. at 82:18-25 (Dunn).

The Plaintiffs also contend that, in the event that the Court decides that the judicial forum is appropriate to address the Defendants' policy concerns, public policy does not militate in favor of precluding the Plaintiffs' claims, because there are five limiting factors that neutralize any concerns. *See* Tr. at 56:20-21 (Dunn). First, the Complaint alleges that the Commission paid the purse prematurely and in violation of its rules, and thus the Commission is no longer a neutral body. *See* Tr. at 56:21-25, 57:1-15 (Dunn). Second, the Complaint alleges that the Commission

excluded interested parties, i.e., the Plaintiffs, from the administrative proceeding. *See* Tr. at 57:15-16 (Dunn). Third, the Complaint alleges that the Commission performed an objective drug test and that the test was positive for a prohibited substance. *See* Tr. at 59:7-13 (Dunn). Fourth, the Complaint alleges that the Commission deviated from its ordinary procedures and for the first time in history found no violation of the rules despite the fact that there was a positive drug test. *See* Tr. at 59:3-5 (Dunn). Fifth, the Complaint alleges that the Plaintiffs were not allowed to present their claims in any forum, i.e., the Commission denied the Plaintiffs the right to participate in the administrative forum and now contends that the Plaintiffs have no right to judicial review. *See* Tr. at 59:22-25, 60:1-2 (Dunn). The Plaintiffs maintain that, because of these unique limiting circumstances, the Court would not be opening the proverbial floodgates to litigation involving economic losses between competitors in sporting events. *See* Tr. at 56:20-21 (Dunn).

The question whether New Mexico recognizes a claim for prospective economic losses between sporting competitors is a matter of first impression in New Mexico.[9] Moreover, there is a dearth of authority nationwide. The Defendants identify one case, *Youst v. Longo*, 729 P.2d 728, 738 (Cal. 1987), that addresses the question of tort claims between competitors in the context of horse racing. In *Youst v. Longo*, the defendant argued that the superior court lacked jurisdiction over the plaintiff's claim for intentional interference with prospective economic

[9] The parties do not dispute that New Mexico law applies to the Plaintiff's claims. "A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state." *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). In New Mexico, choice-of-law analysis is a two-step process. *See Mosely v. Titus*, 762 F. Supp. 2d at 1314 (citing *Terrazas v. Garland & Loman, Inc.*, 140 N.M. 293, 296, 142 P.3d 374, 377 (Ct. App. 2006)). "In tort actions, New Mexico courts follow the doctrine of lex loci delicti commissi and apply the law of the place where the wrong took place." *Mosely v. Titus*, 762 F. Supp. 2d at 1314 (citing *Torres v. State*, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995)). The Complaint alleges that the alleged wrongful acts took place in New Mexico, and thus the Court applies New Mexico law. *Cf. Mosely v. Titus*, 762 F. Supp. 2d at 1314 (citation omitted).

advantage, because the California Horse Racing Board had exclusive jurisdiction over all matters relating to horseracing, and that countervailing public policies precluded the plaintiff's claim for relief. *See* 729 P.2d at 732. The California Supreme Court did not address the defendant's argument that the agency had exclusive jurisdiction, but agreed with the defendant that public policy precluded the plaintiff's claim. *See* 729 P.2d at 732 (holding that "tort liability for interference with prospective economic advantage is not available, as a matter of . . . public policy, [between competitors] in the context of a sporting event").

In support of its decision that countervailing public policies preclude recovery, the Supreme Court of California explained: "The courts are not appropriate forums for adjudicating claimed sporting event violations which allegedly resulted in prospective economic loss"; rather, the "regulation of sports conduct . . . has been delegated to supervising regulatory agencies for each particular sport, and "[s]pecific rules and regulations exist to provide for penalties for violations[.]" 729 P.2d at 738. The court opined: "The regulatory method for sanctioning . . . sports violators has proven relatively successful"; "[i]t seems unnecessary to supplant this system by bringing the owners or [trainers and jockeys] into the courtroom for a determination of speculative compensatory economic damages," and "[o]ur crowded courts are ill-equipped to decide such specialized matters." 729 P.2d at 738. "In light of these important public policies, we conclude that a cause of action will not lie for prospective economic loss which arises between competitors during a sporting contest." 729 P.2d at 738. The court explained that to hold otherwise would "open the proverbial floodgates" to litigation. 729 P.2d at 735.

The Court concludes that the facts of *Youst v. Longo* are distinguishable from those here. Thus, the countervailing public policy concerns implicated in *Youst v. Longo* do not apply with equal force here. First, in *Youst v. Longo*, the court explained that,

> [i]n the specific context of a horseracing event, the physical demands placed on harness drivers attempting to control and maneuver the animals frequently may require jockeying for position. . . . To impose liability on drivers for acts which may be a necessary consequence of their jockeying for track position would effectively eliminate the type of intense competition permitted by the rules of racing.

729 P.2d at 738. In contrast, the conduct in which the Defendants allegedly engaged is not conduct that is a necessary consequence of the sport of racing and it does not impede the competition that the rules of racing permit. The Plaintiffs have alleged that the Defendants provided their horse with a level 2 performance enhancing drug to gain an unfair advantage in the race. *See* Complaint ¶¶ 130, 141, at 23, 25. Unlike jockeying for position during the heat of a race, the alleged conduct of administering a banned substance to a horse is not a necessary consequence of -- and in fact is antithetical to the spirit of competition underlying -- the sport of racing. Thus, the policy concerns that justified the Supreme Court of California's ruling in *Youst v. Longo* do not apply to the facts alleged here.

The countervailing public policies that militated against finding a cause of action in *Youst v. Longo* are likewise minimized here, because, as the Plaintiffs argued at the September 24, 2012, hearing, several limiting factors exist that would prevent a ruling in the Plaintiffs' favor from becoming a "parade of horribles." Tr. at 56:20-21 (Dunn). The Court need not decide the broader question whether New Mexico public policy permits *all* claims for prospective economic damages between competitors in a sporting contest. Rather, the Court concludes that, on the facts of this case, the Supreme Court of New Mexico likely would hold that public policy concerns do

not preclude the Plaintiffs' claims for prospective economic relief.[10] Thus, the Court holds only that New Mexico public policy does not preclude a plaintiff's claim for prospective economic relief against a competitor in a sporting event, where the claims are premised on conduct that is not necessary to the sport (and in fact is antithetical to it), and where the plaintiff can allege and ultimately prove that the underlying administrative process was not fair and complete, because the adjudicating body was an interested party, the administrative body found no violation of the rules despite objective evidence to the contrary, the administrative body deviated from its ordinary procedures to reach the result of no violation, and the administrative body excluded interested parties from the process thereby providing the interested parties with no forum in which to present their claims.

The Court also declines to adopt the Defendants' public policy argument for a second reason. The Plaintiffs' limiting factors essentially amount to an argument that the administrative procedure itself was unfair. At the September 24, 2012, hearing on the Motion to Dismiss, the Court inquired on what ground the Court could preclude the Plaintiffs' claims, given that the Plaintiffs alleged that the hearing was not fair and complete. *See* Tr. at 100:21-25, 101:1-5 (Court). Specifically, the Court asked: "[H]ow can I on a Rule 12(b)(6) make th[e] determination [to bar the Plaintiffs' claims] if they've alleged that [the hearing] wasn't fair and complete[?]"; "how do I . . . cut the[ Plaintiffs] off at the 12(b)(6) stage?" Tr. at 100:21-25, 101:1-5 (Court). Indeed, the Defendants' counsel essentially conceded that the state administrative process must be

[10] In a diversity jurisdiction case, a federal district court applies "state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). "[T]he Court's task is to predict what the state supreme court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007). *Accord Mosley v. Titus*, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(citation omitted).

fair to preclude judicial review. Specifically, the Defendants' counsel opined that there is no right of judicial review "when the State effectively represent[s] the rights of the party of the State of New Mexico." Tr. at 38:22-24 (Blackburn). Here, the Complaint alleges that the underlying process was not complete or fair, that the State prosecutor was not neutral, that the State benefitted from a finding in the Defendants' favor, and that the State mishandled the prosecution of the charges. *See* Complaint ¶¶ 75, 76, 81, at 15. Moreover, the Complaint alleges that the Commission wrongfully excluded the Plaintiffs, who were interested parties, from the administrative review process and essentially deprived the Plaintiffs of any forum in which to have their claims heard. *See* Complaint ¶¶ 28, 29, at 6-7; *id.* ¶ 40, at 8; *id.* ¶ 46, at 10; *id.* ¶¶ 56, 57, at 12.

Although opening a floodgate of litigation between competitors in a sporting event raises public policy concerns, a competing public policy concern exists when -- assuming the facts alleged by the Plaintiffs are true -- a state agency conducts an unfair and incomplete review, insulates itself from any judicial review, and does not allow competitors with an affected interest to participate in the administrative process. The limiting factors thus give rise to countervailing public policy concerns that outweigh the concerns that the Defendants raise. The Court holds that the Supreme Court of New Mexico would likely find that these countervailing public policy concerns weigh in favor of allowing the Plaintiffs' claims for prospective economic relief to proceed.

The Court is not persuaded to hold otherwise by the Defendants' remaining arguments in support of barring the Plaintiffs' claims on the ground of public policy. Although the Defendants maintain that, if the process was not fair and complete, the prosecuting State attorney could appeal

to the Commission, *see* Tr. at 36:21-25, 37:1-2, it is the Commission itself that the Plaintiffs have alleged was biased. Thus, an appeal to the Commission does not address the Plaintiffs' fairness concerns.

The Defendants also argue that paying out the purse did not transform the Commission into an interested party, because "there are ways under the rules and regulations had [the Defendants] lost that hearing that [the purse money] would have been returned." Tr. at 88:2-7 (Blackburn). At the 12(b)(6) stage, however, this fact is not relevant to the Court's inquiry, because the Court must accept the allegations in the Complaint as true, *see Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)(citation omitted), and those allegations indicate that the Commission was not neutral, *see* Tr. at 56:21-25, 57:1-15 (Dunn); Complaint ¶¶74, 77, 78, at 14-15.

The Court likewise is not persuaded to hold otherwise by the Defendants' citation to *White v. Turfway Park Racing Association*, a decision from the United States District Court for the Eastern District of Kentucky, in which the district court "compared judicial review of a horse race to judicial review of an umpire's calls of balls and strikes." Motion to Dismiss at 7 (citing *White v. Turfway Park Racing Ass'n*, 718 F. Supp. 615, 618 (E.D. Ky. 1989), *aff'd*, 909 F.2d 941 (6th Cir. 1990)). The *White v. Turfway Park Racing Association* court stated:

> Plaintiff in his complaint is in essence asking this court to determine the outcome of a horse race, in spite of the presence of officials at that race. His demand is equivalent of asking the court to overrule the decision of an umpire in a baseball game or a referee in a football game.

718 F. Supp. at 618. Citing *White v. Turfway Park Racing Association*, the Defendants contend that the courts would never sanction "'judicial review of an umpire's calls of balls and strikes'" and that "neither should Plaintiffs' attempts to re-write the outcome of a sporting contest" be

permitted. Motion to Dismiss at 7 (quoting *White v. Turfway Park Racing Ass'n*, 718 F. Supp. at 618).

The Court concludes, however, that *White v. Turfway Park Racing Association* is distinguishable. In the Kentucky case, a bettor, and not a competitor, brought suit against a racetrack, and not against another competitor. *See White v. Turfway Park Racing Ass'n*, 718 F. Supp. at 615-16. The United States District Court for the Eastern District of Kentucky held that the bettor-plaintiff's claims failed in part, because the Kentucky rules of racing denied bettors -- but granted competitors -- standing to challenge the order of finish of a race. *See White v. Turfway Park Racing Ass'n*, 718 F. Supp. at 620. The facts here are distinguishable, because the Commission's rules grant competitors such as the Plaintiffs the right to bring a complaint before the Commission and allow competitors to appeal a ruling of the stewards to the Commission. *See* N.M. Admin. Code 15.2.1.9(B)(2)(b), (9)(a).

The decision in *White v. Turfway Park Racing Association* is also distinguishable, because, as the United States District Court for the District of Kentucky explained, there was no allegation that the adjudicatory body entered its decision in bad faith. *See* 718 F. Supp. at 618 ("At least in cases where as here there is no charge of bad faith, it cannot ordinarily be the duty of a court either to determine the eligibility of entries or to decide which horse won a race."). Here, in contrast, the Complaint alleges that the administrative procedure was unfair and incomplete, and that the Commission did not follow the governing rules and procedures. *See* Complaint ¶¶ 73, 74, 77, 78, 98, at 14-15, 18. Thus, the Kentucky decision does not provide persuasive authority in support of the Defendants' public policy defense.

Finally, to the extent that the Defendants argue that the Court should bar the claims on the ground of public policy, because the Plaintiffs have not alleged that the Commission conspired with the Defendants to create an unfair or incomplete administrative review, the Court likewise is not persuaded. The Defendants question: "[If the Commission] decided it was going to fix this whole thing to save its own hide, how does that make the [Defendants] liable for that process[ when] [t]he[ Plaintiffs] have not alleged that there was a conspiracy between the commission and the [Defendants?]" Tr. at 102:1-5 (Blackburn). *See also* Tr. at 103:1-11 (Blackburn). The Plaintiffs do not contend, however, that the Commission's alleged bias serves as a basis of *liability* against the Defendants. Rather, the Plaintiffs argue that the Commission's alleged bias serves as a limiting factor that neutralizes the *public policy* concerns raised by the Defendants. Moreover, the Defendants do not explain why the Court should preclude the Plaintiff's claims if there is an allegation of conspiracy, but only argue that there is no allegation. While a conspiracy allegation would help the Plaintiffs avoid preclusion of their claim, the Court does not believe that New Mexico law requires such an allegation. Thus, the Court concludes that the Supreme Court of New Mexico would hold that an allegation of a conspiracy is not necessary to sustain the Plaintiffs' claims. The Court therefore rejects the Defendants' argument that the Plaintiffs' causes of action must fail, because the Plaintiffs have not alleged that the Defendants conspired with the Commission.

**B. THE PLAINTIFFS' CLAIMS ARE NOT SPECULATIVE OR UNCERTAIN.**

The Defendants contend that the Plaintiffs' claims must fail, because they never allege in the Complaint that "Stolis Winner beat Jet Black Patriot because of caffeine." Reply at 2. *See also* Reply at 2-3. The Plaintiffs argue that their claims are not speculative, contending that they

"have alleged, and can prove, that Jet Black Patriot would have won the race but for the performance enhancing drug or drugs consumed by Stolis Winner." Response at 17-18. The Plaintiffs maintain that the weight of the authority in this country "permit[s either] the recovery of the benefits that reasonably would have been earned" or, in the alternative, the "value of the chance to win when the Plaintiff is unable to prove he would have won but for the wrongful conduct." Response at 22-23 (citing *Miller v. Allstate Ins. Co.*, 573 So. 2d 24, 29 (Fla. Dist. Ct. App. 1990); *Wachtel v. Nat'l Alfalfa Journal Co.*, 176 N.W. 801 (Iowa 1920); *Van Gulik v. Resource Dev. Council*, 695 P.2d 1071 (Alaska 1985); *Kansas City, M. & O. Ry. Co. v. Bell*, 197 S.W. 322 (Tex. Civ. App. 1917); *Hobbs v. Boatright*, 195 Mo. 693, 93 S.W. 934 (Mo. 1906); *McPeek v. Western Union Tel. Co.*, 107 Iowa 356, 78 N.W. 63 (1899); *Webb v. Fulchire*, 25 N.C. 485 (1843); *Restatement (Second) of Contracts* § 348(3) (1979); C. McCormick, *Damages* § 31, at 122-23; W. Malone, *Ruminations on Cause-in-Fact*, 9 Stan. L. Rev. 60, 80 (1956)). The Plaintiffs also contend that damages are not speculative, because the English common law, which New Mexico has adopted, permits recovery for the value of the lost chance to prevail in a sporting event or contest. *See* Response at 21 (citing N.M. Stat. Ann. § 38-1-3).

The Plaintiffs distinguish those cases in which the courts have not permitted recovery by arguing that "the facts prevent[ed] the plaintiff from realistically proving [he or she] would have prevailed but for the wrongful conduct," which was "necessarily a fact issue." Response at 23-24 (citing *Youst v.* Longo, 729 P.2d 728, 738 (Cal. 1987),; *McDonald v. John P. Scripps Newspaper*, 257 Cal. Rptr. 473 (Cal. Ct. App. 1989); *Alderson v. Miami Beach Kennel Club, Inc.*, 336 So. 2d 477 (Fla. Dist. Ct. App. 1976); *Jones v. Duff*, 445 N.Y.S.2d 838 (N.Y. App. Div. 1981); *Friedlander v. Nat'l Broadcasting Co*., 241 N.Y.S.2d 477 (N.Y. Sup. Ct. 1963), *rev'd on other*

*grounds*, 246 N.Y.S.2d 889 (N.Y. App. Div. 1964); *Phillips v. Pantages Theatre Co.*, 300 P. 1048 (Wash. 1931); *Collatz v. Fox Wisc. Amusement Corp.*, 300 N.W. 162 (Wis. 1941)). According to the Plaintiffs, "[w]hen American courts have not permitted a recovery . . . , it was done on the basis of causation, namely the damages claimed by Plaintiff were, according to those courts, too speculative." Response at 25. The Plaintiffs maintain that the facts here are distinguishable from those cases denying recovery, because "Jet Black Patriot was an extremely close second." Response at 25.

Scholarly authority opines that the speculative nature of the outcome of sporting events and contests often results in a denial of recovery. Professors Prosser and Keeton summarize the prevailing rule in sports contests and its rationale as follows:

> When the attempt has been made to carry liability for interference . . . into such areas as . . . deprivation of the chance of winning a contest, the courts have been disturbed by a feeling that they were embarking upon uncharted seas, and recovery has been denied; and it is significant that the reason usually given is that there is no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits.

Prosser & Keeton, *supra* § 130, at 1006. The *Restatement (Second) of Torts* describes circumstances under which the results of races or contests will not be speculative. *See Restatement (Second) of Torts, supra* § 744B, at 59-60; *Coffey v. U.S.*, 906 F. Supp. 2d 1114, 1170 n.31 (D.N.M. 2012 (Browning, J.)("The New Mexico courts often look to the law as stated in the *Restatement (Second) of Torts.*")(citing *Montanez v. Cass*, 89 N.M. 32, 38, 546 P.2d 1189, 1195 (Ct. App. 1975), *rev'd on other grounds sub nom N.M. Elec. Serv. Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976))(additional citation omitted). In commenting on the possible situations that may justify liability for interferences with prospective economic benefits of a noncommercial character, the *Restatement* authors state:

> [Courts have found liability in c]ases in which the plaintiff is wrongfully deprived of the expectancy of winning a race or a contest, when he has had *a substantial certainty or at least a high probability of success.* For example, the plaintiff is entered in a contest for a large cash prize to be awarded to the person who, during a given time limit, obtains the largest number of subscriptions to a magazine. At a time when the contest has one week more to run and the plaintiff is leading all other competitors by a margin of two to one, the defendant unjustifiably strikes the plaintiff out of the contest and rules him ineligible. In such a case there may be sufficient certainty established so that the plaintiff may successfully maintain an action for loss of the prospective benefits.

*Restatement (Second) of Torts*, *supra* § 744B, at 59-60 (emphasis added). The *Restatement* authors further opine: "On the other hand, if the plaintiff has a horse entered in a race and the defendant wrongfully prevents him from running, there may well not be sufficient certainty to entitle the plaintiff to recover . . . ." *Restatement (Second) of Torts, supra* § 744B, at 59-60 (emphasis added).

The Supreme Court of California in *Youst v. Longo* relied upon these authorities and held that, in addition to being unavailable as a matter of public policy, tort liability also was not available as a matter of law, because the outcome of a sporting event, including a horse race, is speculative. *See Youst v. Longo*, 729 P.2d at 732-33, 737. The Supreme Court of California explained: "It is a well-settled general tort principle that interference with the *chance* of winning a contest, such as the horserace at issue here, usually presents a situation too uncertain upon which to base tort liability." *Youst v. Longo*, 729 P.2d at 730 (emphasis in original). Under California law, a threshold requirement for an interference with prospective business advantage claim is "the *probability* of future economic benefit." *Youst v. Longo*, 729 P.2d at 733 (citations omitted)(emphasis in original). The *Youst v. Longo* court explained that application of the threshold requirement in the context of a sporting contest prevents the opening of the "proverbial floodgates to a surge of litigation based on alleged missed opportunities to win various types of

contests, despite the speculative outcome of many of them." 729 P.2d at 735. The court held that the plaintiff had not established the threshold probable expectancy of future economic benefit, because the plaintiff's complaint did not adequately allege facts showing interference with a *probable* economic gain, i.e., that the plaintiff's horse would have won the horse race, or at least won a larger prize, if the defendant had not interfered. *See* 729 P.2d at 737.

*Youst v. Longo* is distinguishable, however, and therefore does not support a finding in the Defendants' favor on the question of speculative damages in this case. In *Youst v. Longo*, the plaintiff alleged that the defendant drove his horse into the path of the plaintiff's horse and that the defendant struck the plaintiff's horse with a whip, thereby causing the plaintiff's horse to break stride. *See* 729 P.2d at 730-31. The plaintiff's horse finished sixth while the defendant's horse finished second. *See* 729 P.2d at 730-31. The California Horse Racing Board reviewed the events of the race and disqualified the defendant's horse, which moved the plaintiff's horse into fifth place, entitling the plaintiff to a fifth place purse of $5,000. *See* 729 P.2d at 731. The plaintiff requested compensatory damages in the purse amount for either first, second, or third place, less the fifth place prize of $5,000. *See* 729 P.2d at 731.

The Supreme Court of California explained that, to "[a]scertain[] the amount of actual damages," the court "would need to determine the position in which [the plaintiff's horse] would have finished but for defendant's interference." 729 P.2d at 731. The court explained that such an inquiry presented a seemingly "impossible" task. 729 P.2d at 736. Specifically, the court opined:

> Determining the probable expectancy of winning a sporting contest but for the defendant's interference seems impossible in most if not all cases, including the instant case. Sports generally involve the application of various unique or unpredictable skills and techniques, together with instances of luck or chance

> occurring at different times during the event, any one of which factors can drastically change the event's outcome. In fact, certain intentional acts of interference by various potential "defendant" players may, through imposition of penalties or increased motivation, actually allow the "victim" player or team to prevail. Usually, it is impossible to predict the outcome of most sporting events without awaiting the actual conclusion.

729 P.2d at 736. In distinguishing cases in which courts have allowed a cause of action to proceed, the court drew support from the *Restatement (Second) of Torts*, which "indicate[s] . . . certain contests may have a higher probability of ultimate success than others." 729 P.2d at 736 (citing *Restatement (Second) of Torts*, *supra* § 744B, at 59-60). The court reasoned: "To this end, the cases cited by the Court of Appeal here, awarding damages to competitors in contests, are distinguishable because in each case there was a high probability of winning." 729 P.2d at 736-37 (citation omitted).

The *Youst v. Longo* court, applying the foregoing analysis, held:

> [I]t seems clear that plaintiff's complaint fails adequately to allege facts showing interference with a *probable* economic gain, i.e., that the plaintiff's horse would have won this horserace, or at least won a larger prize, if defendant had not interfered. Here, the complaint only alleged in conclusory terms that defendant's wrongful interference resulted in a lost "opportunity" to finish higher in the money. The complaint merely indicated that defendant's maneuvers and whipping forced [the plaintiff's horse] to break stride and fall out of contention.

729 P.2d at 737. The California court therefore concluded that "the threshold element of probability for interference with prospective economic advantage was not met by the facts alleged" and that "[i]t was not reasonably *probable*, on the facts alleged, that [the plaintiff's horse] would have finished in a better position." 729 P.2d at 737 (holding that no action exists for civil conspiracy to intentionally interfere with prospective economic advantage in the context of a sporting event).

In New Mexico, to state a claim for intentional interference with prospective contractual

relations, a plaintiff must allege that "there was an actual prospective contractual relation which, but for the [defendant's] interference, would have been consummated." *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 159, 637 P.2d 837, 841 (1981). This element of causation is akin to the threshold requirement of a probable expectancy at issue in *Youst v. Longo*, 729 P.2d at 733 (requiring a plaintiff to show that a "reasonably probable . . . prospective economic advantage would have been realized but for defendant's interference" and recognizing that "to allow recovery without proof of probable loss would essentially eliminate the tort's element of causation, which links the wrongful act with the damages suffered").

Although the Supreme Court of California in *Youst v. Longo* held that the outcome of the horse race at issue there was too uncertain to allow the plaintiff's claims to proceed, the facts of this case are distinguishable. In *Youst v. Longo*, the plaintiff's horse finished sixth place, and the defendant's horse finished second. *See* 729 P.2d at 730-31. Once the California Horse Racing Board disqualified the defendant's horse, the plaintiff's horse moved into fifth place. *See* 729 P.2d at 731. The *Youst v. Longo* court held that the plaintiff's claim for damages in the purse amount for first, second, or third place -- less the fifth place prize of $5,000 -- was speculative, because it was "impossible" to determine the position in which the plaintiff's horse would have finished but for the defendant's interference. 729 P.2d at 731, 736. Here, in contrast, the Plaintiffs' horse finished second, and the Defendants' horse finished first. If the Court takes the allegations in the Complaint as true, which it must for purposes of a motion to dismiss, *see Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)(citation omitted), then the Commission should have disqualified the Defendants' horse and moved the Plaintiffs' horse into first place. On these facts, the "impossible task" that the *Youst v. Longo* court faced is not present. Rather,

the Court here can determine with certainty that the Plaintiffs' horse would have finished in first place. *See Restatement (Second) of Torts*, *supra* § 744B, at 59-60. Thus, damages are not speculative.

The damages in this case are likewise distinguishable from those Professors Prosser and Keeton and the authors of the *Restatement (Second) of Torts* discuss. Professors Prosser and Keeton explain that courts have been reluctant to assign liability for intentional interference claims based upon the deprivation of the chance of winning a contest or race because "there is no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits." Prosser & Keeton, *supra* §130, at 1006. Likewise, the *Restatement* authors indicate that an action for interference with prospective economic benefits may be sustained in "[c]ases in which the plaintiff is wrongfully deprived of the expectancy of winning a race or a contest, when he has had a substantial certainty or at least a high probability of success," and the authors also state that "if [a] plaintiff has a horse entered in a race and the defendant wrongfully prevents him from running, there may well not be sufficient certainty to entitle the plaintiff to recover . . . ." *Restatement (Second) of Torts*, *supra* § 744B, at 59-60 (emphasis added). The facts of this case, however, are distinguishable from the circumstances that the foregoing authorities describe, because the Complaint alleges facts from which the Court can conclude with absolute certainty that, if Stolis Winner had been disqualified, the Plaintiffs' horse would be in first place. Moreover, the Complaint alleges that Jet Black Patriot was an extremely close second, finishing only a "neck" behind Stolis Winner. Complaint ¶ 12, at 4. Thus, the Plaintiffs' allegations clearly meet the "substantial certainty" or "high probability of success" standard that the authors in the *Restatement* articulate. *See Restatement (Second) of Torts*, *supra* § 744B, at 59-60.

The Plaintiffs also contend that, even if the Plaintiffs could not prove their horse would have won, they nonetheless state a claim, because they are "entitled to the value of the chance to win the race against other horses who were in compliance with the rules of the sport." Response at 25 (citing Prosser & Keeton, *supra* § 130, at 1006). Professors Prosser and Keeton state:

> For the most part the 'expectancies' thus protected have been those of future contractual relations . . . . In such cases, there is background of business experience on the basis of which it is possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered.

Prosser & Keeton, *supra* § 130, at 1006. In support of this argument, the Plaintiffs contend that the English common law recognizes recovery on a loss-of-chance theory. *See* Response at 21. Under this theory, "although uncertainty diminishes the value of an opportunity, it does not render it worthless." *Miller v. Allstate Ins. Co.*, 573 So. 2d 24, 29 (Fla. Dist. Ct. App. 1990), *cert. denied*, 581 So. 2d 1307 (1991). *See also* Comment, *Chances as Protected Interests: Recovery for Loss of a Chance and Increased Risk*, 17 U. Balt. L. Rev. 139, 141 (1987) (explaining that English cases permitted a pro-rata recovery in contract disputes "whereby the plaintiff received an award reflecting the percentage probability that the defendant had diminished the likelihood of achieving the favorable outcome").

Although the Plaintiffs argue that New Mexico has adopted the English common law, *see* N.M. Stat. Ann. § 38-1-3, and that the Court therefore should apply the English theory recognizing lost chances, as one commentator has observed, "American courts, at first hesitant to recognize chances as protected interests, followed English cases and permitted pro-rata recovery in contract disputes," but have not recognized chances as protected interests in tort cases. *Chances as Protected Interests*, *supra* at 141 (internal footnote omitted). Indeed, all but one of the cases that

the Plaintiffs cite in support of the proposition that the Court should allow recovery for the value of the chance to win are premised upon a breach-of-contract theory. *Compare* Response at 22 (citing *Van Gulik v. Resource Dev. Council*, 695 P.2d 1071, 1073-74 (Alaska 1985)(holding that the plaintiff was entitled under contract principles to share a grand prize or participate in a drawing between two winning tickets where the evidence showed that the plaintiff would have won or tied if the defendant had conducted the lottery properly); *Miller v. Allstate Ins. Co.*, 573 So. 2d at 29 ("It is now an accepted principle of contract law . . . that recovery will be allowed where a plaintiff has been deprived of an opportunity or chance to gain an award or profit even where damages are uncertain."); *Wachtel v. Nat'l Alfalfa Journal Co.*, 176 N.W. 801, 805 (Iowa 1920)(allowing a plaintiff to recover the value of the chance to win a prize when a contest organizer allegedly breached a contract by wrongfully cancelling a contest); *Webb v. Fulchire*, 25 N.C. 485 (N.C. 1843)(permitting the loser of a game of chance to recover damages under contract law when the defendant did not administer the game fairly); *Kansas City, M&O Ry. Co. v. Bell*, 197 S.W. 322, 323 (Tex. Civ. Ct. App 1917)(holding that the plaintiff was entitled to recover the value of the chance that his hogs might have won in a stock show, where the defendant breached a contract and failed to deliver the hogs to the plaintiff in time for them to compete)(additional citation omitted)) *with* Response at 22 (citing *McPeek v. W. Union Tel. Co.*, 78 N.W. 63, 64-65 (Iowa 1899)(holding that the reward for the arrest of a felon was sufficiently certain to permit recovery under a negligence theory where the felon's wife agreed to inform the plaintiff when the felon returned home, the felon returned home, and the wife thereafter sent the plaintiff a telegraph instructing the plaintiff to come arrest felon, but the telegraph company negligently failed to perform its duty as a public common carrier of messages to deliver the telegraph to the plaintiff)(additional citations

omitted)).

The Court need not determine, however, at least on this Motion to Dismiss, whether New Mexico recognizes an alternative measure of damages in tort cases based upon the deprivation of the chance to win a race. The Court already has held that the Plaintiffs' claims are not speculative, because, if Stolis Winner had been disqualified, the Plaintiffs' horse would have finished in first place, and because the Plaintiffs have alleged that Jet Black Patriot was an extremely close second place finish. This holding is dispositive, at least for now, and the Court therefore need not determine at this time whether New Mexico recognizes the Plaintiffs' proposed alternative measure of damages based upon the value of the chance to win the race.

### C. TO THE EXTENT THAT THE PLAINTIFFS' CAUSES OF ACTION ARE PREMISED ON A VIOLATION OF THE COMMISSION'S RULES, THE CLAIMS ARE NONETHELESS VIABLE.

The Defendants also argue that the Plaintiffs' tort claims must fail because the Commission determined that the Defendants did not violate any of the Commission's rules, and because all of the Plaintiffs' claims are premised on the allegation that the Defendants violated the rules. *See* Motion to Dismiss at 6. The Plaintiffs do not directly respond to this argument, but rather contend that their claims generally are viable under New Mexico tort principles and under the English common law.

The Court is not persuaded that the Supreme Court of New Mexico would hold that the Commission's finding of no violation is fatal to the Plaintiffs' claims. First, although the Defendants contend that the Plaintiffs' claims are premised on an allegation that the Defendants violated the Commission's rules, not all of the Plaintiffs' tort claims are founded upon such a violation. For example, in support of their intentional interference with prospective economic

advantage claim, the Plaintiffs do not allege that the Defendants violated the rules of racing, but rather allege that the Defendants' "actions of intentionally providing Stolis Winner with performance substances were designed to disrupt [the Plaintiffs' economic relationships]." Complaint ¶. 130, at 23. Likewise, in support of their prima facie tort claim, the Plaintiffs allege only that the Defendants "made an intentional act to improperly train Stolis Winner." Complaint ¶ 141, at 25. These allegations, while perhaps implicitly alleging a violation of the Commission's rules, are not directly tied to a violation of the rules of racing. *See* Complaint ¶¶ 130, 141, at 23, 25. Thus, the Defendants' argument that the Plaintiffs have not stated a cause of action, because their claims are premised on a violation of the rules of racing, does not have a sound basis in the allegations with respect to the Plaintiffs' intentional interference and prima facie tort claims.

The Plaintiffs' remaining claims, however, are squarely founded on allegations that the Defendants violated the Commission's rules. For example, in support of their claim for fraud, the Plaintiffs allege that the Defendants "made false representations to Plaintiffs that Stolis Winner had been trained in compliance with New Mexico Racing Commission Rules" and that "Stolis Winner was not under the influence of substances prohibited by New Mexico Racing Commission Rules." Complaint ¶¶ 134, 135, at 24. Likewise, in support of their negligence claim, the Plaintiffs allege that the Defendants "owed a duty to Plaintiffs to comply with the New Mexico Racing Commission Rules in all respects before allowing Stolis Winner to compete." Complaint ¶ 149, at 26.

The Court concludes that, although the Plaintiffs' fraud and negligence claims are premised on a violation of the rules of racing, the fact that the Commission found no violation is not fatal to these claims. An administrative conclusion that the rules were not violated -- absent a

finding that collateral estoppel bars relitigation of the issue -- is not determinative whether the Defendants are liable to the Plaintiffs under New Mexico tort principles. As the Court explained during the September 24, 2012, hearing, the administrative process is a "different animal," separate and distinct from the judicial process, because the former evaluates violations of the Commission's rules and regulations[,] and the latter addresses the Plaintiffs' common-law tort claims seeking damages. Tr. at 39:19 (Court). *See also* Tr. at 39:6-16 (Court). As the Plaintiffs argued, "the administrative hearing merely considered the regulations applying to horse racing in the state from a regulatory point of view" and "did not consider the elements of the [tort] causes of action described above." Response at 28. This administrative process was separate and distinct from the judicial process at issue before the Court. The Court therefore concludes -- assuming the doctrine of collateral estoppel does not apply -- that the Supreme Court of New Mexico would hold that that the Commission's finding of no violation is not binding on the courts. *Cf. Mascarenas v. City of Albuquerque*, 2012 -NMCA-031, ¶ 31, 274 P.3d 781, 789 (Ct. App. 2012)(agency decision will "preclusively effect litigation" in a subsequent civil trial only when the elements of collateral estoppel have been met)(citing *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993)).

To the extent that the Defendants argue that the Plaintiffs' tort claims are barred, because the Commission has exclusive jurisdiction over the question whether the rules were violated and the Plaintiffs' tort claims necessarily require the Court to find a rules violation as a predicate to tort liability, the Court is not persuaded.[11] First, the Plaintiffs' claims sound in tort. Claims that

[11] At the September 24, 2012, hearing, the Defendants' counsel argued that there is no right to judicial review of the Commission's decisions, *see* Tr. at 7:2-20, 8:2 (Blackburn); Tr. at 7:2-20, 8:2 (Blackburn), and that even the state tort claims are precluded if the Commission finds

sound in tort traditionally weigh against a finding that an administrative agency has exclusive jurisdiction, because tort claims are within the province of the judicial system. *See Summit Props., Inc. v. Pub. Serv. Co.*, 138 N.M. 208, 214, 118 P.3d 716, 722 (Ct. App. 2005)(rejecting the argument that the agency had exclusive jurisdiction over the Plaintiff's contract claim, because the general rule is that "courts have original jurisdiction 'over claims sounding in tort, contract, and consumer fraud")(quoting *Nevada Power Co. v. Eighth Judicial Dist. Ct.*, 102 P.3d 578, 586-87 (Nev. 2004)), *cert. denied*, 138 N.M. 145, 117 P.3d 951 (2005). Second, the Commission is not authorized to award damages or the other relief that the Plaintiffs request. That an agency cannot award the relief sought also weighs against a finding that the agency has exclusive jurisdiction. *See Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. 441, 443-44, 872 P.2d 859, 861-62 (1994)("[B]ecause the remedies provided in the Act are not the same as the remedies available in a tort action for retaliatory discharge, we hold that the legislature did not intend the Act's remedies to be exclusive"); *Nevada Power*, 102 P.3d at 587 (holding that the agency did not have exclusive jurisdiction over the plaintiff's tort claims, because the agency could enter only civil penalties but did not have the authority to award compensatory and punitive damages). Third, neither the New Mexico Horse Racing Act and nor the Commission's regulations provide that the Commission has exclusive jurisdiction over all matters related to racing. When a statute or regulation does not expressly extend exclusive jurisdiction to an agency, this omission weighs against a finding of

---

no violation of its rules, *see* Tr. at 47:9-13 (Blackburn). The Defendants' counsel maintained that because the horse racing industry is heavily regulated, when an aggrieved party has due process in the form of an administrative appeal, and when the state effectively prosecutes the case, the matter falls solely within the agency's domain and that affected parties receive due process through the agency review process. *See* Tr. at 35:15-17 (Blackburn); Tr. at 39:18-25 (Blackburn). The Court construes this argument as an argument that the Commission has exclusive jurisdiction over matters related to violation of the rules and regulations promulgated pursuant to the New Mexico Horse Racing Act.

exclusive jurisdiction. *See Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. at 444, 872 P.2d at 862 (holding that agency did not have exclusive jurisdiction, in part, "[b]ecause the language of the Act . . . contains no declaration that the remedies it provides are exclusive")(citation omitted); *Summit Props., Inc. v. Pub. Serv. Co.*, 138 N.M. 208, 214, 118 P.3d 716, 722 (Ct. App. 2005)(rejecting the argument that the Public Service Commission has exclusive jurisdiction over the plaintiff's breach-of-contract claim, because Section 62-6-5 expressly grants the Public Service Commission "general and exclusive power and jurisdiction to regulate and supervise," but does not extend exclusive jurisdiction to contract claims). Because all three of these considerations weigh against a finding that the Commission has exclusive jurisdiction over claims implicating the rules of racing, the Court concludes that the Supreme Court of New Mexico would hold that the Plaintiffs' causes of action are viable.

The Court also concludes that the Commission does not have exclusive jurisdiction over the Plaintiff's claims because the Plaintiffs have alleged that the Commission's administrative process was unfair and incomplete and because the administrative remedy would be inadequate. Courts have declined to hold that a state agency has exclusive jurisdiction over a set of common-law claims if the administrative remedy is not adequate. *See Campione v. Adamar of New Jersey, Inc.*, 714 A.2d 299, 306-07 (N.J. 1998)(holding that a state agency did not have exclusive jurisdiction to hear a common-law claim, because the plaintiff's administrative remedy would not be adequate)(citations omitted); *Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1233-35 (3d Cir. 1994)(holding that the court had jurisdiction to hear a counterclaim even though a statue granted a state administrative agency exclusive jurisdiction over "all matters delegated to it or within the scope of its powers under the provisions of this act," and holding the statutory

language did not grant the state agency exclusive jurisdiction to hear common-law claims because the agency's remedies would be inadequate).

The Plaintiffs have alleged facts indicating that the administrative remedy is not adequate here, because the Commission is not authorized to award the compensatory damages that the Plaintiffs seek. *See* Complaint ¶ 30, at 7. *See Greate Bay Hotel & Casino v. Tose*, 34 F.3d at 1234-35 (holding that the administrative agency did not have exclusive jurisdiction, in part, because compensatory or punitive damages were not available in the administrative forum, which rendered the administrative remedy inadequate); *Campione v. Adamar of New Jersey, Inc.*, 714 A.2d at 307 (holding that the administrative agency did not have exclusive jurisdiction, because the enabling statute authorized the agency to award only restitution and to impose administrative sanctions, and did not authorize the agency to award money damages). Furthermore, the Plaintiffs allege that the administrative forum was not adequate, because the process was unfair and incomplete, and "fatally defective in numerous respects." Complaint ¶ 48, at 10. *See also* Complaint ¶¶ 49-81, at 10-15. The Plaintiffs allege, for example, that the Commission was not neutral and had a vested interest in finding no violation of its rules, *see* Complaint ¶¶ 73, 74, 77, 78, 81, at 14-15, because it "erroneously releas[ed] the purse" to the Defendants, Complaint ¶ 81, at 15, and because the Commission "could avoid liability if the administrative process 'blesse[d]' [the Defendants'] behavior in this case," Complaint ¶ 77, at 15. In addition, the Plaintiffs allege that, despite their status as parties with an affected interest, the Commission wrongfully excluded the Plaintiffs and deprived them of any forum in which to address their claims. *See* Complaint ¶¶ 29, 43, at 6, 9. The Plaintiffs also allege that the administrative process was "defective," because the prosecutor entered into false stipulations, failed to present crucial deposition testimony, failed

to object to any of Taylor's evidence or to meaningfully cross-examine any of Taylor's witnesses, and failed to present any evidence of Taylor's "substantial history of doping violations by racing authorities around the nation." Complaint ¶¶ 51-53, 58, 61, 62, at 11-13. Thus, the Court concludes that the Supreme Court of New Mexico would hold that a court has jurisdiction to hear the Plaintiffs' claims, because the Plaintiffs have alleged that the administrative process was not adequate. *Cf. Campione v. Adamar of New Jersey, Inc.*, 714 A.2d at 306-07 (holding that a state agency did not have exclusive jurisdiction over a common-law claim where the administrative process was not adequate); *Greate Bay Hotel & Casino v. Tose*, 34 F.3d at 1234-35 (same).

For the foregoing reasons, the Court is not persuaded that the Supreme Court of New Mexico would find that the Plaintiffs' tort claims must fail, because the Commission determined that the Defendants did not violate any of the Commission's rules. *See* Motion to Dismiss at 6. First, not all of the Plaintiffs' claims are expressly premised on a violation of the rules of racing. Second, to the extent that the claims require a finding that the Defendants violated the racing rules, that the Commission determined that the Defendants did not violate the rules is not fatal to the Plaintiffs' claims. The administrative process was separate and distinct from the judicial process before the Court, and, therefore, absent a finding that collateral estoppel bars relitigation of the question of a rules violation, the Supreme Court of New Mexico would likely conclude that the Commission's finding of no violation is not binding on the Court. Furthermore, the Supreme Court of New Mexico would likely conclude that a court can exercise jurisdiction over the Plaintiffs' claims, because the Plaintiffs have alleged that the administrative process was inadequate. Thus, the Court will deny the Defendants' Motion to Dismiss the Plaintiffs' claims for prospective economic losses.

**D. THE COMPLAINT STATES A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS AND PRIMA FACIE TORT.**

The Defendants argue that the Court should dismiss the Plaintiffs' intentional interference claim, because the Complaint contains no allegations that the Defendants "interfered with any contractual relations or that they 'either induced Plaintiffs not to enter into or continue a prospective relation with anyone, or prevented Plaintiffs from acquiring or continuing a prospective relation with anyone.'" Reply at 4 (quoting *Gregory Rockhouse Ranch, LLC v. Glenn's Water Well Serv.*, 114 N.M. 690, 700, 191 P.3d 548, 558 (Ct. App. 2008)). The Defendants also argue that the Plaintiffs' prima facie tort claim "is an entirely inappropriate application of prima facie tort, which 'should not be used to evade stringent requirements of other established doctrines of law.'" Reply at 7 (quoting *Stock v. Grantham*, 125 N.M. 564, 575, 964 P.2d 125, 136 (Ct. App. 1998)).[12] The Court does not agree.

With respect to the Defendants' first argument, the Court concludes that the Complaint

[12] While the Court does not have to consider these arguments, because the Defendants raise the arguments for the first time in their Reply, and arguments raised for the first time in a reply brief are generally deemed waived, *see Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003); *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir.), *cert. denied*, 537 U.S. 961 (2002); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir. 1993), the Court will address the arguments. The Defendants filed their Reply on June 11, 2012, and the Court held a hearing on September 24, 2012. The Plaintiffs had ample opportunity to seek to file a surreply or to make any additional argument at the hearing. Moreover, the Court repeatedly asked the Plaintiffs if they had anything else they wanted to raise on the issues before the Court. *See, e.g.*, Tr. at 106:5-6 (Court)("Is there . . . [a]nything else we need to discuss?"); Tr. at 106:7-8 (Dunn)(stating that the Plaintiffs had "nothing more to discuss" in response to the Court's inquiry whether the Plaintiffs needed to make any additional argument); Tr. at 40:25, 41:2 (Court)(offering the Plaintiffs the opportunity to make their arguments); Tr. at 53:23-24 (Court)(asking the Plaintiffs if they had any further argument to make); Tr. at 53:24-25 (Linnenburger)(declining to make any further argument in response to the Court's inquiry whether the Plaintiffs had any additional arguments to make). Because the Plaintiffs had the opportunity to respond, the Court will decide the issues.

alleges that the Defendants prevented the Plaintiffs from entering into or acquiring prospective contractual relations. The Complaint alleges that the "Plaintiffs had an economic relationship with third . . . parties, with the probability of future economic benefit to the Plaintiffs," Complaint ¶ 128, at 23, and the Defendants' "actions of intentionally providing Stolis Winner with performance substances were designed to disrupt these relationships," Complaint ¶¶ 129, 130, at 23. By virtue of these allegations, the Plaintiffs have alleged facts indicating that "'there was an actual prospective contractual relation which, but for the [Defendants'] interference, would have been consummated.'" *Horizon AG-Prods. v. Precision Sys. Eng'g, Inc.*, 2010 WL 4054131, *7 (quoting *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 159, 637 P.2d 837, 841 (1981)). Thus, the Court concludes that the Supreme Court of New Mexico would hold that the Plaintiffs have stated a claim for interference with prospective contractual relations, and therefore denies the Defendants' Motion to Dismiss the intentional interference claim.

With respect to the Defendants' second argument, the Court concludes that the Supreme Court of New Mexico would hold that the Complaint states a claim for prima facie tort. In support of their argument that the Plaintiffs' prima facie tort claim is an "entirely inappropriate application of prima facie tort," because the Plaintiffs are using the tort "to evade stringent requirements of other established doctrines of law," *see* Reply at 7, the Defendants cite *Stock v. Grantham*, 125 N.M. 564, 575, 964 P.2d 125, 136 (Ct. App. 1998). In *Stock v. Grantham*, the Court held that the plaintiff's claim for prima facie tort had "no application," because "'prima facie tort should not be used to evade stringent requirements of other established doctrines of law.'" 125 N.M. at 575, 964 P.2d at 136 (quoting *Schmitz v. Smentowski*, 109 N.M. 386, 393, 785 P.2d 726, 736 (1990)(citing *Andrews v. Stallings*, 119 N.M. 478, 493-94, 892 P.2d 611, 626-27 (Ct.

App. 1995)). In *Stock v. Grantham*, the plaintiff's complaint twice mentioned a cause of action for prima facie tort: in count five, entitled "Interference with Entitlement to Unemployment Compensation," the plaintiff alleged "'causes of action generally sounding specifically as the intentional interference with the governmental entitlement or generally as a prima facie tort'"; and in count six, entitled "Intentional Infliction of Emotional Distress," the plaintiff alleged "'separate causes of action, or a single cause of action based upon a pattern of misconduct, sounding as the intentional or reckless infliction of emotional distress or generally as a prima facie tort.'" 125 N.M. at 575, 964 P.2d at 136. The Court of Appeals of New Mexico explained:

> [t]he only function of the claim of prima facie tort in [the plaintiff's] complaint is to escape possible restrictions imposed on the torts of intentional infliction of emotional distress and interference with entitlement to unemployment compensation. . . . This is an improper use of the tort. For example, we would not recognize a claim of intentional infliction of emotional distress in the absence of the outrageous conduct required for that tort, even if the plaintiff relabeled the cause of action as "prima facie tort." Similarly, we would not recognize a claim for interference with entitlement to unemployment compensation without proof that the agency administering unemployment compensation claims had found the plaintiff to be entitled to such benefits.

125 N.M. at 575-76, 964 P.2d at 136-37.

The facts of *Stock v. Grantham* are distinguishable from those here, and the Court therefore does not agree that the Court should dismiss the Plaintiffs' prima facie tort claim for the reasons set forth in *Stock v. Grantham*. The Defendants point to no evidence that the Plaintiffs are attempting to use their prima facie tort claim to escape the restrictions placed on their other common-law claims for intentional interference with prospective contractual relations, fraud, or negligence, and the Court finds none. Indeed, the Court has held that the Plaintiffs have alleged facts sufficient to state a claim for intentional interference with prospective contractual relations, and the Defendants do not even move to dismiss the Complaint on the ground that the Plaintiffs fail to allege facts

necessary to support the fraud or negligence claims. Thus, the Court does not believe that the Supreme Court of New Mexico would agree with the Defendants' argument that the Plaintiffs are using their prima facie tort claim to escape the stringent requirements of their other common-law tort claims.

Rather, the Court concludes that the Supreme Court of New Mexico would hold that the Plaintiffs have alleged plausible facts sufficient to state a claim for prima facie tort. *See* Complaint ¶¶ 141-44, at 25. There are four generally recognized elements of prima facie tort: (i) commission of an intentional, lawful act; (ii) an intent to injure the plaintiff; (iii) injury to the plaintiff as a result of the intentional act; and (iv) the absence of sufficient justification for the injurious act. *See Lexington Ins. Co. v. Rummel*, 123 N.M. 774, 777, 945 P.2d 992, 995 (1997). The Plaintiffs have alleged that the "Defendants Windham and Taylor made an intentional act to improperly train Stolis Winner or provide the horse with performance enhancing substances." Complaint ¶ 141, at 25. The first element of prima facie tort requires the commission of an intentional, *lawful* act. *See Lexington Ins. Co. v. Rummel*, 123 N.M. at 777, 945 P.2d at 995. To the extent the Plaintiff has alleged that the Defendants made an intentional act to improperly train Stolis Winner, that allegation is sufficient to satisfy this element. However, to the extent the Plaintiffs have alleged that the Defendants made an intentional act to provide Stolis Winner with performance enhancing substances, that allegation does not constitute a "lawful act." *Id.* Thus, the Court will dismiss the Plaintiffs' prima facie tort claim to the extent it rests on the Defendants' act of providing Stolis Winner with caffeine.

With respect to the Plaintiffs' prima facie tort claim based upon the act of improperly training Stolis Winner, the Court concludes that the Plaintiffs have also satisfied the remaining

elements of prima facie tort. The Plaintiffs have alleged plausible facts indicating that the Defendants acted with the intent to injure the Plaintiffs, that the Plaintiffs were injured, and that the Defendants' actions were without sufficient justification. *See* Complaint ¶¶ 142-44, at 25. Because the Court believes that these allegations are sufficient to state a claim for prima facie tort, the Court will deny the Motion to Dismiss the prima facie tort claim to the extent the claim is premised on the act of improperly training Stolis Winner.[13]

**E. THE SUPREME COURT OF NEW MEXICO WOULD LIKELY HOLD THAT NEW MEXICO LAW PROVIDES THE PLAINTIFFS WITH A CAUSE OF ACTION FOR PROSPECTIVE ECONOMIC RELIEF.**

The Court declines to adopt the Defendants' arguments that public policy bars the Plaintiffs' claims, that the Plaintiffs' damages are uncertain, that the Plaintiffs' claims must fail because they are premised on a violation of the rules of racing and on the fact that the Commission already has determined that no violation occurred, and that the Complaint does not allege that the Defendants interfered with any prospective contractual relations or state any valid claim of prima facie tort. Rather, the Court concludes that the Supreme Court of New Mexico would likely hold that the Plaintiffs have stated viable common-law claims for prospective economic relief.

In so holding, the Court notes that it generally is uncomfortable with coming up with multi-prong balancing tests like many appellate courts do. They provide little precedential value, and are easily manipulated to reach a result and resemble less law and more of a grant of

---

[13] The Court declines to dismiss the prima facie tort claim at the pleading stage. The Court recently has concluded, however, that, although the New Mexico law on this area is unclear, based on the most current cases, the best option is not to submit both prima facie tort and a similar tort claim to a jury, but also not to dismiss at an earlier stage the prima facie tort claim. *See Mountain Highlands, LLC v. Hendricks*, No. CIV 08–0239 JB/ACT, 2009 WL 1300750, at *10-11 (D.N.M. Feb. 13, 2009) (Browning, J); *Carl Kelley Const. LLC v. Danco Technologies*, 656 F. Supp. 2d 1323, 1344 n.6 (D.N.M. 2009).

discretion. The Court's task here, however, is to predict what a specific appellate court -- the Supreme Court of New Mexico -- would do. The Court believes that the Supreme Court of New Mexico would move incrementally. While it would be reluctant to call "balls and strikes" in state court, it would allow some cases involving competitive games to be litigated, with tight restrictions. In this Memorandum Opinion and Order, the Court attempts to identify those limitations. Having carefully established the restrictions, the Court believes that the Supreme Court of New Mexico would allow the case to proceed on the allegations contained in the Complaint.

The Court draws support for its conclusion from the Supreme Court of New Mexico's decision in *Edward C. v. City of Albuquerque*, 148 N.M. 646, 241 P.3d 1086 (2010). In *Edward C. v. City of Albuquerque*, the Supreme Court of New Mexico opened slightly a door that traditionally had remained shut and held that it would reject the "baseball rule," *see* 148 N.M. at 657, 241 P.3d at 1097, which creates on the part of ball park owners and occupants a limited duty of care toward baseball spectators, 148 N.M. at 652, 241 P.3d at 1092.[14] Although the baseball rule has a long history, and courts "almost universally" adopted some form of the rule, 148 N.M. at 652, 241 P.3d at 1092, the Supreme Court of New Mexico rejected the rule "because of its extreme

---

[14] In its most limited form, the baseball rule holds

> that where a proprietor of a ball park furnishes screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest and that screening is of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game, the proprietor fulfills the duty of care imposed by law and, therefore, cannot be liable in negligence.

*Edward C. v. City of Albuquerque*, 148 N.M. at 652-63, 241 P.3d at 1092-93 (quoting *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 534 (N.Y. 1981)).

and unyielding results." 148 N.M. at 657, 241 P.3d at 1097. Instead, the Supreme Court of New Mexico held that an owner or occupier of a commercial baseball stadium in New Mexico "owes a duty that is symmetrical to the duty of the spectator": "Spectators must exercise ordinary care to protect themselves from the inherent risk of being hit by a projectile that leaves the field of play and the owner/occupant must exercise ordinary care not to increase that inherent risk." 148 N.M. at 657-58, 241 P.3d at 1097-98. If the Supreme Court of New Mexico was willing to find cracks in the long-standing baseball rule, the Court concludes that it likely would allow this case to proceed on the facts alleged.

## II. NEW MEXICO RECOGNIZES A PRIVATE RIGHT OF ACTION UNDER THE RULES PROMULGATED PURSUANT TO THE HORSE RACING ACT.

In addition to bringing the common-law tort claims, the Plaintiffs also bring claims under the New Mexico Horse Racing Act, and under the rules and regulations promulgated by the Commission pursuant to the Act. Neither the New Mexico statute nor its regulations expressly create a private right of action. Under New Mexico law, "[w]hen a party seeks to enforce a statute that provides no express mechanism for its enforcement, [a district court must] examine whether a cause of action may be implied through the common law based on an interpretation of legislative intent or public policy." *Starko, Inc. v. Presbyterian Health Plan, Inc*., 2012-NMCA-053, ¶ 33, 276 P.3d 252, 264-65 (Ct. App. 2011).

The Defendants argue that the Plaintiffs have no implied private right of action under the statute, rules, and regulations, and that the Court should dismiss the Plaintiffs' claims, because "[t]he statute and rules and regulations . . . *do not contain any indication of a [legislative] intent to*

*create a private right of action to competitors.*" Motion to Dismiss at 10 (emphasis in original).[15] Rather, the Defendants contend, the Commission has the "sole authority to determine if any of its rule[s] were violated and what the appropriate penalty shall be." Motion to Dismiss at 9-10. The Plaintiffs disagree, arguing that, under New Mexico law, both legislative intent and public policy can serve as the basis for implying a private right of action. *Cf. Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. 590, 593, 874 P.2d 798, 801 (Ct. App. 1994)(rejecting the notion that legislative intent must be present to imply a private right of action and holding that "public policy [can] form[] the predicate for a common-law cause of action").

In support of their argument that the New Mexico Horse Racing Act does not imply a private right of action, the Defendants cite *Alexander v. Sandoval,* 532 U.S. 275 (2001), for the proposition that the Legislature is presumed not to create a cause of action by statute unless the statute clearly provides for a private right of action. *See* Response at 26 (citing *Alexander v. Sandoval*, 532 U.S. 275). In *Alexander v. Sandoval*, the Supreme Court of the United States held: "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." 532 U.S. at 286 (citation omitted)(holding that Title VI of the Civil Rights Act of

[15] The question whether plaintiffs have a private right of action under the New Mexico Horse Racing Act or its rules and regulations is separate and distinct from the question whether the plaintiffs have viable claims under common-law tort principles. The Plaintiffs argue -- and the Court agrees -- that even if the Court were to conclude that they do not have a private right of action under the statute or its regulations, this holding would not impact the viability of the plaintiffs' tort claims. *See* Response at 26-27. The Court, however, will deny the Defendants' Motion to Dismiss the Plaintiffs' independent tort claims, and that holding is unrelated to the question whether the Plaintiffs have a private right of action under the New Mexico Horse Racing Act, or under the rules and regulations promulgated pursuant to the Act. *Cf. Patterson v. Globe Am. Cas. Co.*, 101 N.M. 541, 544, 685 P.2d 396, 399 (Ct. App. 1984)(the question whether a plaintiff has standing under a statute is separate and distinct from whether the plaintiff has standing to assert claims under other sources, and "[n]othing in this opinion [finding no private right of action under the Act] should be read to exclude private actions arising against an insurer from sources other than the Act")(citation omitted).

1964 does not display congressional intent to create a private right of action to enforce disparate-impact regulations promulgated thereunder). The Supreme Court explained: "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval,* 532 U.S. at 286 (citation omitted). "Statutory intent on this latter point is determinative," and, "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. at 286-87 (citations omitted). The federal test for determining whether legislative intent exists is set forth in *Cort v. Ash*, 422 U.S. 66, 78 (1975). *See Alexander v. Sandoval*, 532 U.S. at 287.

In response, the Plaintiffs argue that *Alexander v. Sandoval* is distinguishable, because it sets forth the rule applicable to construing private rights of action under federal -- and not state -- statutes. *See* Response at 26 (citing *Alexander v. Sandoval*, 532 U.S. at 287). Indeed, the Supreme Court in *Alexander v. Sandoval* explicitly recognized that the standard for discerning whether state statutes create private rights of action is less stringent than the federal standard: "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Alexander v. Sandoval*, 532 U.S. at 287.

In recognition of this distinction between federal and state statutes, the Court of Appeals of New Mexico in *National Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. 590, 593, 874 P.2d 798, 801 (Ct. App. 1994), rejected the argument that the federal test articulated in *Cort v. Ash* exclusively applies to determine whether an implied private right of action under a state statute exists. *See* 117 N.M. at 593, 874 P.2d at 801. The Court of Appeals of New Mexico

applied a less stringent standard for implying a private right of action from a state statute. *See* 117 N.M. at 593, 874 P.2d at 801. In adopting this standard, the Court of Appeals of New Mexico explained that a "state court, because it possesses common-law authority, has significantly greater power than a federal court to recognize a cause of action not explicitly expressed in a statute." 117 N.M. at 593-94, 874 P.2d at 801-02. *See also San Juan Agr. Water Users Ass'n v. KNME-TV*, 150 N.M. 64, 73, 257 P.3d 884, 893 (2011). The Court of Appeals of New Mexico rejected the notion that statutory intent alone is determinative and instead held that a New Mexico court may "look beyond legislative intent in exercising common-law authority to recognize a private cause of action." 117 N.M. at 593, 874 P.2d at 801. The Court of Appeals of New Mexico explained that "a common-law court may utilize the statute solely to demonstrate what is public policy," and the "public policy then forms the predicate for a common-law cause of action." *Nat'l Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801 (citations omitted). The Supreme Court of New Mexico has advanced the proposition that a state court may imply a private right of action based upon public policy, and not legislative intent, and has cited *National Trust for Historical Preservation v. City of Albuquerque* in support of this proposition. *See San Juan Agr. Water Users Ass'n v. KNME-TV*, 150 N.M. at 73, 257 P.3d at 893.

The Plaintiffs argue that, under *National Trust for Historical Preservation v. City of Albuquerque*, when a statute is silent on the question whether a private right of action exists, the Court can look to the New Mexico Horse Racing Act and the Commission's regulations to determine the relevant public policy, and then that policy may serve as the basis for creating a common-law cause of action under the regulations. *See* Response at 26-27.

In *National Trust for Historical Preservation v. City of Albuquerque*, the plaintiffs sought

declaratory and injunctive relief against further planning, funding, contracting, and construction by the defendants of a one-mile segment of a public street that both bordered and invaded a national monument on the ground that the project violated the New Mexico Prehistoric and Historic Sites Preservation Act, N.M. Stat. Ann. §§ 18-8-1 to 18-8-8. *See* 117 N.M. at 592, 874 P.2d at 800. The defendants moved to dismiss the action on the ground that the plaintiffs did not have standing to bring a private action to enforce the Preservation Act under the legislative intent test that the Supreme Court of the United States articulated in *Cort v. Ash*. *See* 117 N.M. at 592, 874 P.2d at 800 (citing *Cort v. Ash*, 422 U.S. 66 (1975)). The Court of Appeals of New Mexico disagreed. *See* 117 N.M. at 592, 874 P.2d at 800.

The Court of Appeals of New Mexico held that the federal legislative intent test articulated in *Cort v. Ash* did not control, because that test "was developed to assist in the interpretation of federal statutes," and "[d]ifferent considerations arise when state courts decide matters of state law." 117 N.M. at 593, 874 P.2d at 801. One such consideration stems from the fact that "[f]ederal courts have very limited authority beyond that conferred by statute or the Constitution. As the United States Supreme Court has stated, 'The instances where we have created federal common law are few and restricted.'" *Nat'l Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801 (quoting *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963)). Thus, the *Cort v. Ash* test essentially is a test to determine whether the United States Congress intended to create, either expressly or by implication, a private cause of action. *See Nat'l Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801 (citation omitted). The Court of Appeals of New Mexico explained that the *Cort v. Ash* factors are not irrelevant to the question whether a private right of action exists under a state statute, but

rather that they are not exclusive. *See* 117 N.M. at 592, 874 P.2d at 800 (citation omitted). Instead, "a state's public policy, independent of the first three *Cort v. Ash* factors, may be determinative in deciding whether to recognize a cause of action." 117 N.M. at 594, 874 P.2d at 802 (citation omitted).

The Court of Appeals of New Mexico has recognized that it is New Mexico public policy "that when[ a] governing statute is silent regarding who may bring a statutorily recognized action to require a public agency to comply with state law, one who is 'injured' by the allegedly unlawful conduct ordinarily may bring suit." *Nat'l Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. at 594, 874 P.2d at 802. *See also De Vargas Savings & Loan Ass'n v. Campbell*, 87 N.M. 469, 535 P.2d 1320 (1975)("It seems fundamental that a plaintiff has standing to protect himself against injury as a result of unlawful governmental action, even in the absence of a controlling statute or constitutional provision."). In *National Trust for Historical Preservation v. City of Albuquerque*, the Court of Appeals of New Mexico concluded that each plaintiff had alleged that it had members who "use, enjoy, derive benefit from, and have a substantial interest in protecting and preserving the character and integrity of the [Monument]," that this use was "threatened by the construction of the Project," and that the members therefore had established that they were injured. 117 N.M. at 594, 874 P.2d at 802. The Court of Appeals of New Mexico further concluded that a private right of action would not impede administrative enforcement, because the agency supported the plaintiffs' private claims. *See* 117 N.M. at 594, 874 P.2d at 802 (citations omitted).

Here, the statutory and regulatory language indicates that it is New Mexico public policy to ensure that horse racing is conducted fairly and honestly, and to protect participants and patrons

from wrongful, unlawful, or unfair practices on the race track. The relevant statutory language supporting this public policy is set forth in § 60-1A-5(A) of the Horse Racing Act, which provides that "[t]he commission shall adopt rules to implement the Horse Racing Act to ensure that horse racing in New Mexico is conducted with fairness and that the participants and patrons are protected against illegal practices." N.M. Stat. Ann. § 60-1A-5(A). The relevant regulatory language supporting this public policy is found in the statement of the "objective" of the regulations: "that participants and patrons be protected against all wrongful, unlawful, or unfair conduct and practices on the race track." N.M. Admin. Code 15.2.1.6. The regulatory language also authorizes a "complaint [to be] made by someone other than the stewards," N.M. Admin. Code 15.2.1.9(B)(2)(b), and provides that a "non-party to a proceeding who wishes to appear in a contested case pending before the Commission" may intervene provided the party can "prove that he/she has an effected [sic] interest sufficient to create standing in the case," N.M. Admin. Code 15.2.1.9(C)(1(d). The Plaintiffs, who are "participants" in racing and thus are persons this public policy protects, have alleged facts indicating that the Defendants' unlawful conduct injured them. The Plaintiffs have alleged that Jet Black Patriot was the "rightful first place horse," Complaint ¶ 91, at 17, that winning the All American Futurity entitled the owners of the first place horse to one million dollars and the owners of the second place horse to $285,000, *see* Complaint ¶ 92, at 17, that a first place horse is valuable for marketing, stud fees, and other benefits, *see* Complaint ¶. 94, at 17, that a horse recorded as placing second is significantly less valuable, *see* Complaint ¶ 95, at 18, that each of the Plaintiffs is entitled to his or her share of the first place purse, *see* Complaint ¶ 96, at 18, that they would have received "tremendous stud and breeding fees," Complaint ¶ 4, at 3, and that the trainer and jockey are entitled to the increase in business fees they would have

received, *see* Complaint ¶ 5, at 3. These facts establish that the Plaintiffs were in fact injured by the Defendants' conduct.

Based upon the holding of *National Trust for Historical Preservation v. City of Albuquerque*, the Court concludes that the Supreme Court of New Mexico would imply a private right of action under the Horse Racing Act and under the regulations promulgated pursuant to the Act. Specifically, the Court concludes that the Supreme Court of New Mexico would hold that the Horse Racing Act and its regulations demonstrate what New Mexico's public policy is, and that that public policy forms the predicate for a cause of action against the Defendants under the Horse Racing Act and its regulations. *Cf. Nat'l Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801 (holding that public policy could form the predicate for implying a private right of action from a state statute, because "a common-law court may utilize the statute solely to demonstrate what is public policy," and the "public policy then forms the predicate for a common-law cause of action")(citations omitted); *Starko, Inc. v. Presbyterian Health Plan, Inc*., 2012-NMCA-053, ¶ 33, 276 P.3d 252, 265 (implying a private right of action based upon public policy and explaining that "[a] state's public policy, independent of [legislative intent], may be determinative in deciding whether to recognize a cause of action")(citation omitted); *Hovet v. Allstate Ins. Co.*, 135 N.M. 397, 89 P.3d 69 (2004)(holding that legislative intent and public policy supports the conclusion that third parties may bring a cause of action against insurers for unfair practices where the statute at issue provides a cause of action generally). Therefore, under the "public policy" approach described in *National Trust for Historical Preservation v. City of Albuquerque*, the Court concludes that the Supreme Court of New Mexico would imply a private right of action under the New Mexico Horse Racing Act and

the rules and regulations promulgated pursuant to that Act.

The Court is not persuaded to hold otherwise even though the Plaintiffs seek to premise the policy-based implied private right of action on the regulations promulgated pursuant to the Horse Racing Act as well as on the Act itself. New Mexico courts have expressed some uncertainty regarding whether agency regulations which seek explicitly to confer a private right of action are effective in so doing. *See Nat'l Trust for Historical Preservation v. City of Albuquerque*, 117 N.M. at 592-93, 874 P.2d at 800-01. In *National Trust for Historical Preservation v. City of Albuquerque*, the Court of Appeals of New Mexico found that, notwithstanding the regulation at issue, which purported to confer upon private parties the right to seek judicial enforcement of a historical landmarks preservation law, the underlying statutes standing alone (which were silent as to who had a private right of action but were clear that injunction could be used for enforcement) could support standing for private organizations and an implied private right of action. *See* 117 N.M. at 592-93, 874 P.2d at 800-01. The Court of Appeals of New Mexico's decision left open the question how much weight courts should put on regulations, as opposed to legislation, when implying private rights of action. *See* 17 N.M. at 592-93, 874 P.2d at 800-01.

Although New Mexico courts have not answered this question, the Court concludes that the Supreme Court of New Mexico would likely hold that the state regulations -- in addition to the state statute -- may form the predicate for implying a private right of action. The Court concludes that the regulations promulgated pursuant to the Horse Racing Act have the force of law, because the Act invests the Commission with the authority to administer the Act, *see* N.M. Stat. Ann. §60-1A-4, and to issue regulations to implement the Act, *see* N.M. Stat. Ann. § 60-1A-5(A). In *National Trust for Historical Preservation v. City of Albuquerque*, although the Court of Appeals

of New Mexico did not decide the question whether the regulations could support an implied cause of action, the court referred to the argument that the plaintiffs advanced, which is similar to the argument that the Plaintiffs advance in this case, as "an interesting one." 117 N.M. at 593, 874 P.2d at 801.[16]

The Court likewise is not persuaded to hold otherwise by the Defendants' argument that *National Trust for Historical Preservation v. City of Albuquerque* is distinguishable, because it addresses "whether or not an individual can sue a governmental body to force [the governmental body] to follow the law [and] here[] . . . we have private individuals." Tr. at 104:6-7 (Linnenburger). The Defendants argue that the Plaintiffs'

> reliance on *[N]ational [T]rust* to say we . . . have a private cause of action . . . is misplaced, because, if anything, *National Trust* might stand for -- [and] I don't believe it does in any way [--] a cause of action a[gainst the] racing commission but it definitely does not stand for the proposition that the statute and regulatory scheme would create a private cause of action against another private individual.

Tr. at 104:7-11 (Linnenburger).

In *National Trust for Historical Preservation v. City of Albuquerque*, the plaintiffs sought to enforce § 18-8-7 of the New Mexico Prehistoric and Historic Sites Preservation Act against the City of Albuquerque, the City of Albuquerque Public Works Department, the City of Albuquerque Environmental Planning Commission, and the New Mexico State Highway and Transportation Department. *See* 117 N.M. at 592, 874 P.2d at 800. Section 18-8-7 provides:

---

[16] Even if the Court were to reject the argument that the regulations support a policy-based implied private right of action, the Court nonetheless would hold that the Horse Racing Act alone -- with its emphasis on ensuring "horse racing in New Mexico is conducted with fairness and that the participants and patrons are protected against illegal practice," N.M. Stat. Ann. § 60-1A-5(A) -- is sufficient to form the public policy predicate for implying standing on behalf of the Plaintiffs and creating a cause of action against the Defendants.

> No public funds of the state or any of its agencies or political subdivisions shall be spent on any program or project that requires the use of any portion of or any land from a significant prehistoric or historic site unless there is no feasible and prudent alternative to such use, and unless the program or project includes all possible planning to preserve and protect and to minimize harm to the significant prehistoric or historic site resulting from such use. The provisions of this section may be enforced by an action for injunction or other appropriate relief in a court of competent [jurisdiction].

N.M. Stat. Ann. § 18-8-7 (*cited in Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 592, 874 P.2d at 800). The plaintiffs brought their action to enjoin the government entities from spending public funds on the roadway construction project on the ground that the roadway entered an historic site in violation of § 18-8-7. *See* 117 N.M. at 592, 874 P.2d at 800.

Although the plaintiffs in *National Trust for Historical Preservation v. City of Albuquerque* sought to enforce a statute against various government agencies, the Court of Appeals of New Mexico's holding was not limited to the enforcement of private rights of action against government agencies. In holding that public policy could form the predicate for implying a private right of action from a state statute, the Court of Appeals of New Mexico did not limit its holding to the facts of the case or otherwise declare that a private cause of action could be inferred from public policy only when the action was against a state agency. *See generally* 117 N.M. 590, 874 P.2d 798. To the contrary, the Court of Appeals of New Mexico in reaching its holding specifically relied upon authorities from New Mexico that implied a tort cause of action against *private actors* -- and not state agencies -- on the basis of public policy. *See* 117 N.M. at 593, 874 P.2d at 801 (citing *Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. at 444, 872 P.2d at 862; *Michaels v. Anglo AM Auto Auctions*, 117 N.M. 91, 869 P.2d 279 (1994))(additional citation omitted).

Moreover, the Court of Appeals of New Mexico held that the factors the Supreme Court of the United States applied in *Cort v. Ash* to determine federal legislative intent were relevant to the

question whether an implied private right of action exists under state law. *See* 117 N.M at 593-94, 874 P.2d at 801-02. In *Cort v. Ash*, 422 U.S. 66 (1975), the Supreme Court specifically applied the factors to determine whether the plaintiffs had a private right of action against *non-governmental* entities under a federal criminal statute. *See* 422 U.S. at 66. The *National Trust for Historical Preservation v. City of Albuquerque* court, in holding that the *Cort v. Ash* test was relevant to the question whether to imply a private right of action, did not limit the application of *Cort v. Ash* to public defendants. *See generally* 117 N.M at 593-94, 874 P.2d at 801-02.

Furthermore, none of the subsequent New Mexico decisions that rely upon *National Trust for Historical Preservation v. City of Albuquerque* suggest that the court's holding is limited to implying private rights of action against public -- as opposed to private -- actors. In *Starko, Inc. v. Presbyterian Health Plan, Inc.*, the New Mexico Court of Appeals held that the plaintiffs could enforce § 27-2-16(B) of the state Medicaid statute against the New Mexico Human Services Department and two managed care organizations that administered Medicaid for the state -- namely, Presbyterian Health Plan, Inc. and Cimarron Health Maintenance Corporation (collectively, the "MCOs") -- and require those defendants to pay the plaintiffs in accordance with that statute. *See* 2012-NMCA-053, ¶ 33, 276 P.3d at 264-65 (citing N.M. Stat. Ann. §27-2-16(B)). In so holding, the Court of Appeals of New Mexico did not indicate that *National Trust for Historical Preservation v. City of Albuquerque* applied only to governmental entities and did not discuss whether the MCOs constituted state agencies. Likewise, in *San Juan Agriculture Water Users Association v. KNME-TV*, the Supreme Court of New Mexico, citing *National Trust for Historical Preservation v. City of Albuquerque*, explained that a "state court, because it possesses common-law authority, has significantly greater power than a federal court to recognize

a cause of action not explicitly expressed in a statute," and that as such, a state court may imply a private right of action "in order to further public policy." 150 N.M. at 73, 257 P.3d at 893 (citing *National Trust for Historical Pres. v. City of Albuquerque*, 117 N.M at 593-94, 874 P.2d at 801-02). The Supreme Court of New Mexico did not suggest that a state court's authority to imply a private right of action was limited to causes of action against public actors. *See* 150 N.M. at 73, 257 P.3d at 893 (citation omitted). Thus, the Court does not find the Defendants' argument that an implied private right of action to enforce a state statute exists only against public entities persuasive.

In addition to implying a private right of action on the basis of public policy, the Court also concludes that the factors set forth in *Cort v. Ash* support implying a private right of action on the basis of legislative intent. *See Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 592, 874 P.2d at 800 (holding that the *Cort v. Ash* factors are not irrelevant to the question whether a private right of action exists under a state statute)(citation omitted). In *Cort v. Ash*, the Supreme Court of the United States set forth the test for determining whether to recognize an implied private cause of action:

> (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? [and] (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?

*Nat'l Trust for Historical Pres. v. City of Albuquerque*, 117 N.M. at 593, 874 P.2d at 801 (citing *Cort v. Ash*, 422 U.S. at 78).

In this case, the first and third *Cort v. Ash* factors support an implied private right of action. *Cf. Cort v. Ash*, 422 U.S. at 78 (articulating the first factor as whether the statute was enacted for the special benefit of a class of which the plaintiff is a member and the third factor as whether a

private remedy would frustrate or assist the underlying purpose of the legislative scheme). With respect to the first factor, the Court concludes that the statute was enacted for the special benefit of a class of the "participants" of racing, of which the Plaintiffs are members. The Horse Racing Act provides that "[t]he commission shall adopt rules to implement the Horse Racing Act to ensure that horse racing in New Mexico is conducted with fairness and that the participants and patrons are protected against illegal practices." N.M. Stat. Ann. §60-1A-5(A). *See also* N.M. Admin. Code 15.2.1.6 (stating that the regulations' "objective" is "that participants and patrons be protected against all wrongful, unlawful, or unfair conduct and practices on the race track"). The Plaintiffs fall within this class of persons the statute benefits. Thus, this factor suggests that the Legislature intended to imply a private right of action. *Cf. Starko, Inc. v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, ¶ 33, 276 P.3d at 264-65 (holding that the first *Cort v. Ash* factor weighed in favor of a finding that the Legislature intended to create a private right of action, because the Legislature enacted the relevant statute -- which the Legislature designed to provide entities that dispense drugs to Medicaid participants with a drug dispensing fee -- for the special benefit of the pharmacist-plaintiffs).

With respect to the third *Cort v. Ash* factor, the Court concludes that implying a private right of action and remedy would assist the underlying purposes of the legislative scheme. *Cf. Cort v. Ash*, 422 U.S. at 78 (articulating the third factor as whether a private remedy would frustrate or assist the underlying purpose of the legislative scheme). The Court of Appeals of New Mexico has described the underlying purpose of the Horse Racing Act as follows:

> Reading the Horse Racing Act[] . . . as a whole indicates that the legislative purpose was primarily twofold: (1) to authorize commercial horse racing in New Mexico under careful regulation and licensing and in such a manner to ensure that horse racing is fairly and honestly conducted; and (2) to promote and improve the quality

of horse breeding in this state.

*Claridge v. N.M. State Racing Comm'n*, 107 N.M. 632, 637, 763 P.2d 66, 71 (Ct. App. 1988)(citing *See* § 60-1-18), *cert. denied*, 107 N.M. 413, 759 P.2d 200 (1988). Moreover, the Act itself provides that the Commission's rules shall be adopted "to ensure that horse racing in New Mexico is conducted with fairness and that the participants and patrons are protected against illegal practices." N.M. Stat. Ann. §60-1A-5(A). Thus, the underlying purpose of the legislative and administrative scheme is to ensure that horse racing is conducted fairly and honestly, and to protect participants and patrons from wrongful, unlawful, or unfair practices on the race track. The Plaintiffs have alleged facts which, if true, indicate that the Defendants violated the rules of racing by administering a banned substance to Stolis Winner and that the Commission failed to conduct a neutral, fair, or complete adjudication whether the Defendants violated the rules. *See* Complaint ¶¶ 16-18, 68, 73-81, at 4, 14-15. The Plaintiffs have not had any forum in which to address these claims. *See* Complaint ¶ 99, at 18. On these facts, the Court concludes that the Supreme Court of New Mexico would hold that implying a private right of action would assist the underlying purposes, and fair and effective functioning, of the legislative and regulatory scheme. Thus, the third *Cort v. Ash* factor supports an implied private right of action. *Cf. Starko, Inc. v. Presbyterian Health Plan, Inc*., 2012-NMCA-053, ¶ 41, 276 P.3d 252, 267 (holding that the third *Cort v. Ash* factor supports an implied remedy, because providing such a remedy would assist and further the underlying purpose of the legislative scheme).

The second *Cort v. Ash* factor -- i.e., whether there is any indication of legislative intent, explicit or implicit, to create or deny a private remedy, *see Cort v. Ash*, 422 U.S. at 78 -- is neutral. While the statute does not explicitly create a private right or remedy, it likewise does not explicitly

deny a private right or remedy. With respect to whether the statute contains an *implicit* indication of legislative intent to create or deny a private remedy, New Mexico courts "look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Starko, Inc. v. Presbyterian Health Plan, Inc*., 2012-NMCA-053, ¶ 35, 276 P.3d 252, 265 (citing *Hovet v. Allstate Ins. Co.*, 135 N.M. 397, 89 P.3d 69). The Court already has concluded that the purpose of the Act is served by implying a private right of action. Thus, this factor is neutral or weighs slightly in favor of implying a private right of action.

Accordingly, the Court concludes that the Supreme Court of New Mexico would find that New Mexico public policy supports implying a private right of action under the Horse Racing Act, and under its rules and regulations. The Court also concludes that the Supreme Court of New Mexico would find that the *Cort v. Ash* factors weigh in favor of implying a private cause of action. Thus, the Court will deny the Defendants' Motion to Dismiss the Plaintiffs' claims arising under the New Mexico Horse Racing Act, and under its rules and regulations.

## III. COLLATERAL ESTOPPEL DOES NOT BAR THE PLAINTIFFS' CLAIMS.

The Defendants first argue that the Court must give preclusive effect to determinations of state agencies acting in a judicial capacity, and that this includes the Commission's decisions. *See* Motion to Dismiss at 10. Next, the Defendants contend that, while the Plaintiffs were not a named party to the administrative proceeding, they are bound by privity, because, under New Mexico law, the Commission acted to vindicate the Plaintiffs' interests during the proceedings at issue. *See* Motion to Dismiss at 11.

In response, the Plaintiffs maintain that they were not in privity with the State, because the Plaintiffs' interests were not aligned with those of the State, the State opposed the Plaintiffs'

efforts to appear in the case, the State was not a neutral party, and the State mishandled the prosecution of the charges. *See* Response at 31. Furthermore, the Plaintiffs argue that even if the State had been neutral, their interests were not compatible with the State's, because the State is charged with enforcing the Commission's rules and not with pursuing an economic recovery on the Plaintiffs' behalf. *See* Response at 31. The Plaintiffs also contend that the Court should deny the Motion to Dismiss on the ground of collateral estoppel, because the Defendants cannot establish that the issue of the rules violation was actually litigated and necessarily decided.

### A. THE COURT WILL GIVE THE COMMISSION'S DECISION THE SAME PRECLUSIVE EFFECT TO WHICH IT WOULD BE ENTITLED IN STATE COURT.

The Defendants maintain that federal courts must give preclusive effect to determinations of state agencies acting in a judicial capacity. *See* Motion to Dismiss at 10 (citing *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 798-99 (1986); *Mascarenas v. City of Albuquerque*, 274 P.3d 781 (N.M. Ct. App. 2012)). The Defendants contend that the Commission acted in an adjudicatory or judicial capacity when it conducted a "lengthy trial-like hearing process, . . . resolved disputed issues," "determined no violation occurred[,] and [concluded] the order of finish would stand." Motion to Dismiss at 11. The Plaintiffs do not dispute this contention.

In *University of Tennessee v. Elliott*, the Supreme Court of the United States established that a state agency's decision will have the same preclusive effect in federal court that it would receive in state court if the state agency: (i) acts in a "judicial capacity"; (ii) resolves "disputed issues of fact properly before it"; and (iii) "the parties have had an adequate opportunity to litigate" the issue. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986). *Accord Salguero v. City of Clovis*, 366 F.3d at 1173; *Cordova v. N.M. Tax. & Rev. Dep't*, No. CIV 08-0681 JB/ACT, 2011 WL

7164459, *10 (D.N.M. Dec. 28, 2011)(Browning, J.). If these factors support preclusion under the federal test, then a district court looks to state law to determine whether preclusion is proper. *See Salguero v. City of Clovis*, 366 F.3d at 1173; *Cordova v. N.M. Tax. & Rev. Dep't*, 2011 WL 7164459, *10.

New Mexico law provides that, "[a]dministrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 115 N.M. 293, 298, 850 P.2d 996, 1001 (1993)(citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). *Accord Cordova v. N.M. Tax. & Rev. Dep't*, 2011 WL 7164459, *10. For preclusion to apply to an administrative decision, the administrative body must be acting in a judicial capacity and resolve disputed questions of fact properly before it. *See Guzman v. Laguna Dev. Corp*, 147 N.M. 244, 248, 219 P.3d 12, 16 (Ct. App. 2009); *Cordova v. N.M. Tax. & Rev. Dep't*, 2011 WL 7164459, *10.

The Court concludes that the federal test supports preclusion. The Court agrees with the Defendants that the first two elements of the federal test have been satisfied, because the Commission acted in a judicial capacity and because it resolved disputed issues of fact that properly were before it, i.e., whether Taylor violated the Commission's rules. *Cf. Univ. of Tenn. v. Elliott*, 478 U.S. at 799. The Court also agrees that the third element of the federal test supports preclusion, because the parties before the Commission had an adequate opportunity to litigate the disputed facts. *Cf. Univ. of Tenn. v. Elliott*, 478 U.S. at 799. Although the Plaintiffs allege that they did not have an adequate opportunity to litigate their issues in any forum, *see* Complaint ¶ 99, at 18, the relevant collateral estoppel inquiry is whether the parties actually before the agency, i.e.,

the State and the Defendants, had an adequate opportunity to litigate the issues. *See Univ. of Tenn. v .Elliott*, 478 U.S. at 799 (holding that the proper collateral estoppel inquiry is whether "the *parties* have had an adequate opportunity to litigate")(emphasis added). *Accord Salguero v. City of Clovis*, 366 F.3d at 1173; *Cordova v. N.M. Tax. & Rev. Dep't*, 2011 WL 7164459, *10. Moreover, while the Plaintiffs allege that the State did not fully litigate the issues, the State had the "opportunity" to fully and fairly litigate the issues. *Cf. Univ. of Tenn. v .Elliott*, 478 U.S. at 799 (holding that the proper collateral estoppel inquiry is whether "the parties have had an adequate *opportunity* to litigate")(emphasis added).[17]

The Court concludes that the Defendants' showing also satisfies the state requirements for preclusion to apply to an administrative decision. *See Guzman v. Laguna Dev. Corp.*, 174 N.M. at 248, 219 P.3d at 16 (that the administrative body must be acting in a judicial capacity and resolve disputed questions of fact properly before it); *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 115 N.M. at 298, 850 P.2d at 1001 (that the administrative decision be "rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing"). Thus, the Court holds that, assuming the Defendants satisfy the elements of their prima facie case, the Court may give the Commission's findings and conclusions preclusive effect.

### B. UNDER NEW MEXICO LAW, COLLATERAL ESTOPPEL DOES NOT BAR THE PLAINTIFFS' CLAIMS.

Under New Mexico law, collateral estoppel prevents a party from re-litigating "'ultimate facts or issues actually and necessarily decided in a prior suit.'" *Ullrich v. Blanchard*, 142 N.M.

[17] To the extent the allegations suggest that even though the State had the opportunity to fully and fairly litigate the issues it failed to do so because it had a motive that was not pure -- namely, a motive to find no rules violation to limit the Commission's liability for prematurely releasing the race purse -- these allegations are appropriately addressed in the context of the Court's fundamental fairness inquiry. *See infra* § III.B.3.

835, 839, 171 P.3d 774, 778 (Ct. App. 2007)(quoting *Deflon v. Sawyers*, 139 N.M. 637, 137 P.3d 577 (2006); *Adams v. United Steelworkers of Am.*, 97 N.M. 369, 373, 640 P.2d 475, 479 (1982)). *Accord Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d 1278, 1286 (D.N.M. 2011)(Browning, J.). For collateral estoppel to apply, four elements must be met: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined." *Ullrich v. Blanchard*, 142 N.M. at 839, 171 P.3d at 778 (quoting *City of Sunland Park v. Macias*, 134 N.M. 216, 220, 75 P.3d 816, 820 (Ct. App. 2003)). *Accord Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286. If the party invoking the doctrine establishes a prima facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding. *See Padilla v. Intel Corp.*, 125 N.M. 698, 701, 964 P.2d 862, 865 (Ct. App. 1998); *State v. Bishop*, 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct. App. 1992); *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286. Even when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine. *See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct. App. 1993); *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286. Collateral estoppel should be applied only where the court determines that its application would not be fundamentally unfair. *See Reeves v. Wimberly*, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App. 1988); *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286.

Collateral estoppel is an affirmative defense for which the defendant bears the burden of proof. *See Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1256 (10th Cir. 1997); Fed. R. Civ. P. 8(c). The Defendants may properly raise the defense in a rule 12(b)(6) motion when the facts necessary to support the defense are apparent from the face of the pleadings. *See Prospero Assocs. v. Burroughs Corp.*, 714 F.2d 1022, 1024 (10th Cir. 1983)("The motion is also procedurally defective," because "[t]he affirmative defense of res judicata does *not* appear on the face of the Complaint."); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)(reversing the district court's decision to grant a motion to dismiss based on the defense of res judicata, where the facts that would support the defense were not contained in the complaint). The Defendants cannot invoke collateral estoppel on a motion to dismiss if there are disputes over material issues of fact. *See* C. Wright & A. Miller, *supra* § 1277, at 328-30, 332.

> When there is no disputed issue of fact raised by an affirmative defense [such as collateral estoppel], or the facts are completely disclosed on the face of the pleadings, and realistically nothing further can be developed by pretrial discovery or a trial on the issue raised by the defense, the recent cases seem to agree that the matter may be disposed of by a motion to dismiss under Rule 12(b).

C. Wright & A. Miller, *supra* § 1277, at 328-30, 332. *See also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)("Ordinarily affirmative defenses such as collateral estoppel may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact"). *See also Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).[18]

---

[18] Alternatively, the party asserting collateral estoppel through a motion to dismiss may request the court to take judicial notice of additional documents filed of record in the prior case. *See Merswin v. Williams Cos.*, No. 09-5096, 2010 WL 373672, *2 (10th Cir. Feb. 3, 2010). *See also Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Although the Defendants have not provided the Court with the record from the underlying case, even if the Defendants had provided the Court with the record, any facts tending to support a finding of privity (e.g., evidence that might suggest the State actively and appropriately prosecuted the administrative suit), would

The Plaintiffs argue that the Court should deny the Motion to Dismiss, because the Defendants have not satisfied their prima facie case. The Court first will address the elements of the Defendants' prima facie case and next determine whether the application of collateral estoppel would be fundamentally unfair.

**1. The Allegations in the Complaint do not Indicate That the Plaintiffs Were in Privity With the State.**

The Defendants argue that, "[w]hile Plaintiffs were not a named party to the administrative proceedings, they are bound by privity, because, under New Mexico law, the New Mexico Racing Commission acted to vindicate their interests during the proceedings at issue." Motion to Dismiss at 11. The Defendants contend that the Commission is charged with protecting the interests of racing participants, which includes the Plaintiffs, and therefore the Plaintiffs' interests "were necessarily represented by the administrative prosecutor within the New Mexico Attorney General's Office during the underlying proceedings." Motion to Dismiss at 12. In response, the Plaintiffs argue that they were not in privity with the State, because: (i) the State opposed the Plaintiffs' attempts to appear in the case, "clearly revealing there was a conflict of interests"; (ii) "the state was trying to avoid liability for wrongfully paying the purse in the face of a suspicious test and had ample motivation not to aggressively pursue Plaintiffs' claims"; (iii) "all of the defects in the state's handling of the administrative proceeding . . . raise an issue of fact as to whether the state's lawyer effectively prosecuted its position"; and (iv) "the state's interest, if it was

be in dispute with the facts alleged in the Complaint and therefore could not be considered in support of the Motion to Dismiss. *Cf. Scott v. Kuhlmann*, 746 F.2d at 1378 (a court may consider the affirmative defense of collateral estoppel on a motion to dismiss only if the defense raises no disputed issues of fact); *Andrews v. Daw*, 201 F.3d at 524 n.1 ("[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.").

pure[] . . . , is entirely different [from] the Plaintiffs' interests to seek recovery of their economic damages." Response at 31.

The Defendants contend that the Commission's statutory charge, pursuant to § 60-1A-5 of the Horse Racing Act, includes protecting the "participants" of racing "against illegal practices on the racing grounds." Motion to Dismiss at 11 (citing N.M. Stat. Ann. § 60-1A-5). Moreover, § 15.2.6.6 of the New Mexico Administrative Code provides that the Commission's duties include "'protect[ing] the integrity of horse racing, . . . ensur[ing] the health and welfare of horses and . . . *safeguard[ing] the interests of the public and the participants in racing.*'" Motion to Dismiss at 11-12 (quoting N.M. Admin. Code § 15.2.6.6)(emphasis added). Even if the Commission itself is charged with protecting the interests of racing participants, the proper inquiry for purposes of the first element of the Defendants' prima facie case is whether the Plaintiffs were in privity with a *party* to the case -- namely, the State prosecutor. *See Ullrich v. Blanchard*, 142 N.M. at 839, 171 P.3d at 778. The statutory charge of the *agency* adjudicating the administrative complaint is not relevant to the question whether the *parties* were in privity. *See Ullrich v. Blanchard*, 142 N.M. at 839, 171 P.3d at 778 (the first requirement to establish the applicability of collateral estoppel is that "the *parties* in the current action were the same or in privity with the *parties* in the prior action")(emphasis added).[19]

Determining whether parties are in privity for purposes of preclusion requires a case-by-case analysis. *See Deflon v. Sawyers*, 139 N.M. 637, 640, 137 P.3d 577, 580 (2006). In

[19] Furthermore, the Plaintiffs have alleged that the Commission was not a neutral body and that it had an interest in finding no violation of the rules. *See* Compl. ¶¶ 73, 74, 77, 78, at 14-15. Thus, on the facts alleged in the Complaint, the Commission was not acting consistent with its statutory mandate.

*St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169 (10th Cir. 1979), the United States Court of Appeals for the Tenth Circuit provided insight into the flexible definition of privity:

> There is no definition of "privity" which can be automatically applied in all cases involving the doctrines of res judicata and collateral estoppel. Thus, each case must be carefully examined to determine whether the circumstances require its application. This is so, notwithstanding the general assumption that res judicata applies only if the parties in the instant action were the same and identical parties in the prior action resulting in a judgment. Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same.

605 F.2d at 1174 (citations omitted). The Supreme Court of the United States has held that a non-party -- such as the Plaintiffs -- may be in privity with a party "when [the] nonparty was adequately represented by someone with the same interests who [wa]s a party" in an earlier suit. *Taylor v. Sturgell*, 553 U.S. 880, 894-95 (2008). A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum, "(1) the interests of the nonparty and her representative were aligned, . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the non-party[.]" *Taylor v. Sturgell*, 553 U.S. at 900 (internal citations omitted). *Accord Pelt v. Utah*, 539 F.3d 1271, 1282 (10th Cir. 2008)(quoting *Taylor v. Sturgell*, 553 U.S. at 900).

The facts alleged in the Complaint, if true, fail to demonstrate that the Plaintiffs and the State prosecution "are really and substantially in interest the same." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d at 1174 (citations omitted). *See also Taylor v. Sturgell*, 553 U.S. at 894-95 (stating that the nonparty must have the "same interests" as the party in the earlier suit). The Plaintiffs have alleged that the State's prosecution was "fatally defective in numerous respects." Complaint ¶ 48, at 10.

First, the allegations imply that the State prosecutor's interests were not "pure," Response

at 31, and that the State was acting to protect the Commission from liability for wrongfully releasing the first place purse. For example, the Plaintiffs allege that the "attorney who represents the . . . Commission in these matters and others is [also, like the State prosecutor,] an Assistant Attorney General," Complaint ¶ 75, at 15, and that "[t]his person's office is on the same floor, in the same building as the Assistant Attorney General assigned to 'prosecute' the Taylor administrative case," Complaint ¶ 76, at 15. The Court, construing the allegations of the Complaint in the Plaintiffs' favor, *see Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), concludes that the allegations plausibly could indicate that, because of its alleged impure motive, the State prosecutor's office replaced the experienced prosecutor with a new Assistant Attorney General with no experience, *see* Complaint ¶¶ 49, 50, at 10-11, and that the new Assistant Attorney General entered into a "blatantly false" stipulation to advance Taylor's case, Complaint ¶ 51, at 11. The Plaintiffs also make allegations from which the Court can infer that the State conducted an incomplete adjudication to ensure that Taylor prevailed, by failing to offer any of the sworn depositions as evidence, *see* Comp. ¶¶ 51-53, at 11, by failing to present evidence of Taylor's "substantial history of doping violations by racing authorities around the nation," Complaint ¶ 62, at 13, by failing to challenge Taylor's non-scientific evidence and unsupported argument of test barn contamination, by failing to present contrary deposition testimony indicating that there was no contamination, *see* Complaint ¶¶ 63, 69, 70, at 13-14, and by making "virtually no objections to . . . Taylor's evidence [and] conduct[ing] no significant cross-examination of . . . Taylor's witnesses," *see* Complaint ¶¶ 58, 59, 61, at 12-13. Moreover, the Plaintiffs argue that even if the State's interest "was pure[] . . . , [that interest] is entirely different [from] the Plaintiffs' interests to seek recovery of their economic damages." Response at 31. While the Plaintiffs

seek recovery of "their full damages," of which the race purse is only a "small part," the Commission does not have the authority to award these damages to the Plaintiffs, but rather "only ha[s] the authority to affirm or deny the decision of the Stewards, issue administrative penalties paid to the state and exclude licensed participants from future racing events." Complaint ¶ 30, at 7.

The allegations in the Complaint, construed in the Plaintiffs' favor, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."), plausibly suggest that the State was not motivated to prosecute the administrative complaint against Taylor, but rather was motivated by a desire to protect the Commission from liability. Moreover, the allegations indicate that the State did not effectively prosecute the administrative complaint and that, even if its interests were pure, the State was interested in enforcing the Commission's rules and not obtaining the damages the Plaintiffs sought. Accordingly, the Court concludes that the allegations on the Complaint's face do not establish that the Plaintiffs and the State prosecuting the administrative complaint were in interest substantially the same. *Cf. Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); *Prospero Assocs. v. Burroughs Corp.*, 714 F.2d at 1024.

Furthermore, the Complaint's allegations do not indicate that the State prosecutor understood himself to be acting in a representative capacity for the Plaintiffs or that the Commission took care to protect the interests of the Plaintiffs. *Cf. Taylor v. Sturgell*, 553 U.S. at 900 (a party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum, "(1) the interests of the nonparty and her representative were aligned, . . . and (2) either

the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the non-party")(internal citations omitted). To the contrary, the Plaintiffs argue that the State prosecution opposed the Plaintiffs appearing in the case. *See* Response at 31. Furthermore, at the September 24, 2012, hearing, the prosecutor confirmed that, although "in a way" the interests of the Plaintiffs were "co-extensive" with the State, "I was not there to represent the owners of Jet Black Patriot," but rather "I was there to represent the state and the racing commission." Tr. at 85:10-19 (Fuqua). In addition, the Complaint's allegations do not suggest that the Commission took special care to protect the interests of the Plaintiffs. Rather, the Commission repeatedly denied the Plaintiffs' attempts to participate in the hearing or to have their interests heard. *See* Complaint ¶¶ 28, 29, at 6; ¶¶ 39-40, at 8; ¶¶ 43-44, at 9; ¶ 46, at 10; ¶ 56, at 12.

The Court concludes that, on the allegations set forth in the Complaint, there has been no showing that the Plaintiffs and the State were "really and substantially in interest the same." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1174 (10th Cir. 1979)(citations omitted)("Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same."). As discussed, privity is an essential element of the Defendants' prima facie case, *see Ullrich v. Blanchard*, 142 N.M. at 839, 171 P.3d at 778, and the facts supporting a finding of privity must be apparent -- and undisputed -- on the face of the Complaint, *see Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); C. Wright & A. Miller, *supra* § 1277, at 328-30, 332. Because the allegations do not support a finding of privity and a dispute of fact exists with respect to this question, the Court will deny the Motion to Dismiss on the ground of collateral estoppel.

The Defendants' assertion that, under New Mexico law, an agency's representation is presumed to be adequate when the state is named as a party to an action does not persuade the Court to find otherwise. *See* Motion to Dismiss at 12 (citing *N.M. Right to Choose/NARL v. Johnson*, 126 N.M. 788, 795, 975 P.2d 841, 848 (1998) ("Where the State . . . is named as a party to an action and the interest the applicant seeks to protect is represented by a governmental entity, a presumption of adequate representation exists."). The Plaintiffs argue that the Defendants' authorities are distinguishable and do not support the proposition that New Mexico law creates a presumption that the State adequately represents the interests of private parties, because the authorities address preclusion in the context of the right to intervene. *See* Response at 31. Even assuming, however, that the presumption of adequate representation in the context of intervention is applicable to determining privity for purposes of preclusion, the Supreme Court of New Mexico has held that that presumption may be overcome upon a showing that "the representation is inadequate [because of], for example, an adversity of interest, collusion, or nonfeasance on the part of the [agency]." *N.M. Right to Choose/NARL v. Johnson,* 126 N.M. at 796, 975 P.2d at 849. The Plaintiffs have alleged facts indicating that precisely such an adversity of interest exists. *See supra* at 106-07. Thus, assuming without deciding that the presumption of adequate representation applies to the determination of privity, that presumption would not apply on the facts alleged here. The Court therefore disagrees with the Defendants' argument.

**2. The Court Need not Determine Whether the Allegations in the Complaint Establish that the Rules Violation Actually was Litigated and Necessarily was Decided.**

The Plaintiffs also argue that the Defendants cannot establish the third and fourth requirements of collateral estoppel -- i.e., that the issue precluded was actually litigated and

decided in the prior proceeding. *See* Response at 30-31 (citing *Rex v. Mfr. Hous. Comm.*, 134 N.M. 533, 80 P.3d 470 (Ct. App. 2003)). To satisfy the third and fourth elements of their affirmative defense of collateral estoppel, the Defendants must establish that the facts necessary to demonstrate that the rules violation was "'actually litigated' (that is, contested in a prior action), and 'actually and necessarily determined' in a final judgment" are present on the face of the Complaint. *State ex rel. Martinez v. Kerr-McGee Corp.*, 120 N.M. 118, 122, 898 P.2d 1256, 1260 (Ct. App.), *cert. denied*, 120 N.M. 68, 898 P.2d 120 (1995). "The party seeking to preclude litigation of an issue has the burden of showing with clarity and certainty that the issue was actually and necessarily determined; if the basis of the prior decision is unclear, subsequent litigation may proceed." *State ex rel. Martinez v. Kerr-McGee Corp.*, 120 N.M. at 122, 898 P.2d at 1260 (citation omitted).

The Plaintiffs contend that "only part of the issues, [i.e., whether the rules were violated,] were litigated . . . [b]ut none of the other . . . elements in . . . these other causes action were determined like the amounts of damages, causation issues, [and] breach of the . . . standard of care." Tr. at 70:12-16, 70:24-25 (Dunn). The question at issue, however, for purposes of the Motion to Dismiss on the ground of collateral estoppel is whether the Court should give the Commission's decision -- i.e., that Taylor did not violate the rules and that Stolis Winner was the first place finisher -- preclusive effect. Thus, the relevant inquiry is whether the issue of the rules violation and order of finish were actually litigated and necessarily determined. *Cf. Ullrich v. Blanchard*, 142 N.M. at 839, 171 P.3d at 778 (noting that the subject matter of the two actions must be different and it is only the "'ultimate fact or issue'" that must have been "'actually litigated . . . and necessarily determined'"(quoting *City of Sunland Park v. Macias*, 134 N.M. 216,

220, 75 P.3d 816, 820 (Ct. App. 2003))). *Accord Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d at 1286. Because the question whether the parties in the administrative forum litigated breach of the standard of care, causation, or damages is not relevant to the inquiry whether Taylor violated the rules and Stolis Winner was the first place finisher, the Plaintiffs' argument does not have merit.

The Court holds, however, that, construing the allegations on the face of the Complaint in the Plaintiffs' favor, it is not clear that the issue whether Taylor violated the Commission's rules was actually litigated and contested by the State. For example, although the Plaintiffs allege that the administrative hearing was conducted on May 11, 2010, and that it lasted three days, *see* Complaint ¶¶ 45, 58, at 10, 12, the Plaintiffs also allege that, other than entering into a "blatantly false" stipulation that hurt the State's case and admitting "some minor exhibits that went along with the stipulation, the state offered no other evidence," Complaint ¶¶ 51, 55, at 11-12. The Plaintiffs further allege that the State failed to admit important deposition testimony, failed to present evidence of Taylor's "substantial history of doping violations by racing authorities around the nation," and failed to present evidence challenging the alleged test barn contamination. Complaint ¶¶ 53, 62, 63, 69, at 11, 13-14. The Plaintiffs also allege that the State made "[v]irtually no objections" and conducted "[n]o significant cross-examination." Complaint ¶¶ 58, 61, at 12-13. In addition, the Plaintiffs allege that the State was not neutral and that it had an interest in the Commission finding that the Defendants did not violate the rules. *See* Complaint ¶¶ 75, 76, 81, at 15. *See also* Response at 31.

The Plaintiffs have alleged that the State both was not motivated to litigate and did not meaningfully litigate the administrative case, and that the State had an interest in Taylor

prevailing. The *Restatement (Second) of Judgments* observes that, where it is difficult to determine whether an issue is actually litigated, "the policy considerations . . . weigh strongly in favor of nonpreclusion." *Restatement (Second) of Judgments* § 27. *See also State ex rel. Martinez v. Kerr-McGee Corp.*, 120 N.M. at 123, 898 P.2d at 1261 (citation omitted).

At this stage of the litigation, however, the Court need not decide whether the allegations in the Complaint establish that the parties to the administrative action actually litigated the issue whether the Defendants violated the Commission's rules. The Court already has held that the Defendants failed to satisfy their prima facie burden of establishing that the Plaintiffs are in privity with the State prosecuting the administrative action. The Court's denial of the Motion to Dismiss on this ground is dispositive.

**3. Application of Collateral Estoppel Would be Fundamentally Unfair.**

Although the Court will deny the Motion to Dismiss, because the Defendants have not established their prima facie case of demonstrating that the Plaintiffs were in privity with the State prosecuting the administrative action, the Court also denies the motion for a second, independent reason. Under New Mexico law, if a defendant satisfies his prima facie burden, *see Ullrich v. Blanchard*, 142 N.M. at 839, 171 P.3d at 778, the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding, *see Padilla v. Intel Corp.*, 125 N.M. 698, 701, 964 P.2d 862, 865 (Ct. App. 1998); *State v. Bishop*, 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct. App. 1992). Even when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine. *See Reeves v. Wimberly*, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App. 1988). *See also Hyden v. Law Firm of McCormick, Forbes, Caraway*

*& Tabor*, 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct. App. 1993) (collateral estoppel should be applied only where the judge determines that its application would not be fundamentally unfair).

The Plaintiffs allege in the Complaint that they wrongfully were excluded from the administrative process, that the administrative process was "fatally defective in numerous respects," and that the Commission was not neutral. *See, e.g.*, Complaint ¶ 28, at 6; ¶¶ 40-41, at 8; ¶ 46, at 10; ¶¶ 43-44, at 9; ¶ 46, 48, at 10; ¶ 78, at 15. The Court concludes that the application of collateral estoppel, on these facts alleged in the Complaint, would be fundamentally unfair. Thus, the Court will deny the Defendants' Motion to Dismiss on the ground of collateral estoppel for this reason as well.

**IT IS ORDERED** that the Defendants Heath Taylor, Jerry Windham and Pat Windham's Motion to Dismiss Under Rule 12(b) and Memorandum in Support Thereof, filed May 9, 2012 (Doc. 7), is granted in part and denied in part as follows:

(i) The Court grants the Motion to Dismiss the prima facie tort claim to the extent that the claim is premised on the intentional act of providing Stolis Winner with a performance enhancing substance; and

(ii) The Court denies the Motion to Dismiss the remaining of the Plaintiffs' claims.

__________________________________
UNITED STATES DISTRICT JUDGE

*Counsel:*

Robert H. Fritz, III
Fritz Law Firm
Houston, Texas

-- and --

Chad W. Dunn
Brazil & Dunn
Houston, Texas

*Attorneys for the Plaintiffs*

Billy R. Blackburn
Albuquerque, New Mexico

--and--

Brian O'Toole
Brian O'Toole, P.C.
Austin, Texas

*Attorneys for the Defendants Heath Taylor, Jerry Windham, and Pat Windham*