## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RICHARD SIMON, JANELLE SIMON,
ERIC CURTIS, and JOSE VEGA,

        Plaintiffs,

vs.                                             No. CIV 12-0096 JB/WPL

HEATH TAYLOR, JERRY WINDHAM,
PAT WINDHAM, MARTY L. COPE,
ARNOLD J. RAEL, B. RAY WILLIS,
THOMAS FOWLER, LARRY DELGADO,
and THE NEW MEXICO RACING
COMMISSION,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Compel Production of Lab Samples for Scientific Testing, filed April 23, 2014 (Doc. 58)("Motion to Compel"). The Court held a hearing on July 11, 2014. The primary issue is whether the Court will compel the New Mexico Racing Commission to produce blood and urine samples taken from twenty-three horses that participated in a series of races held in Ruidoso Downs, New Mexico, on September 1, 2008. The Court will deny the Motion to Compel for two reasons. First, the Motion to Compel is premature. Because the Racing Commission is no longer a party to this case, Plaintiffs Richard Simon, Janelle Simon, Eric Curtis, and Jose Vega, must subpoena the Racing Commission to give the Plaintiffs permission to test the samples before compelling the Racing Commission to do so. Second, even if the Racing Commission were still a party to the case, the Motion to Compel would still be procedurally improper, because the Plaintiffs' informal discovery requests do not satisfy either the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of New Mexico. Because the test results are

relevant, however, the Plaintiffs can subpoena the Racing Commission to obtain its permission to test the samples. The Plaintiffs can also subpoena Iowa State University to produce the samples, because Iowa State currently has possession of them.

**FACTUAL BACKGROUND**

The Court takes the following facts from the Plaintiffs' Original Complaint, filed January 31, 2012 (Doc. 1)("Complaint"). This dispute arises out of a horse race -- the All American Futurity -- which was held in Ruidoso Downs, New Mexico, on September 1, 2008. See Complaint ¶ 1, at 2. The All American Futurity is widely recognized in the quarter-horse-racing world as the major quarter-horse racing event of the year. See Complaint ¶ 3, at 3. The winning horse in the event receives a purse of approximately one million dollars. See Complaint ¶ 3, at 3. Because of the significance of the All American Futurity within the racing community, first-place horses are valuable for marketing, stud fees, and other benefits to the horse owner, trainer, and jockey. See Complaint ¶¶ 3-4, at 3; id. ¶¶ 93, 94, at 17.

Stolis Winner -- a horse that Defendants Jerry and Pat Windham ("the Windhams") owned, and Defendant Heath Taylor trained -- just barely crossed the finish line ahead of Jet Black Patriot -- a horse that Richard and Janelle Simons ("the Simons") owned, Curtis trained, and Vega rode. See Complaint ¶¶ 2, 9-11, at 2-3. A licensed veterinarian collected blood and urine samples from each of the horses that competed in every race at the Ruidoso Downs on September 1, 2008. See Complaint ¶¶ 13-14, at 4. The samples taken from Stolis Winner tested positive for caffeine, a banned substance under Racing Commission rules. See Complaint ¶¶ 16, 17, 21, at 4-5.

The Racing Commission held a hearing of the stewards[1] on January 8, 2009, to consider disciplinary action against Taylor and the Windhams.  See Complaint ¶¶ 22, 24, at 5.  The stewards disqualified Stolis Winner, declared Jet Black Patriot the winner, and issued penalties against Taylor.  See Complaint ¶ 24, at 5.  Taylor appealed the decision and requested a de novo review of the evidence.  See Complaint ¶ 26, at 6.  The Racing Commission appointed a three-judge administrative panel to hear Taylor's appeal.  See Complaint ¶ 26, at 6.

The Plaintiffs tried to participate in the appeal by filing a motion to appear at the administrative panel's hearing, but the panel recommended that the Racing Commission deny the motion.  See Complaint ¶¶ 27-28, at 6.  Although the Plaintiffs demonstrated that they "ha[d] an effected [sic] interest sufficient to create standing in the case," which is the test set forth in 15.2.1.9(C)(1)(d) N.M.A.C. for an interested party to intervene, they were prohibited from participating in the review process.  Complaint ¶ 29, at 6.  In an effort to obtain a final ruling regarding the administrative panel's recommendation to exclude them, the Plaintiffs filed a petition for writ of certiorari in the First Judicial District Court, State of New Mexico.  See Complaint ¶ 33, at 7.

On November 3, 2009, the First Judicial District Court held a hearing on the Plaintiffs' petition for writ of certiorari.  See Complaint ¶ 41, at 8.  The state court held that it lacked jurisdiction to hear the Plaintiffs' petition, because the Racing Commission had not entered a final order whether to adopt the administrative panel's recommendation to exclude the Plaintiffs

---

[1]Section 60-1A-2 of the Horse Racing Act, N.M. Stat. Ann. §§ 60-1A-1 through 60-1A-30, defines "steward" as "an employee of the commission who supervises horse races and oversees a race meet while in progress, including holding hearings regarding licensees and enforcing the rules of the commission and the horse racetrack." N.M. Stat. Ann. § 60-1A-2GG. One of the stewards' duties is conducting hearings on complaints brought on the stewards' motion, or on receipt of a complaint from an official or third party.  See 15.2.1.9(B)(2)(a) N.M.A.C.

from the review process.  See Complaint ¶ 41, at 8.  On November 19, 2009, the Racing Commission conducted a hearing to determine whether to permit the Plaintiffs to participate in the administrative review hearing and adopted the administrative panel's recommendation to exclude the Plaintiffs.  See Complaint ¶ 43, at 9.

Thereafter, the Plaintiffs filed a second petition for writ of certiorari with the First Judicial District Court and requested an emergency hearing.  See Complaint ¶ 44, at 9-10.  The state court again denied the Plaintiffs the right to participate in the administrative proceeding.  See Complaint ¶ 44, at 9-10.  The state court "stated during argument that it relied upon state case law that found administrative actions of this nature were quasi-criminal actions and private litigants were not permitted to participate."  Complaint ¶ 45, at 9-10.

On May 11, 2010, the administrative panel conducted an evidentiary hearing to review the stewards' decision.  See Complaint ¶ 45, at 10.  The Plaintiffs' counsel appeared at the hearing, but the panel would not allow them to participate.  See Complaint ¶ 46, at 10.  The administrative panel found in Taylor's favor and overturned the stewards' decision.  See Complaint ¶ 46, at 10.  The Racing Commission then adopted the panel's decision.  See Complaint ¶ 47, at 10.

The Plaintiffs filed a complaint in the United States District Court for the Western District of Texas on November 11, 2008.  See Plaintiff's Original Complaint, filed Nov. 1, 2008 (Doc. 1), Simon v. Taylor, No. CIV 08-0827 LY (W.D. Tex.)("Texas Complaint"); Complaint ¶ 82, at 15-16.  On November 4, 2010, the Honorable Lee Yeakel, United States District Judge for the Western District of Texas, entered an order dismissing the Texas Complaint for failure to state a claim upon which relief could be granted.  See Order, filed Nov. 5, 2010 (Doc. 1-1), Simon v. Taylor, No. CIV 08-0827 LY (W.D. Tex.)("Texas Order").  The Texas Order was

based, in part, on the Racing Commission's decision that no violation of racing rules had occurred. See Texas Order at 5. The Plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit. See Notice of Appeal, filed December 20, 2010 (Doc. 77), Simon v. Taylor, No. CIV 08-0827 LY (W.D. Tex.). On December 22, 2011, the Fifth Circuit vacated the district court opinion and ordered the case dismissed without prejudice for lack of diversity jurisdiction. See Simon v. Taylor, 455 F. App'x 444, 445-46 (5th Cir. 2011); Complaint, ¶ 88, at 16.

## PROCEDURAL BACKGROUND

On January 31, 2012, the Plaintiffs filed the Complaint in the District of New Mexico. See Complaint at 1. The Plaintiffs allege claims against Taylor, and the Windhams for: (i) intentional interference with prospective economic advantage, see Complaint ¶¶ 127-32, at 23; (ii) fraud, see Complaint ¶¶ 133-39, at 24; (iii) prima facie tort, see Complaint ¶¶ 140-44, at 24-25; (iv) "foul play in sport or a game of chance," Complaint ¶¶ 146-48, at 25; (v) negligence, see Complaint ¶¶ 149-51, at 26; and (vi) breach of contract, see Complaint ¶ 152, at 26. The Plaintiffs also allege that Marty Cope, Arnold Rael, B. Ray Willis, Thomas Fowler, Larry Delgado, and the Racing Commission, violated the Plaintiffs' rights to procedural and substantive due process under the Fourteenth Amendment to the Constitution of the United States of America. See Complaint ¶¶ 153-73, at 26-29.

The Plaintiffs ask the Court to: (i) declare that Jet Black Patriot won the All American Futurity, see Complaint ¶ 116, at 21; and (ii) declare that Jet Black Patriot is "due all the benefits and emoluments" of the first place winner of the All American Futurity, see Complaint ¶ 117, at 21. The Plaintiffs also request the following injunctive relief: (i) an order compelling the Racing Commission to release for testing all of the samples in its custody or control taken from horses on the day of the All American Futurity, see Complaint ¶¶ 120-23, at 22; (ii) if the Court

- 5 -

determines that the Plaintiffs "are not entitled to adjudication in Court," the Plaintiffs seek adjudication of the racing claims in a fair hearing that complies with federal law and permits the participation of the Plaintiffs, see Complaint ¶¶ 123, at 22; (iii) regardless whether the Court issues an Order granting the relief in (ii), the Plaintiffs ask the Court to adjudicate their claims with respect to stud fees, marketing fees, and other benefits that the Plaintiffs would have received had the Racing Commission declared Jet Black Patriot the winner, because the Racing Commission could not adjudicate their private claims,  see Complaint ¶¶ 124-25 at 21-23. If the Court awards the Plaintiffs relief from the Racing Commission, the Plaintiffs also ask for attorneys' fees.  See Complaint ¶ 126, at 23.

1.    **The September 30, 2013, Order, and October 29, 2013, Memorandum Opinion.**

On September 30, 2013, the Court filed an Order granting in part and denying in part the Defendants Marty L. Cope, Arnold J. Real, B. Ray Willis, Thomas Fowler, Larry Delgado, and the New Mexico Racing Commission's Motion to Dismiss under Rule 12(b)(6) and Memorandum in Support, filed November 20, 2012 (Doc. 22), dismissing the Plaintiffs' against Cope, Real, Willis, Fowler, Delgado, and the Racing Commission without prejudice.  See Doc. 34 ("Sept. 30, 2013, Order").  On October 29, 2013, the Court filed a Memorandum Opinion (Doc. 36)("Oct. 29, 2013, MO"), in which the Court explained its rationale for the Sept. 30, 2013, Order.  See Oct. 29, 2013, MO *passim*.  The Court also allowed the Plaintiffs to file a motion to amend their complaint to add claims against the dismissed parties.  See Oct. 29, 2013, MO at 78.

Ten days later, on November 8, 2013, the Court filed an Order (Doc. 39)("Nov. 8, 2013, Order"), that adopted the parties' discovery plan, which set a deadline of January 31, 2014, for the Plaintiffs to file a motion to amend the Complaint.  See Order at 1.  The January 31 deadline

came and went without the Plaintiffs filing an amended complaint.  Consequently, on February

10, 2014, Cope, Real, Willis, Fowler, Delgado, and the Racing Commission, filed the Motion for

Final Judgment and Order of Dismissal with Prejudice with Respect to Mary L. Cope, Arnold J.

Rael, B. Ray Willis, Thomas Fowler, Larry Delgado and the New Mexico Racing Commission

(Doc. 44)("Motion for Final Judgment").

      **2.**      **The Motion to Compel.**

On April 23, 2014, the Plaintiffs filed the Motion to Compel.  See Motion to Compel at 1.

In the Motion to Compel, the Plaintiffs explain that they want Iowa State to test the blood and

urine samples taken from all of the horses that ran in the 2008 All American Futurity.[2]  See

Motion to Compel at 2.  The Plaintiffs maintain that Iowa State will not test the samples without

the Racing Commission's permission.  See Motion to Compel at 3; Electronic Mail Transmission

from Albert Kind, Director, Racing Chemistry Lab, to Chad W. Dunn, Attorney for the Plaintiffs

(Oct. 25, 2010)("Oct. 25, 2010, Electronic Mail Transmission")("These samples are the property

of the NMRC, and I cannot proceed with any testing, or distribute these samples without their

approval.  The request for further testing or disposition must come through the NMRC.").

Consequently, the Plaintiffs ask the Court to order the Racing Commission to allow the Plaintiffs

to test the samples.  See Motion to Compel at 3.

      **3.**      **The Racing Commission's Response.**

The next day, on April 24, 2014, the Racing Commission responded to the Motion to

Compel.  See Response to Plaintiff's Motion to Compel Production of Lab Samples for

---

[2]The Plaintiffs have since clarified that they intend to test not only the blood and urine samples taken from the ten horses that ran the All American Futurity on September 1, 2008, but also the blood and urine samples taken from thirteen other horses that ran other races at the Ruidoso Downs on September 1, 2008.  See Transcript of Hearing at 15:10-17:5 (Court, Dunn)(taken July 11, 2014)(The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.).

Scientific Testing with Respect to the New Mexico Racing Commission (Doc. 59)("NMRC's Response").  The Racing Commission asks the Court to deny the Motion to Compel.  See NMRC's Response *passim*.  The Racing Commission states that the Court dismissed all of the Plaintiffs' claims against the Racing Commission in the Oct. 29, 2013, MO.  See NMRC's Response ¶ 2, at 1.  The Racing Commission explains that, although Court allowed the Plaintiffs to move to amend their complaint to add claims against the Racing Commission, the Plaintiffs failed to do so.  See NMRC's Response ¶ 3, at 1-2.  The Racing Commission argues that, because it is no longer a party to this case, the Court has no jurisdiction to order it to release the lab samples.  See NMRC's Response ¶ 5, at 2.

4.    **The Defendants' Response.**

On May 23, 2014, Taylor and the Windhams ("the Defendants")[3] responded to the Motion to Compel.  See Response of Defendants Heath Taylor, Jerry Windham and Pat Windham to Plaintiffs' Motion to Compel Production of Lab Samples for Scientific Testing (Doc. 62)("Defendants' Response").  The Defendants argue that the Court should deny the Motion to Compel for five reasons.  See Defendants' Response *passim*.

First, the Defendants argue that, because the Racing Commission is no longer a party to this case, the Court has no jurisdiction to compel it to allow the Plaintiffs to test the samples. See Defendants' Response at 4-5.  The Defendants state that the Plaintiffs have not cited -- and the Defendants have been unable to find -- any authority indicating that a party may seek an order compelling production against a non-party without having first made a discovery request. See Defendants' Response at 5.  The Defendants contend that, because the Plaintiffs have not

---

[3]As the Court has dismissed the Plaintiffs' claims against the Racing Commission and Defendants Real, Cope, Willis, Fowler, Delgado, they are no longer parties to the case. Consequently, the Court will refer to them by name throughout this Memorandum Opinion and Order ("MOO").  Because Taylor and the Windhams are the only remaining defendants in the case, the Court will refer to them collectively as "the Defendants" throughout this MOO.

made such a request, the Court should deny the Motion to Compel.  <u>See</u> Defendants' Response at 5.

Second, the Defendants contend that the Motion to Compel is untimely.  <u>See</u> Defendants' Response at 5-6.  The Defendants point out that the Plaintiffs filed suit in the Western District of Texas almost six years ago, on November 11, 2008.  <u>See</u> Defendants' Response at 5.  The Defendants explain that, in the context of that lawsuit, the Plaintiffs deposed representatives from Iowa State on June 18, 2009, and learned that the University would not test the samples without the Racing Commission's approval.  <u>See</u> Defendants' Response at 5.  The Defendants assert that, despite knowing this information back in 2009, the Plaintiffs did not file the Motion to Compel until April 23, 2014 -- almost five years later.  <u>See</u> Defendants' Response at 5.  The Defendants state that the Plaintiffs' expert witness disclosures -- which they submitted on February 28, 2014 -- did not include any experts who would test the samples.  <u>See</u> Defendants' Response at 6.  The Defendants argue that, relying on those disclosures, they retained experts, submitted discovery requests, and prepared for this case with the expectation that the Plaintiffs would not test the samples.  <u>See</u> Defendants' Response at 6.  The Defendants contend that it is, therefore, too late in the case for the Defendants to file such a motion -- especially in light of the fact that the Racing Commission is no longer a party in the case.  <u>See</u> Defendants' Response at 6.

Third, the Defendants argue that the Racing Commission is the sole authority for testing samples taken from horses that participate in New Mexico races.  <u>See</u> Defendants' Response at 7 (citing N.M. Stat. Ann. § 60-1A-14).  The Defendants contend that the Racing Commission has developed comprehensive regulations regarding the drawing and testing of samples from horses. <u>See</u> Defendants' Response at 7 (citing 15.2.6.10 N.M.A.C.).  In the Defendants' view, there is no indication in these regulations that New Mexico intended these samples to be subject to any

outside testing.   See Defendants' Response at 7.  The Defendants state: "To the contrary, the law strongly suggests the samples are protected and privileged."  Defendants' Response at 7.  The Defendants argue that, consequently, the samples cannot be tested "without the express permission of both the Racing Commission and the other competitors."  Defendants' Response at 7.

Fourth, the Defendants assert that "[p]ermitting losing competitors to force additional substance testing years after the completion of an athletic competition is entirely unworkable." Defendants' Response at 8.   The Defendants argue that there would be significant negative consequences if any samples from the other horses at the race test positive:

> If the sample for the third place horse tests positive, will the fourth through tenth place finishers file suit for an additional share of the purse?  What happens if horses test positive at varying levels?  Will the Court then examine the effect of varying levels on individual, taking into account weight, metabolism rates, strength, history, etc.?  It is clear that, if the Court proceeds down this rabbit hole, the results of any given race no longer matter and will not be finalized until years of costly litigation have concluded.

Defendants' Response at 8.  The Defendants argue that "this is precisely the reason Courts have refused to engage in determining the outcome of sporting contests . . . ."  Defendants' Response at 8 (citing Youst v. Longo, 729 P.2d 728, 738 (Cal. 1987)).

Fifth, the Defendants argue that the Plaintiffs have not shown that their request would uncover relevant information.  See Defendants' Response at 9.  The Defendants contend that, given the number of variables at issue in determining whether contamination occurred, the Plaintiffs can "never meet their burden" of proving that the Defendants improperly influenced the race, even with the test results.  Defendants' Response at 9.  The Defendants point out that Stolis Winner's sample contained only twenty-eight nanograms per milliliter in plasma/serum of caffeine -- far below the threshold level of environmental contamination that the Racing

Commission recognizes.   See Defendants' Response at 2 (citing 15.2.6.9(O) N.M.A.C. ("Although the following environmental contaminants or substances may be found in the horse, no sample or specimen shall exceed the following levels when tested: . . . caffeine - 100 nanograms per milliliter in plasma/serum.")(alterations in Response but not source)).   The Defendants state that they have "provided ample evidence supporting environmental contamination *accompanied by convincing expert testimony that the small amount of caffeine could not have affected the performance of Stolis Winner - a 1,000 pound horse*."   Defendants' Response at 2 (footnote omitted)(alterations in original).   The Defendants argue that the Plaintiffs have not provided notice of any expert who can testify whether Stolis Winner's test results indicate environmental contamination.   See Defendants' Response at 9-10.   The Defendants state: "If Plaintiffs wished to contest this issue, they had five years to find an appropriate expert before the deadline for disclosure.  In that time, they did not, and their failure should not be excused at this time.  Without any such expert, the requested information would be neither relevant nor admissible."  Defendants' Response at 10.

### 5.   **The Plaintiffs' Reply.**

The Plaintiffs replied to the Defendants' Response on June 12, 2014.  See Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Compel Lab Testing (Doc. 64)("Reply"). Responding to the Defendants' timeliness argument, the Plaintiffs assert that they raised the issue of preserving the samples for additional testing during a deposition on June 18, 2009.  See Reply at 2-3.  The Plaintiffs state that, after this deposition, they made a follow-up written request to Iowa State on September 10, 2010, to test the samples and sent copies of the request to the Defendants and the Racing Commission.  See Reply at 3 (citation omitted).  The Plaintiffs argue that the Defendants oppose the request because they know that the samples from the other horses

will likely test negative for caffeine, which would "undermine Defendants' argument that their horse became contaminated with caffeine as a result of poor race track conditions."  Reply at 3.

The Plaintiffs state that the Defendants have been "terribly concerned that the farce of race track contamination would be forever exposed by the testing of the remaining horses." Reply at 4.  The Plaintiffs point out that three to five samples taken from horses at the Ruidoso Downs on the day of the All American Futurity tested negative for caffeine.  See Reply at 4. Without further explanation, the Plaintiffs argue that "[i]t is simply without merit for Defendants to claim it is not relevant evidence for the jury to hear that the remaining samples tested negative."  Reply at 4.   Responding to the Defendants' concern that positive tests may lead to a "parade of horribles," the Plaintiffs contend that "the amount of time since that race day and the lack of litigation by other parties make such concerns fanciful."  Reply at 4.

The Plaintiffs state that the Defendants "attempt to make much of the fact" that the Motion to Compel was not made while the Racing Commission was a party to this case.  Reply at 3.  The Plaintiffs explain that the Racing Commission was a party to this case "for a very short period of time" and discovery did not begin until after it was dismissed from the case.  Reply at 3.  The Plaintiffs argue that they

> had no way to know that Defendants would attempt to avoid discovery from a party who has appeared in this case (and responded to a motion to compel on that issue) on the simple basis that even though they had notice and briefed the issue, they did not have to respond to this long standing request simply because they were dismissed as a party.

Reply at 3.  The Plaintiffs suggest that they can cure any procedural defect with the Motion to Compel by using a rule 45 subpoena instead.  See Reply at 3.

6.     **The July 11, 2014, Hearing**.

The Court held a hearing on July 11, 2014.  See Transcript of Hearing at 1-46 (taken July 11, 2014)("Tr.").[4]  The Court first addressed the Motion for Final Judgment.  See Tr. at 2:9 (Court).  After the Court expressed concern that a final judgment order was not in the parties' best interests, the parties agreed that the Court would instead enter an order dismissing the Plaintiffs' claims against Cope, Real, Willis, Fowler, Delgado, and the Racing Commission, with prejudice.  See Tr. at 2:9-8:7 (Court, Dunn, Blackburn, Galanter).  The parties then turned to the Motion to Compel.  See Tr. at 8:8-46:7 (Court, Dunn, Blackburn, Galanter).

The Plaintiffs stated that the Motion to Compel was procedurally proper because the Court had not formally dismissed the Racing Commission from the case.  See Tr. at 41:17-20 (Dunn).  The Plaintiffs reiterated the argument from the Reply that the Motion to Compel was timely, because it was originally made in 2009.  See Tr. at 40:23-41:11 (Dunn).  The Defendants reiterated two arguments from their Response: (i) the test results from the other horses are irrelevant, because the amount of caffeine in Stolis Winner's sample was within the permissible range and did not affect his performance; and (ii) allowing the Plaintiffs to test the samples and challenge the outcome of the race in federal court will inevitably lead to an endless parade of other race participants challenging the race and asking to test the samples.  See Tr. at 32:17-39:20 (Blackburn).

The Court asked whether the Plaintiffs had served the Racing Commission with a formal discovery request for permission to test the samples.  See Tr. at 41:21-42:4 (Court).  The Plaintiffs said that they had not, but they were willing to file a rule 45 subpoena.  See Tr. at 42:5-18 (Dunn).  The Court stated that the Plaintiffs should be allowed to test the samples, because the

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

- 13 -

test results would either be admissible relevant information, or at least lead to admissible relevant information.  See Tr. At 8:25-9:5 (Court).  The Court said that it was inclined to deny the Motion to Compel, because did not think it could disregard the Federal Rules of Civil Procedure and order the Racing Commission to produce the samples on the basis of informal requests.  See Tr. at 42:2-43:2 (Court).  The Court asserted that the Plaintiffs have to formally request to test the samples before the Court would order the Racing Commission to allow them to do so.  See Tr. at 9:14-18 (Court); id. at 42:22-24 (Court).  The Court said that it did not know whether the Plaintiffs would have to use a rule 34 request for production or a rule 45 subpoena to obtain the information.  See Tr. at 43:11-14 (Court).  The Court said that the Plaintiffs may want to subpoena Iowa State because they currently possess the samples, and then the Racing Commission could object as an interested party.  See 44:3-45:19 (Court).  The same day as the hearing, the Court filed a memorandum opinion and order dismissing the Plaintiffs' claims against Cope, Real, Willis, Fowler, Delgado, and the Racing Commission, with prejudice.  See Memorandum Opinion and Order, filed July 11, 2014 (Doc. 72)("July 11, 2014, MOO").

## RELEVANT LAW REGARDING DISCOVERY

Rule 34 of the Federal Rules of Civil Procedure govern discovery requests for tangible objects.  See Fed. R. Civ. P. 34.  Rule 34(a) states:

A party may serve on any other party a request within the scope of Rule 26(b):

**(1)** to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

**(A)** any designated documents or electronically stored information -- including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations -- stored in any medium from which information can be obtained either directly or, if necessary, after translation by

> the responding party into a reasonably usable form; or
>
> **(B)** any designated tangible things; or
>
> **(2)** to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a).   Rule 26(b)(1) explains that the proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).   Federal courts have held that the scope of discovery under rule 26 is broad.  See Gomez v. Martin Marrietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").   The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result of this policy, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case."   Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-50 (D.N.M. 2007)(Browning, J.)(internal quotations marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim."  McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir. 2002)(unpublished).[5]  "'Discovery . . . is not intended to be a fishing expedition, but rather is

---

[5]McGee v. Hayes is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R.

meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'"  Rivera v. DJO, LLC, No. CIV 11-1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00-7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)).  See Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted).  "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."  Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."  Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93-5041 BMM, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998).  Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing

---

32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . .  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that McGee v. Hayes has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal

quotation marks omitted).

Rule 26(b)(1) was amended in 2000. Before the 2000 amendments, rule 26(b)(1) defined

the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is
> relevant to the subject matter involved in the pending actions, whether it relates to
> the claim or defense of the party seeking discovery or to the claim or defense of
> any other party, including the existence, description, nature, custody, condition
> and location of any books, documents, or other tangible things and the identity
> and location of persons having knowledge of any discoverable matter. The
> information sought need not be admissible at the trial if the information sought
> appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1)(1996). The 2000 amendments made the following changes, shown here

in redline form with the deleted language stricken and the added material underlined:

> Parties may obtain discovery regarding any matter, not privileged, that ~~which~~ is
> relevant to ~~the subject matter involved in the pending actions, whether it relates to~~
> the claim or defense of ~~the party seeking discovery or to the claim or defense of~~
> any ~~other~~ party, including the existence, description, nature, custody, condition
> and location of any books, documents, or other tangible things and the identity
> and location of persons having knowledge of any discoverable matter. <u>For good
> cause, the court may order discovery of any matter relevant to the subject matter
> involved in the action. Relevant</u> ~~The~~ information ~~sought~~ need not be admissible
> at the trial if discovery the ~~information sought~~ appears reasonably calculated to
> lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Putting aside the changes to the last sentence -- which the advisory

committee's notes make clear was a housekeeping amendment to clarify that inadmissible

evidence must still be relevant to be discoverable -- the 2000 amendments have two effects:

(i) they narrow the substantive scope of discovery in the first sentence; and (ii) they inject courts

into the process in the entirely new second sentence.

> In 1978, the Committee published for comment a proposed amendment,
> suggested by the Section of Litigation of the American Bar Association, to refine
> the scope of discovery by deleting the "subject matter" language. This proposal
> was withdrawn, and the Committee has since then made other changes in the

discovery rules to address concerns about overbroad discovery.  Concerns about costs and delay of discovery have persisted nonetheless, and other bar groups have repeatedly renewed similar proposals for amendment to this subdivision to delete the "subject matter" language.  Nearly one-third of the lawyers surveyed in 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions.  Discovery and Disclosure Practice, supra, at 44-45 (1997).  The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action.

The amendments proposed for subdivision (b)(1) include one element of these earlier proposals but also differ from these proposals in significant ways. The similarity is that the amendments describe the scope of party-controlled discovery in terms of matter relevant to the claim or defense of any party.  The court, however, retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause.  The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery.  The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery.   Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the attorneys surveyed by the Federal Judicial Center.  See Discovery and Disclosure Practice, supra, at 44. Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

**The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard.  Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information.  Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable.  In each instance, the determination whether such**

**information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.**

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

The amendments also modify the provision regarding discovery of information not admissible in evidence. As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible. The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence. As used here, "relevant" means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.

Finally, a sentence has been added calling attention to the limitations of subdivision (b)(2)(i), (ii), and (iii). These limitations apply to discovery that is otherwise within the scope of subdivision (b)(1). The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated. See 8 Federal Practice & Procedure § 2008.1 at 121. This otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery. Cf. Crawford-El v. Britton, 118 S. Ct. 1584, 1597 (1998) (quoting Rule 26(b)(2)(iii) and stating that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

Fed. R. Civ. P. 26 advisory committee's notes (emphasis added).

One gets the impression from reading the advisory committee's notes that the amendment was not intended to exclude a delineable swath of material so much as it is intended to send a signal to district judges to become more hands-on in the process of regulating -- mostly limiting -

- discovery on relevance grounds alone.  The "two effects" of the 2000 amendments might, thus, be only one effect: directing district judges to roll up their sleeves and manage discovery, and to do so on the basis of relevance.  The change in substantive scope from "subject matter," to "claim or defense," would, therefore, seem to exist more to "add teeth" to the relevance standard than to effectuate a substantive narrowing.  It is not surprising that Congress would want to increase judicial presence: "relevance" is a wide-open concept even in the context of trial, see Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."), and it is often said that relevance for discovery is an even broader concept.  One might then say that old rule 26(b)(1)'s the relevant discovery provision was toothless.  It is likewise unsurprising that the rulemakers are unable to articulate precise language narrowing the substantive scope of discovery: no single general rule can adequately take into account the infinite number of possible permutations of different claims, defenses, parties, attorneys, resources of parties and attorneys, information asymmetries, amounts in controversy, availabilities of information by other means, etc.  The determination requires the individualized judgment of someone on the scene, and that presence is what the rulemakers wanted when they: (i) encouraged district judges to take a firmer grasp on the scope of discovery; and (ii) put their thumbs on the scale in favor of narrower discovery in the rule's definition of the scope of discovery.

Of course, courts should also seek to give substantive content to amendments.  Read literally, the rule does not permit parties to discover information relevant only to the claim or defense of another party; they must use discovery only to investigate their own claims and defenses.  More problematically, however, the rule may prevent using the Federal Rules'

compulsory discovery process to obtain "background" information not specifically relevant to any one claim or defense -- e.g., a plaintiff naming a pharmaceutical company as a defendant and then using discovery to educate itself generally about medicine, biochemistry, and the drug industry by using the defendant's expertise.

In In re Cooper Tire & Rubber Co., 568 F.3d 1180 (10th Cir. 2009), the Tenth Circuit clarified that the 2000 Amendments to rule 26 "implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action." 568 F.3d at 1188. The Tenth Circuit further stated that,

> when a party objects that discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." This good-cause standard is intended to be flexible. When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be. "[T]he actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."

568 F.3d at 1188-89 (quoting the advisory committee's notes to the 2000 amendments to Fed. R. Civ. P. 26(b)(1))(citations omitted)(footnote omitted)(alteration in original).

## LAW REGARDING MOTIONS TO COMPEL

Rule 37 provides enforcement mechanisms for rule 34. According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). Accord Lewis v. Goldberry,

No. CIV 11-0283 JB/ACT, 2012 WL 681800, at *4 (D.N.M. Feb. 27, 2012)(Browning, J.).  Rule

37(a) provides:

> On notice to other parties and all affected persons, a party may move for an order
> compelling disclosure or discovery.  The motion must include a certification that
> the movant has in good faith conferred or attempted to confer with the person or
> party failing to make disclosure or discovery in an effort to obtain it without court
> action.

Fed. R. Civ. P. 37(a).  Under rule 37(a)(4), "an evasive or incomplete disclosure, answer, or

response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

If a party refuses to turn over documents through proper discovery, a defendant should move to

compel production pursuant to rule 37.  See Lane v. Page, 727 F. Supp. 2d 1214, 1236 n.15

(D.N.M. 2010)(Browning, J.).

## LAW REGARDING RULE 45

"Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P.

45."  Myers v. Andzel, No. CIV 06-14420 RWS, 2007 WL 3256879, at *1 (S.D.N.Y.

2007)(Sweet, J.).  See, e.g., Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374, 379

(W.D. Pa. 2005)(Gibson, J.)("Rule 45 is the only discovery method whereby information may be

obtained from a nonparty to the suit."); Blazek v. Capital Recovery Assocs., Inc., 222 F.R.D.

360, 361 (E.D. Wisc. 2004)(Adelman, J.)("[A]ny person may be required to produce documents

and any property may be inspected. . . .  If the person is not a party to the litigation, the party

seeking such discovery must utilize a subpoena to compel such discovery.").  Accordingly,

courts have denied motions to compel non-parties to produce information where the moving

party did not first attempt to subpoena the information that it sought to compel.  In Harco

National Insurance Co. v. Sleegers Engineering, Inc., No. CIV 06-11314 TLL, 2014 WL

5421237 (E.D. Mich. Oct. 22, 2014), for example, the Honorable Thomas L. Ludington, United

States District Judge for the Eastern District of Michigan, denied the plaintiff's motion to compel

a former defendant to produce information because the plaintiff had never subpoenaed the

information that it sought to compel.  See 2014 WL 5421237, at *4.  Judge Ludington stated:

> By the terms of Rule 45, a party seeking discovery from a non-party must serve
> that non-party with a subpoena.  Here, there is no evidence that [the plaintiff]
> served a subpoena on [the former defendant], nor does [the former defendant]
> make any representations that it did so.  Because [the plaintiff] has not complied
> with the first step of seeking discovery from a non-party, its motion to compel
> will be denied.

2014 WL 5421237, at *4.  Cf. Smith v. Fla. Dep't of Corr., 369 F. App'x 36, 38 (11th Cir.

2010)(holding that the district court did not abuse its discretion when it denied the plaintiff's

motion to compel a non-party to produce information without having validly served the

non-party with a subpoena).

Rule 45 was amended on December 1, 2013.  The December 1, 2013, amendments made

the following changes, shown here in redline form with the deleted language stricken and the

added material underlined:

    **(a)**    **In General.**

        **(1)**    ***Form and Contents.***

                **(A)**    ***Requirements -- In General.***    Every subpoena must:

                        **(i)**    state the court from which it issued;

                        **(ii)**    state the title of the action~~, the court in which it is pending~~, and its civil-action number;

                        **(iii)**    command each person to whom it is directed to do the following at a specified time and place: attend and testify;

produce       designated
documents,    electronically
stored    information,    or
tangible   things   in   that
person's possession, custody,
or  control;  or  permit  the
inspection of premises; and

**(iv)**    set out the text of Rule 45(d̶e) and (e̶d).

**(B)**    *Command to Attend a Deposition -- Notice of the Recording Method.*    A subpoena commanding  attendance  at  a  deposition must  state  the  method  for  recording  the testimony.

**(C)**    *Combining  or  Separating  a  Command  to Produce or to Permit Inspection; Specifying the   Form   for   Electronically   Stored Information.*    A  command  to  produce documents,       electronically       stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing, or trial, or may be set out in a set out in a separate subpoena.  A subpoena may specify the form or forms in which electronically stored information is to be produced.

**(D)**    *Command   to   Produce;   Included Obligations.*  A command in a subpoena to produce  documents,  electronically  stored information, or tangible things requires the responding person~~party~~ to permit inspection, copying,  testing,  or  sampling  of  the materials.

**(2)**    _**Issuing**_ ~~**Issued from Which**~~ **Court**.  A subpoena must issue from the court where the action is pending. ~~as follows:~~

~~(A)    for attendance at a hearing or trial, from the court   for   the   district   where   the   hearing   or trial where the hearing or trial is to be held;~~

> (B)  for attendance at a deposition, from the court for the district where the deposition is to be taken; and

> (C)  for production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made.

**(3)  *Issued by Whom.*** The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. An attorney also may issue and sign a subpoena <u>if the attorney is authorized to practice in the issuing court.</u> ~~as an officer of:~~

> (A)  a court in which the attorney is authorized to practice; or

> (B)  a court for a district where a deposition is to be taken or production is to be made, if the attorney is authorized to practice in the court where the action is pending.

**<u>(4)</u>  <u>*Notice to Other Parties Before Service.*</u>** <u>If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.</u>

**(b)  Service.**

**(1)  *By Whom <u>and How</u>; Tendering Fees~~; Serving a Copy of Certain Subpoenas.~~*** Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies. ~~If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party.~~

(2)      ***Service in the United States.***  <u>A subpoena may be served at</u> <u>any place within the United States.</u>  ~~Subject to Rule~~ ~~45(c)(3)(A)(ii), a subpoena may be served at any place:~~

    ~~(A)~~      ~~within the district of the issuing court;~~

    ~~(B)~~      ~~outside that district but within 100 miles of~~ ~~the place specified for the deposition,~~ ~~hearing, trial, production, or inspection;~~

    ~~(C)~~      ~~within the state of the issuing court if a state~~ ~~statute or court rule allows service at that~~ ~~place of a subpoena issued by a state court~~ ~~of general jurisdiction sitting in the place~~ ~~specified for the deposition, hearing, trial,~~ ~~production, or inspection; or~~

    ~~(D)~~      ~~that the court authorizes on motion and for~~ ~~good cause, if a federal statute so provides.~~

(3)      ***Service in a Foreign Country.***  28 U.S.C. 1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country.

(4)      ***Proof of Service.***  Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served.  The statement must be certified by the server.

(c)      **Place of Compliance.**

    <u>**(1)**</u>      <u>***For a Trial, Hearing, or Deposition.***</u>  <u>A subpoena may</u> <u>command a person to attend a trial, hearing, or deposition</u> <u>only as follows:</u>

        <u>**(A)**</u>      <u>within 100 miles of where the person</u> <u>resides, is employed, or regularly transacts</u> <u>business in person; or</u>

        <u>**(B)**</u>      within the state where the person resides, is employed, or regularly transacts business in person, if the person

            <u>**(i)**</u>      <u>is a party or a party's officer;</u>

- 26 -

**(ii)** <u>is commanded to attend a trial and would not incur substantial expense.</u>

<u>**(2)**</u>  ***For Other Discovery.***  <u>A subpoena may command:</u>

**(A)** <u>production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transactions business in person; and</u>

**(B)** <u>inspection of premises at the premises to be inspected.</u>

**(<u>d</u><u>e</u>)**  **Protecting a Person Subject to a Subpoena<s>; Enforcement.</s>**

**(1)**  ***Avoiding Undue Burden or Expense; Sanctions.***  A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The <s>issuing</s> court f<u>or the district where compliance is required</u> must enforce this duty and impose an appropriate sanction -- which may include lost earnings and reasonable attorney's fees -- on a party or attorney who fails to comply.

**(2)**  ***Command to Produce Materials or Permit Inspection.***

**(A)**  *Appearance Not Required.*  A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)**  *Objections.*  A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises -- or to producing electronically stored

information in the form of forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.  If an objection is made, the following rules apply:

**(i)**     At any time, on notice to the commanded person, the serving party may move the ~~issuing~~ court <u>for the district where compliance is required</u> for an order compelling production or inspection.

**(ii)**    These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)**     *Quashing or Modifying a Subpoena.*

**(A)**     *When Required.*   On timely motion, the issuing court for the district where compliance is required most quash or modify a subpoena that:

**(i)**     fails to allow a reasonable time to comply;

**(ii)**    requires a person <u>to comply beyond the geographical limits specified in Rule 45(c);</u> ~~who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person -- except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any~~

- 28 -

~~such place within the state where the trial is held;~~

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies;

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the ~~issuing~~ court <u>for the district where compliance is required</u> may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; <u>or</u>

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurences in dispute and results from the expert's study that was not requested by a party<u>.</u>~~; or~~

**(iii)** ~~a person who is neither a party not a party's officer to incur substantial expense to travel more than 100 miles to attend trial.~~

**(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(<u>d</u>~~e~~)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that

cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e̶d̶)** **Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good

- 30 -

cause, considering the limitations of Rule 26(b)(2)(C).   The court may specify conditions for the discovery.

**(2)**   ***Claiming Privilege or Protection.***

**(A)**   *Information Withhold.*   A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)**   expressly make the claim; and

**(ii)**   describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)**   *Information Produced.*   If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.   After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court <u>for the district where compliance is required</u> under seal for a determination of the claim.   The person who produced the information must preserve the information until the claim is resolved.

**(f)**   <u>**Transferring a Subpoena-Related Motion.**</u>   <u>When the court where compliance is required did not issue the subpoena, it may transfer a</u>

> motion under this rule to the issuing court if the person subject to the
> subpoena consents or if the court finds exceptional circumstances.  Then,
> if the attorney for a person subject to a subpoena is authorized to practice
> in the court where the motion was made, the attorney may file papers and
> appear on the motion as an officer of the issuing court.  To enforce its
> order, the issuing court may transfer the order to the court where the
> motion was made.
>
> **(ge)**   The court for the district where compliance is required -- and also, after a
> motion is transferred, the issuing court -- may hold in contempt a person
> who, having been served, fails without adequate excuse to obey the
> subpoena or an order related to it.  ~~A nonparty's failure to obey must be
> excused if the subpoena purports to require the nonparty to attend or
> produce at a place outside the limits of Rule 45(c)(3)(A)(ii).~~

Fed. R. Civ. P. 45.  The December 1, 2013, amendments to rule 45 carry two significant consequences for the Court's resolution of this case.

First, revised rule 45(a)(2) provides that subpoenas are issued by the court in which the action is pending, rather than by the court where compliance is sought.  Accordingly, the issuing court will always be the trial court and parties no longer have to serve subpoenas from the district in which the information or witnesses sought are located.  See Fed. R. Civ. P. 45(a)(2)(providing that subpoenas "must issue from the court where the action is pending").  In line with the broadened authority that rule 45(a)(2) establishes for the trial court, amended rule 45(b)(2) establishes nationwide service of process -- eliminating the previous discrepancy between federal service of process rules in criminal and civil cases.  See Fed. R. Civ. P. 45(b)(2) (providing for the service of a subpoena "at any place within the United States").

Second, revised rule 45(d)(3) provides that motions to quash or enforce a subpoena can be brought in the district where compliance is required -- i.e., the enforcement court -- rather than the issuing court -- i.e., the trial court.  See Fed. R. Civ. P. 45(d)(3).  However, new Rule 45(f) authorizes the enforcement court where compliance is required to transfer a motion to quash or enforce a subpoena back to the trial court that issued the subpoena in two limited

instances: (i) if the person subject to the subpoena consents to the transfer; or (ii) "if the court

finds exceptional circumstances."  Fed. R. Civ. P. 45(f).

The advisory committee notes provide some guidance as to when exceptional

circumstances may be found:

> The prime concern should be avoiding burdens on local nonparties subject
> to subpoenas, and it should not be assumed that the issuing court is in a superior
> position to resolve subpoena-related motions. In some circumstances, however,
> transfer may be warranted in order to avoid disrupting the issuing court's
> management of the underlying litigation, as when that court has already ruled on
> issues presented by the motion or the same issues are likely to arise in discovery
> in many districts.  Transfer is appropriate only if such interests outweigh the
> interests of the nonparty served with the subpoena in obtaining local resolution of
> the motion.

Fed. R. Civ. P. 45 advisory committee's note to the December 1, 2013, amendments.

## ANALYSIS

The Court will deny the Motion to Compel for two reasons.  First, the Motion to Compel

is premature.  Because the Racing Commission is no longer a party to this case, the Plaintiffs

must subpoena the Racing Commission to give the Plaintiffs permission to test the samples

before moving to compel the Racing Commission to do so.   Second, even if the Racing

Commission were still a party to the case, the Motion to Compel would still be procedurally

improper, because the Plaintiffs' informal discovery requests do not satisfy either the Federal

Rules of Civil Procedure or the Local Rules.  Because the test results are relevant, however, the

Plaintiffs can subpoena the Racing Commission to obtain its permission to test the samples.  The

Plaintiffs may also subpoena Iowa State to test the samples, because they are currently in Iowa

State's possession.

I.   **THE MOTION TO COMPEL IS PREMATURE, BECAUSE THE PLAINTIFFS NEVER ATTEMPTED TO SUBPOENA THE RACING COMMISSION TO OBTAIN PERMISSION TO TEST THE SAMPLES.**

The Motion to Compel seeks production from the Racing Commission, a one-time defendant in this case.  See Motion to Compel at 1.  Specifically, the Plaintiffs seek the Racing Commission's permission to test blood and urine samples taken from twenty-three horses that ran races in Ruidoso Downs on September 1, 2008.  See Motion to Compel at 1-4.

The Court first concludes that the Racing Commission is a non-party for discovery purposes.  On September 30, 2013, the Court filed the Sept. 29, 2013 Order, which dismissed without prejudice the Plaintiffs' claims against Cope, Real, Willis, Fowler, Delgado, and the Racing Commission.  See Sept. 30, 2013, Order at 1.  On October 29, 2013, the Court filed the Oct. 29, 2013, MO, which explained the rationale for the Sept. 30, 2013, Order.  See Oct. 29, 2013 MO at 1.  In the Oct. 29, 2013, MO, the Court stated that the Plaintiffs could file a motion to amend the Complaint to add claims against the dismissed parties.  See Oct. 29, 2013, MO at 78.  Ten days later, on November 8, 2013, the Court filed an Order that adopted the parties' discovery plan, which set a deadline of January 31, 2014, for the Plaintiffs to file a motion to amend their complaint.  See Nov. 8, 2013, Order at 1.  The Plaintiffs never amended the Complaint. The Plaintiffs filed the Motion to Compel on April 23, 2014.  See Motion to Compel at 1.  On July 11, 2014, the Court filed a Memorandum Opinion and Order dismissing the Plaintiffs' claims against Cope, Real, Willis, Fowler, Delgado, and the Racing Commission, with prejudice.  See July 11, 2014, MOO at 1.  The Court has not, however, entered any other order or final judgment regarding the Plaintiffs' claims against the Racing Commission.

The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, faced a similar situation in Harco National Insurance Co. v. Sleegers

Engineering, Inc., No. CIV 06-11314 TLL, 2014 WL 5421237 (E.D. Mich. Oct. 22, 2014).

There, the plaintiff -- Harco Insurance -- moved to compel one of the defendants -- Schwans -- to

produce a number of documents.  See 2014 WL 5421237, at *2-3.  Three months after Harco

Insurance filed its motion to compel, it dismissed Schwans from the case without prejudice.[6]  See

2014 WL 5421237, at *3.  Apparently believing that dismissing Schwans from the case had no

effect on its motion to compel, Harco Insurance neither withdrew nor updated the motion to

compel.  See 2014 WL 5421237, at *3.

    Judge Ludington found Schwans' status as a non-party significant in deciding the motion

to compel, because

> [t]he discovery rules distinguish between parties to litigation and non-parties.
> Some rules permit discovery only from parties.  Others permit discovery from
> non-parties, but impose additional burdens for obtaining such discovery . . . .
>
> Similarly, any person may be required to produce documents and any property
> may be inspected.  See Rule 34.  If the person is not a party to the litigation, the
> party seeking such discovery must utilize a subpoena to compel such discovery.
> See Rule 34(c).

2014 WL 5421237, at *3 (citations omitted)(alterations in original).  Judge Ludington concluded

that Schwans became a non-party when Harco Insurance dismissed it from the case, because

Schwans

> los[t] many of the rights of a party, such as the right to receive notice of future
> proceedings . . . the right to present evidence on issues . . . and the right to contest the
> factual allegations in the complaint. . . .  [Accordingly,] it would not seem fair to force
> [Schwans] to participate in an action to a greater degree than could be required of other
> non-parties.

2014 WL 5421237, at *4 (citations omitted).

---

[6]A Public Access to Court Electronic Records ("PACER") search reveals that Judge
Ludington has not entered final judgment regarding Harco's claims against Schwans.

Similarly, in Treppel v. Biovail Corp., 233 F.R.D. 363, 369 (S.D.N.Y. 2006), the Honorable James C. Francis, United States Magistrate Judge for the Southern District of New York, denied a motion to compel discovery from former defendants. See 233 F.R.D. at 369. In that case, the Honorable Peter K. Leisure, United States District Judge for the Southern District of New York, denied the defendants' first motion to dismiss. See 233 F.R.D. at 367-69. Thereafter, the plaintiffs served the defendants with a request for the production of a large volume of documents. See 233 F.R.D. at 368-69. Before responding to the plaintiffs' discovery requests, two of the defendants ("the Strickland defendants") filed another motion to dismiss, which Judge Leisure granted, dismissing the plaintiffs' claims against the Strickland defendants with prejudice.[7] See 233 F.R.D. at 368. The plaintiffs then moved to compel all of the original defendants -- including the Strickland defendants -- to respond to their discovery request. See 233 F.R.D. at 368-69. Denying the motion to compel as to the Strickland defendants, Judge Francis stated, without further explanation, that "[d]efendants who have been dismissed with prejudice from a case need no longer respond to discovery requests served upon them when they were parties to the litigation." 233 F.R.D. at 369 (citing Verhagen v. Olarte, No. CIV 89-0300 CSH, 1990 WL 41730, at *1 (S.D.N.Y. Apr. 4, 1990)(Haight, J.)).

As in Treppel v. Biovail Corp. and Harco National Insurance Co. v. Sleegers Engineering, Inc., the Court has dismissed all of the Plaintiffs' claims against the Racing Commission. The Court agrees with Judges Francis and Ludington that a defendant who has been dismissed from a case should be considered a non-party for discovery purposes, even when no final judgment under rule 54 has been entered as to the parties. There are two reasons for adopting this approach. First, almost all of the efficiencies gained -- both by the court and the

---

[7]A PACER search reveals that Judge Francis has not entered final judgment regarding the plaintiffs' claims against the Strickland defendants.

parties -- from dismissing parties at the motion to dismiss stage would be lost if the remaining parties to a case could use all of the traditional discovery devices to obtain information from the dismissed parties.  See Memorandum from Paul V. Niemeyer, Chair, Advisory Committee on Civil Rules, to Hon. Anthony J. Scirica, Chair, Committee on Rules of Practice and Procedure (May 11, 1999), 192 F.R.D. 354, 357 (2000)(reporting that discovery accounts for as much as ninety percent of litigation costs when it is actively employed).  Parties are subject to, among other things: (i) initial disclosure obligations, see Fed. R. Civ. P. 26(a); (ii) requests for depositions, see Fed. R. Civ. P. 27 through Fed. R. Civ. P. 32; (iii) interrogatories, see Fed. R. Civ. P. 33; (iv) requests for documents, electronically stored information, and tangible things, see Fed. R. Civ. P. 34; (v) physical and/or mental examinations, see Fed. R. Civ. P. 35; and (vi) requests for admissions, see Fed. R. Civ. P. 36.  Moreover, parties are subject to these requests regardless whether they are located within the district court's jurisdiction.  By contrast, nonparties enjoy considerable protection from discovery requests:

> Rule 45, for example, places an express 100-mile territorial limit on subpoenas that require a nonparty to give a deposition in person.  Courts may refuse discovery requests aimed at nonparties in cases where the same testimony or documents could instead be obtained from a party to the action.  Under some circumstances, nonparties may file an immediate appeal of a discovery order on the theory that the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance.  A few courts even impose a heightened relevancy requirement for nonparty discovery requests.

Ryan W. Scott, Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery, 88 Minn. L. Rev. 968, 973 (2004)(footnotes omitted)(internal quotation marks omitted).  Consequently, allowing parties to use the full arsenal of discovery devices -- with an unlimited geographic scope -- to obtain information from parties that have been dismissed from the case would eviscerate the purpose of the heightened pleading standards that the Supreme Court established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 564 (2007)("[T]he threat of

discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings. . . .  [I]t is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases . . . ."), and Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009)("Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.").  Taken to its logical conclusion, this approach would require every defendant that was ever involved in a case -- even those against whom the plaintiff has not plausibly asserted a single claim -- to either respond to each of the plaintiff's interrogatories, requests for production, and requests for deposition, or be forced to litigate them until the case has concluded.

Second, as Judge Ludington noted in Harco National Insurance Co. v. Sleegers Engineering, Inc., once a defendant is dismissed from the case, it loses many of the rights of a party -- chief among them, the right to contest the factual allegations in the complaint.  See 2014 WL 5421237, at *4 (citations omitted).  Consequently, "it would not seem fair to force [the dismissed party] to participate in an action to a greater degree than could be required of other non-parties."  2014 WL 5421237, at *4 (citations omitted).  If a former defendant in a case has no greater right to participate in the case than an individual, company, or organization that was never brought into the case in the first place, they should not be subject to any additional discovery requirements.

Because of these concerns, and because the plaintiffs do not cite -- and the Court has been unable to find -- a case in which a court found an individual, company, or organization that

has been dismissed from a case to be a party for discovery purposes, the Court concludes that the Racing Commission is a non-party for discovery purposes.

This rule applies whether the party was dismissed with or without prejudice, and regardless whether the Court enters a final judgment under rule 54(b).  The decisions on these issues relate to difficult factors, and should not change the rule that non-parties are not subject to the same discovery obligations as a party.   For example, the decision to dismiss without prejudice may involve settlements, agreements, lack of jurisdiction, lack of exhaustion, or sovereign immunity; in none of these cases would it make sense, for the same reasons stated above, to continue to treat the dismissed party as a party for discovery purposes.  Indeed, if the Court lacks jurisdiction over a party, it should not continue to do business as usual -- i.e., treat the dismissed party as if the Court still had jurisdiction over it.  The same holds true despite the Court not entering final judgment against a party.  The decision to enter such judgment turns on a number of factors -- mostly whether it is a good idea to burden the appellate court with an interlocutory appeal.  It hardly makes sense to treat a dismissed party as a party for discovery purposes solely because the Court has concluded that an interlocutory appeal would not be in the Court's, the appellate court's, or the parties' best interests.

As the Racing Commission is no longer a party, the Plaintiffs must use a subpoena to obtain its permission to test the samples.  Courts have held that "[d]iscovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45."  Myers v. Andzel, No. CIV 06-14420 RWS, 2007 WL 3256879, at *1 (S.D.N.Y. 2007)(Sweet, J.).  See, e.g., Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374, 379 (W.D. Pa. 2005)(Gibson, J.)("Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit."); Blazek v. Capital Recovery Assocs., Inc., 222 F.R.D. 360, 361 (E.D. Wisc. 2004)(Adelman, J.)("[A]ny

person may be required to produce documents and any property may be inspected. . . .  If the

person is not a party to the litigation, the party seeking such discovery must utilize a subpoena to

compel such discovery.").  Accordingly, courts have denied motions to compel non-parties to

produce information where the moving party did not first attempt to subpoena the information

that it sought to compel.  In Harco National Insurance Co. v. Sleegers Engineering, Inc., for

example, Judge Ludington denied the plaintiff's motion to compel a former defendant to produce

information because the plaintiff had never subpoenaed the information that it sought to compel.

See 2014 WL 5421237, at *4.  Judge Ludington stated:

> By the terms of Rule 45, a party seeking discovery from a non-party must serve
> that non-party with a subpoena.  Here, there is no evidence that [the plaintiff]
> served a subpoena on [the former defendant], nor does [the former defendant]
> make any representations that it did so.  Because [the plaintiff] has not complied
> with the first step of seeking discovery from a non-party, its motion to compel
> will be denied.

2014 WL 5421237, at *4.  Cf. Smith v. Fla. Dep't of Corr., 369 F. App'x 36, 38 (11th Cir.

2010)(holding that the district court did not abuse its discretion when it denied the plaintiff's

motion to compel a non-party to produce information without having validly served the

non-party with a subpoena).  Because the Plaintiffs did not subpoena the Racing Commission to

allow them to test the samples, they did not satisfy the prerequisite for filing a motion to compel.

Accordingly, the Court will deny the Motion to Compel.

## II.     EVEN IF THE RACING COMMISSION WERE STILL A PARTY TO THE CASE, THE MOTION TO COMPEL WOULD BE PROCEDURALLY IMPROPER, BECAUSE THE PLAINTIFFS' INFORMAL DISCOVERY REQUESTS DO NOT SATISFY THE FEDERAL RULES OF CIVIL PROCEDURE.

A party must satisfy rule 5, rule 26, rule 37(a)(1), and one of the discovery requests

detailed in rule 37(a)(3) before filing a motion to compel.  The Plaintiffs did not satisfy those

rules' requirements.  Accordingly, the Motion to Compel would be procedurally improper even if the Racing Commission were still a party to the case.

> **A.**  **A PARTY MUST SATISFY RULE 5, RULE 26, RULE 37(A)(1), AND ONE OF THE DISCOVERY REQUESTS DETAILED IN RULE 37(A)(3) BEFORE FILING A MOTION TO COMPEL.**

A party must satisfy rule 5, rule 26, rule 37(a)(1), and one of the discovery requests detailed in rule 37(a)(3) before filing a motion to compel.  Rule 37(a) governs motions to compel.  It states, in pertinent part:

> **(1)**  *In General.*  On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
>
> . . . .
>
> **(3)**  *Specific Motions.*
>
> > . . . .
> >
> > **(B)**  *To Compel a Discovery Response.*  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if:
> >
> > > **(i)**  a deponent fails to answer a question asked under Rule 30 or 31;
> > >
> > > **(ii)**  a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
> > >
> > > **(iii)**  a party fails to answer an interrogatory submitted under Rule 33; or
> > >
> > > **(iv)**  a party fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34.

Fed. R. Civ. P. 37(a).  The Court could interpret rule 37(a) in one of two ways.  First, the Court could interpret rule 37(a)(1) as establishing an additional requirement before a party can file a motion to compel in each of the four scenarios that rule 37(a)(3) details.    Under this interpretation, before filing a motion to compel, a party would have to prove: (i) that it had served a formal discovery request pursuant to rules 30, 31, 33, or 34, <u>see</u> Fed. R. Civ. P. 37(a)(3); and (ii) that it had "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," Fed. R. Civ. P. 37(a)(1).  Second, the Court could interpret rule 37(a)(1) as allowing a party to file a motion to compel in a fifth scenario -- separate and unrelated to the scenarios outlined in rule 37(a)(3). Under this interpretation, a party could file a motion to compel without ever having made a discovery request or satisfying any other Federal Rule of Civil Procedure so long as it had "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).

Because the second interpretation would render multiple Federal Rules of Civil Procedure mere surplusage, the Court adopts the first interpretation.  <u>Cf.</u> <u>Freeman v. Quicken Loans, Inc.</u>, 132 S. Ct. 2034, 2042 (2012)(Scalia, J.)(explaining the Supreme Court's "general reluctance to treat statutory terms as surplusage.")(citations omitted)(internal quotation marks omitted); <u>United States v. Jicarilla Apache Nation</u>, 131 S. Ct. 2313, 2330 (2011)(Alito, J.)("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.").[8]  The Federal Rules of

---

[8]The Court has previously stated: "The rules of statutory construction apply to the Federal Rules. . . ." <u>In re Kubler</u>, No. CIV 11-0048, 2012 WL 394680, at *11 (D.N.M. Jan. 25, 2012)(Browning, J.).    <u>Accord</u> <u>Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993)(applying the <i>expressio unius est exclusio alterius</i> canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); <u>Hillis    v.</u>

Civil Procedure set forth a logical and comprehensive framework for the discovery process in civil cases.  For example, rule 34 provides for the discovery of documents, electronically stored information, and tangible items.  See Fed. R. Civ. P. 34(a)(1)("A party may serve on any other party a request within the scope of Rule 26(b)" to permit the requesting party to "inspect, copy, test, or sample" documents, electronically stored information, or tangible items.").  Rule 34(b)(1) details the requirements for the contents of such requests:

> The request:
>
> **(A)**   must describe with reasonable particularity each item or category of items to be inspected; [and]
>
> **(B)**   must specify a reasonable time, place, and manner for the inspection and for performing the related acts . . . .

Fed. R. Civ. P. 34(b)(1).  Other rules establish additional requirements for all discovery requests. Rule 26(g)(1) states that "every discovery request . . . must be signed by at least one attorney of record in the attorney's own name -- or by the party personally, if unrepresented -- and must state the signer's address, e-mail address, and telephone number."  Fed. R. Civ. P. 26(g)(1).

> There is a purpose behind the signature requirement:
>
> By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> . . . .
>
> **(B)**   with respect to a discovery request, response, or objection, it is:
>
> **(i)**   consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

---

Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").

> **(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
> **(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B)(i)-(iii).  Moreover, there are significant consequences for a party who fails to properly certify a discovery request.  Under rule 26(g)(1)(B)(2), parties do not have to respond to an unsigned discovery request.  See Fed. R. Civ. P. 26(g)(1)(B)(2).  Rule 26(g)(1)(B)(3) mandates that, if a party fails to properly certify a discovery request "without substantial justification," a court, "on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."  Fed. R. Civ. P. 26(g)(1)(B)(3).  This sanction may include an order to pay the other party's or parties' reasonable expenses -- including attorney's fees -- that the certification violation caused.  See Fed. R. Civ. P. 26(g)(1)(B)(3).  Furthermore, every discovery request must be served on the party to whom it is directed as well as all other parties to the action, generally through the parties' attorney of record.  See Fed. R. Civ. P. 5.  A party may only satisfy the service requirement by

> **(A)** handing [the request] to the person;
>
> **(B)** leaving [the request]:
>
> > **(i)** at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
> >
> > **(ii)** if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

**(C)**    mailing [the request] to the person's last known address -- in which event service is complete upon mailing;

**(D)**    leaving [the request]  with the court clerk if the person has no known address;

**(E)**    sending [the request] by electronic means if the person consented in writing -- in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served; or

**(F)**    delivering [the request] by any other means that the person consented to in writing -- in which event service is complete when the person making service delivers it to the agency designated to make delivery.

Fed. R. Civ. P. 5(b).  Rule 5(d), which governs filing, states:

**(1)**    ***Required Filings; Certificate of Service.***  Any paper after the complaint that is required to be served -- together with a certificate of service -- must be filed within a reasonable time after service. But disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission.

**(2)**    ***How Filing Is Made -- In General.***  A paper is filed by delivering it:

**(A)**    to the clerk; or

**(B)**    to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk.

**(3)**    ***Electronic Filing, Signing, or Verification.***  A court may, by local rule, allow papers to be filed, signed, or verified by electronic means that are consistent with any technical standards established by the Judicial Conference of the United States. A local rule may require electronic filing only if reasonable exceptions are allowed. A paper filed electronically in compliance with a local rule is a written paper for purposes of these rules.

Fed. R. Civ. P. 5(d).

After the party seeking discovery has validly served a request, the party that received the request has thirty days in which to respond or object to the request.  See Fed. R. Civ. P.

34(b)(2)(A), (B).  The responses must be signed and certified in the same manner as discovery requests, and the responding party is obligated to supplement its responses in a timely manner if it learns that a response is materially incorrect or incomplete.  See Fed. R. Civ. P. 26(e)(1)(A), (g)(1).

Under the first interpretation of rule 37(a) -- the one in which rule 37(a)(1) establishes a freestanding basis for a motion to compel -- a party seeking discovery could skip all of these steps by "in good faith confer[ing] or attempt[ing] to confer with the person or party failing to make disclosure or discovery," Fed. R. Civ. P. 37(a)(1), thus, rendering those rules superfluous. The Court finds it difficult to conclude that the rulemakers would go through the trouble of establishing such a complex and comprehensive framework for the discovery process and then create a provision that allows parties to go straight to court with a motion to compel.  Rather than rendering the other rules superfluous, the second interpretation of rule 37(a) -- the one in which rule 37(a)(1) sets forth an additional requirement before a party seeking discovery may file a motion to compel -- logically adds to the framework that the other rules establish.  Under the second interpretation, where a party fails to respond to a formal discovery request, the party seeking disclosure must then confer or attempt to confer with the responding party in good faith to attempt to obtain the discovery.  See Fed. R. Civ. P. 37(a)(1), (4).  If this good-faith effort to resolve the problem without court intervention fails, the requesting party may then move to compel the discovery, see Fed. R. Civ. P. 37(a)(1), and if the discovery deficiency concerned an interrogatory or request to inspect, the requesting party may move for sanctions.  See Fed. R. Civ. P. 37(d)(1)(A).

Second, although the Court has been unable to find a case in which a court has directly addressed whether rule 37(a)(1) creates a freestanding basis for a motion to compel, courts have

rejected parties' attempts to compel the production of documents without filing a formal discovery request.  In <u>Roberts v. Americable International, Inc.</u>, 883 F. Supp. 499 (E.D. Cal. 1995), for example, the Honorable Gregory G. Hollows, United States Magistrate Judge for the Eastern District of California, denied a motion to compel where the movant had made an oral request for discovery during a deposition.  <u>See</u> 883 F. Supp. at 501 n.2.  Judge Hollows stated:

> The local litigation culture often utilizes informal requests to produce documents which are made at depositions, and most times these informal requests are honored.   Nevertheless, Amerciable's informal request for production of documents made at deposition is not recognized as an appropriate discovery request under the Federal Rules, <u>i.e.</u> such a discovery vehicle does not exist under the Federal Rules of Civil Procedure.   Americable's motion to compel is thus inappropriate and is denied for this reason.

883 F. Supp. at 501 n.2.

Similarly, in <u>Schwartz v. Marketing Publishing Co.</u>, 153 F.R.D. 16 (D. Conn. 1994), the Honorable Thomas P. Smith, United States Magistrate Judge for the District of Connecticut, denied the plaintiff's motion to compel discovery where the plaintiff made two informal requests for the discovery it sought to compel -- one oral request during a deposition and the other in a letter to the defendants' attorneys.  <u>See</u> 153 F.R.D. at 18.  Judge Smith explained:

> The Federal Rules of Civil Procedure are designed to enable a relatively small judiciary to deal in an orderly way with a virtually limitless number of disputes.   Even when parties sedulously *comply* with the rules of procedure, courts must struggle to keep abreast of their ever-growing dockets.  By pioneering their own ad hoc procedure, parties do themselves and the courts a disservice.  It is far easier and quicker to make a formal document request pursuant to Rule 34 than it is to construct and articulate an argument why an *informal* letter should be *treated* as a Rule 34 request so as to enable it to be *enforced* under Rule 37. When parties fashion their own procedure, they remove their cases from the litigative stream and, when a dispute later arises, almost invariably consume more than their fair share of judicial time.
>
> . . . .
>
> Since these documents were not requested pursuant to Fed. R Civ. P. 34, but in a highly informal, extra-procedural manner, Rule 37 does not by its terms apply.

> Accordingly, plaintiff's motion to compel the production of these documents
> pursuant to Rule 37 is denied.

153 F.R.D. at 21 (emphases in original)(footnote omitted)(citations omitted).  See SJB Grp.,
LLC v. TBE Grp., Inc., No. CIV 12-181 SDD/RLB, 2013 WL 2928214, at *3 (M.D. La. June 13,
2013)(Bourgeois, M.J.)("[A] court may not compel the production of documents under Rule 37
unless the party seeking such an order has served a proper discovery request on the opposing
party.").

　　　　To be sure, courts have found that discovery requests made in letters can serve as the
basis for a motion to compel.  Those courts determined, however, that those requests satisfied
rule 34 -- one of the prerequisites for a motion to compel under 37(a)(3), rather than a
freestanding basis for a motion to compel under rule 37.  For example, in Dixon v. Cappellini, 88
F.R.D. 1 (M.D. Pa. 1980), the defendant made an oral request for documents during a deposition.
See 88 F.R.D. at 2.  The parties subsequently exchanged letters relating to the request, and the
plaintiff's counsel ultimately refused to produce the documents.  See 88 F.R.D. at 2.  When the
defendant filed a motion to compel, the plaintiff argued that the motion was improper, because
the defendant had not served a formal discovery request.  See 88 F.R.D. at 2.  The Honorable
Richard P. Conaboy, United States District Judge for the Middle District of Pennsylvania,
disagreed.  See 88 F.R.D. at 2.  Judge Conaboy stated:

> An oral request for the documents was made at Plaintiff's deposition.
> Correspondence between counsel indicates that further discussion of the request
> went on between the parties before Plaintiff's counsel formally refused the
> request by letter dated January 2, 1980.  This letter indicates that the spirit, if not
> the procedure of Rule 34, was followed.  The material requested is described with
> reasonable particularity, and that both parties were aware which documents were
> involved.  Therefore, we do not find merit in the Plaintiff's argument that the
> motion to compel must be denied on procedural grounds.

88 F.R.D. at 2.  See Emps. Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co., No. CIV 05-0620 MDG, 2006 WL 1120632, at *2-3 (E.D.N.Y. Apr. 26, 2006)(Go, M.J.)(finding a letter from defendant's attorneys to the plaintiffs' attorneys was "a proper discovery request which complied with various procedural requirements under Fed. R. Civ. P. 34" and could, therefore, serve as a basis for a motion to compel).  The Court has been unable to find -- and the Plaintiffs do not cite -- a case in which a court has granted a motion to compel without first finding that one of rule 37(a)(3)'s prerequisites had been met.

Consequently, a party must satisfy all of the discovery rules' requirements -- including rule 5, rule 26, rule 37(a)(1), and one of the four requests under 37(a)(3) -- before moving to compel discovery.  For example, a request for production of documents, electronically stored information, or tangible items: (i) must "be signed by at least one attorney of record in the attorney's own name -- or by the party personally, if unrepresented -- and must state the signer's address, e-mail address, and telephone number," Fed. R. Civ. P. 26(g)(1); (ii) must be properly served on the party to whom it is directed as well as all other parties to the action, generally through the parties' attorney of record, see Fed. R. Civ. P. 5(a)(1), (b)(1); (iii) must describe with reasonable particularity each item or category of items to be inspected, see Fed. R. Civ. P. 34(b)(1)(A); and (iv) must specify a reasonable time, place, and manner for the inspection, see Fed. R. Civ. P. 34(b)(1)(B).[9]

---

[9]Some discovery disputes are so far teed up that it seems inefficient to deny a motion to compel where the discovery rules' requirements are not satisfied.  For example, if a plaintiff said that he or she would like to see the gun that supposedly accidentally shot the plaintiff, and the defendant refuses, there may not be much more to be gained through a more formal request and response.  If the dispute focuses solely on the merits of the request, it does not seem to make sense for the Court to decline to decide the squarely engaged issue merely because there was not a formal request.  The plaintiff will still ask for the gun; the defendant will still deny the request, but forcing the parties to go through the formalities of request, deny, and moving to compel production could take sixty days, plus whatever time it takes the court to decide the motion.  When the Court puts a civil case on a 120- to 180-day discovery timeline, a delay of 60 to 90

Discovery requests in the District of New Mexico must also satisfy the Local Rules of Civil Procedure.  "A party, when serving [a request for discovery], must provide space . . . for an answer, response or objection after [a] . . . request for production of documents or things." D.N.M.LR-Civ. 26.1(a)(1).  Moreover, "a party must sequentially number . . . requests for production of documents or things . . . ."  D.N.M.LR-Civ. 26.1(a)(2).  Parties do not need to file their discovery requests.  See D.N.M.LR-Civ. 26.1(a)(2).  After serving their discovery request, however, the party seeking discovery must file a certificate "indicating the date of service" with the Clerk.  D.N.M.LR-Civ. 26.1(a)(2).

In theory, a letter or even an electronic mail transmission from the requesting party's attorney to the party from whom the requesting party seeks information could satisfy these requirements.  That the Federal Rules do not require requests to be in writing further indicates that electronic mail transmissions may serve as the basis for a motion to compel.  The Federal Rules expressly dictate the form of parties' discovery disclosures.  For example, rule 26(a)(4) states: "Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served."  Fed. R. Civ. P. 26(a)(4).  Thus, when the Federal Rules want to dictate the form, they know how to do so, suggesting that they did not think it necessary or desirable to require discovery requests to be in writing.

The Court believes that informal discovery is often more efficient and less costly than formal discovery and should, therefore, be encouraged.  See, e.g., Walker v. THI of New Mexico at Hobbs Ctr., No. CIV 09-0060 JB/RLP, 2010 WL 1141353, at *1 n.1 (D.N.M. Mar. 12,

---

days on one request almost inevitably pushes out all deadlines, delays the resolution of the case, and costs more money with no measurable gain.  While the Court wants to incentivize the informal resolution of discovery disputes by encouraging parties to only turn to a motion to compel as a last resort, the Court recognizes that some disputes may be intractable from their inception.  In such cases, the parties should be able to file a motion to compel without a request that satisfies the relevant discovery rules.  The Federal Rules do not appear to provide for such a mechanism, however, and the Court will not create one.

2010)(Browning, J.)("The Court is comfortable with the more informal approach to resolving disputes, and recognizes that costs and time are saved when parties use informal methods, such as letters or telephonic conferences, rather than a motion to compel."). It does not, with foundational rules, want to do anything to undermine the largely self-regulating discovery in civil cases.  If opposing counsel refuses to respond to an informal discovery request, however, the Federal Rules of Civil Procedure require that a party seeking discovery follow up with a request that satisfies rules 5, 26, and 37(a)(3) before moving to compel a response.

   **B.   IF THE RACING COMMISSION WERE STILL A PARTY TO THE CASE, THE MOTION TO COMPEL WOULD BE PROCEDURALLY IMPROPER, BECAUSE NONE OF THE PLAINTIFFS' DISCOVERY REQUESTS SATISFY EITHER THE FEDERAL RULES OF CIVIL PROCEDURE OR THE LOCAL RULES.**

   Even if the Racing Commission were still a party to the case, the motion to compel would be procedurally improper, because the Plaintiffs' requests to test the blood and urine samples did not satisfy the Federal Rules of Civil Procedure or the Local Rules.  As the basis for the Motion to Compel, the Plaintiffs point to two requests that they made during the prior iteration of this case in the Western District of Texas: (i) an oral request during Dr. Hyde's deposition on June 18, 2009, see Reply at 2-3; (ii) a letter addressed to Dr. Albert Kind at Iowa State on which both the Defendants and the Racing Commission were copied, and in which the Plaintiffs asked Dr. Kind to test the samples, see Letter from Chad W. Dunn, Attorney for the Plaintiffs, to Albert Kind, Iowa State (Sept. 10, 2010), filed April 23, 2014 (Doc. 58-1)("Letter").  The Racing Commission contends that an April 7, 2014, electronic mail transmission -- in which the Plaintiffs also notified the Racing Commission that it intended to file the Motion to Compel -- was the first request that it received from the Plaintiffs regarding testing the samples. See Response at 4.  As neither the parties nor the Racing Commission has submitted the April 7,

2014, electronic mail transmission, the Court has not reviewed it and cannot consider whether it formed a proper basis for the Motion to Compel.

The Plaintiffs' other two discovery requests -- even when taken together -- do not provide a proper basis for the Motion to Compel.   A request to test blood and urine samples must: (i) "be signed by at least one attorney of record in the attorney's own name -- or by the party personally, if unrepresented -- and must state the signer's address, e-mail address, and telephone number," Fed. R. Civ. P. 26(g)(1); (ii) be properly served on the party to whom it is directed as well as all other parties to the action, generally through the parties' attorney of record, see Fed. R. Civ. P. 5(a)(1), (b)(1); (iii) describe with reasonable particularity each item or category of items to be tested, see Fed. R. Civ. P. 34(b)(1)(A); and (iv) specify a reasonable time, place, and manner for the test to be conducted, see Fed. R. Civ. P. 34(b)(1)(B).

The requests (i) describe with reasonable particularity each item to be tested; (ii) were signed by the Plaintiffs' attorney -- including his address, electronic mail address, and telephone number; (iii) imply a reasonable time -- as soon as possible; (iv) imply a place -- Iowa State, and (v) specify the in which the test should be conducted -- "in the same method and manner as was Stolis Winner."   Letter at 1.   There are, however, two deficiencies.   First, the Letter never requests the Racing Commission to allow the Plaintiffs to test the samples.   Although the Plaintiffs copied the Racing Commission and the Defendants on the Letter, it was addressed to Dr. Kind only and never mentioned the Racing Commission.   For a request to be valid, it must state a clear and unambiguous request to the organization, company, or individual from whom production is sought.   Otherwise, the party from whom discovery is sought has no notice that it has a duty to produce the information.   Second, discovery requests made in the context of another case cannot form the basis of a motion to compel.   Here, this discovery request was

made during the prior iteration of this case in the Western District of Texas.  It was made on September 10, 2010 -- almost a year and a half before the Plaintiffs filed the Complaint in the District of New Mexico on January 31, 2013.  <u>See</u> Letter at 1; Complaint at 1.  A request from a prior case cannot serve as the basis for a Motion to Compel discovery, because, as explained previously, once a party has been dismissed from a case, it expects that it is no longer subject to the same discovery obligations as when it was a party.

Moreover, the Plaintiffs have not provided a certification that they have "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  The evidence in the record indicates the Plaintiffs did the opposite.  In the context of this case, the Plaintiffs' only interaction with the Defendants and the Racing Commission about testing the samples was on April 7, 2014 -- at which time the Plaintiffs notified the Defendants and the Racing Commission that they would be filing a motion to compel in less than two weeks' time.  There is, therefore, no indication that the Plaintiffs satisfied their obligations under rule 37(a)(1) to in good faith confer or attempt to confer with either the Defendants or the Racing Commission.  <u>See</u> Fed. R. Civ. P. 37(a)(1).  There is also nothing in the record that indicates that the Plaintiffs complied with the local rules by filing with the Clerk "a certificate of service indicating the date of service" of the discovery request.  D.N.M.LR-Civ. 26.2.  The Court, accordingly, concludes that, even if the Racing Commission were still a party to the case, its requests did not satisfy the discovery rules' prerequisites for filing a motion to compel.

III.   **THE TEST RESULTS OF THE BLOOD AND URINE SAMPLES TAKEN FROM THE TWENTY-THREE HORSES THAT RAN IN RACES AT RUIDOSO DOWNS ON SEPTEMBER 1, 2008, ARE RELEVANT AND, THEREFORE, DISCOVERABLE.**

The test results of the blood and urine samples taken from twenty-three horses that ran in races at Ruidoso Downs on September 1, 2008, are relevant.  The Defendants argue that the Plaintiffs have not shown that their request would uncover relevant information.  See Defendants' Response at 9.  The Defendants contend that, given the number of variables at issue in determining whether contamination occurred, the Plaintiffs can "never meet their burden" of proving that the Defendants improperly influenced the race -- even with the test results. Defendants' Response at 9.  The Defendants point out that Stolis Winner's sample contained only twenty-eight nanograms per milliliter in plasma/serum of caffeine -- far below the threshold level of environmental contamination that the Racing Commission recognizes.  See Defendants' Response at 2 (citing 15.2.6.9(O) N.M.A.C. ("Although the following environmental contaminants or substances may be found in the horse, no sample or specimen shall exceed the following levels when tested: . . . caffeine - 100 nanograms per milliliter in plasma/serum.")(alterations in Response but not source)).   The Defendants state that, furthermore, they have "provided ample evidence supporting environmental contamination *accompanied by convincing expert testimony that the small amount of caffeine could not have affected the performance of Stolis Winner - a 1,000 pound horse*."  Defendants' Response at 2 (footnote omitted)(emphasis in original).  The Court disagrees.

"[T]he scope of discovery through subpoena is the same as that applicable to Rule 34 and other discovery rules."  Fed. R. Civ. P. 45 advisory committee's notes to the 1970 Amendment. See In re Subpoena to Rehberger, No. CIV 13-831 MLC, 2013 WL 2243081, *3 (D.N.J. 2013)(Bongiovanni, M.J.)("Discovery sought via subpoena issued pursuant to Rule 45 must fall

within the scope of discovery permissible under Rule 26(b).").  Rule 26(b) states that the proper

scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."

Fed. R. Civ. P. 26(b)(1).  Rule 26, which once stated that a party may obtain discovery on any

matter "relevant to the subject matter," was amended in 2000 to state that the material must be

"relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  "Relevant information

need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Moreover, under the 2000 amendment, "[f]or good cause, the court may order discovery

of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).

The advisory committee explained that the amendment was "designed to involve the court more

actively in regulating the breadth of sweeping or contentious discovery."  Fed. R. Civ. P.

26(b)(1) advisory committee's note to 2000 amendment (stating that the amendment was made

with the intent "that the parties and the court focus on the actual claims and defenses involved in

the action").  The advisory committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond
> material relevant to the parties' claims or defenses, the court would become
> involved to determine whether the discovery is relevant to the claims or defenses,
> and, if not, whether good cause exists for authorizing it so long as it is relevant to
> the subject matter of the action.  The good-cause standard warranting broader
> discovery is meant to be flexible.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

A district court is not, however, "required to permit plaintiff to engage in a 'fishing

expedition' in the hope of supporting his claim."  McGee v. Hayes, 43 F. App'x at 217.

"'Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties

to flesh out allegations for which they initially have at least a modicum of objective support.'"

Rivera v. DJO, LLC, 2012 WL 3860744, at *8 (quoting Tottenham v. Trans World Gaming

Corp., 2002 WL 1967023, at *2).  See Hardrick v. Legal Servs. Corp., 96 F.R.D. at 618 (noting

that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and

inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation

marks omitted).  "[B]road discovery is not without limits and the trial court is given wide

discretion in balancing the needs and rights of both plaintiff and defendant."  Gomez v. Martin

Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

        The test results of the blood and urine samples taken from twenty-three horses that ran

races at the Ruidoso Downs on September 1, 2008, are "relevant to the claim or defense of [a]

party."  Fed. R. Civ. P. 26(b)(1).  The Plaintiffs allege that the Defendants intentionally

interfered with their prospective economic advantage by intentionally giving Stolis Winner

caffeine.  See Complaint ¶ 130, at 23.  The Plaintiffs allege that the Defendants committed prima

facie tort by "improperly providing" Stolis Winner caffeine.  Complaint ¶ 141, at 25.  The

Defendants argue that the caffeine in Stolis Winner's blood sample resulted from environmental

contamination rather than misconduct on their part.  See Response at 9-10.  The Defendants

contend that the amount of caffeine in Stolis Winner's sample was below the threshold level of

environmental contamination as recognized by the Racing Commission.  See Defendants'

Response at 2 (citing 15.2.6.9(O) N.M.A.C. ("Although the following environmental

contaminants or substances may be found in the horse, no sample or specimen shall exceed the

following levels when tested: . . . caffeine - 100 nanograms per milliliter in

plasma/serum. . .")(alterations in Response but not source)).  In the Defendants' view, therefore,

it is irrelevant whether samples from other horses who ran races in Ruidoso Downs on

September 1, 2008, contain caffeine.  There are two problems with the Defendants' argument.

First, whether other horses' samples contain caffeine is perhaps the strongest evidence whether the Defendants' environmental contamination defense has any merit.  If any other horse's sample tests positive for caffeine, that would make it more likely that the caffeine in Stolis Winner's blood sample resulted from environmental contamination rather than from the Defendants' actions.  Conversely, if no other horse's sample tests negative for caffeine, that would make it less likely that the caffeine in Stolis Winner's blood sample resulted from environmental contamination.  The Court finds it difficult to conclude that any other piece of evidence -- aside from a confession from the Defendants that they gave Stolis Winner caffeine -- would be more relevant to the Defendants' defense.

Second, that the caffeine in Stolis Winner's sample is below the threshold for environmental contamination under the Racing Commission's rules does not make the amount of caffeine in the other horses' samples irrelevant.  The Plaintiffs' tort claims are not founded solely upon violations of the Racing Commission's rules.  For example, in support of their intentional interference with prospective economic advantage claim, the Plaintiffs do not allege that the Defendants violated the rules of racing, but rather allege that the Defendants' "actions of intentionally providing Stolis Winner with performance substances were designed to disrupt [the Plaintiffs' economic relationships]."  Complaint ¶ 130, at 23.  The Defendants could, therefore, have committed a tort even if they never violated the Racing Commission's rules.  Accordingly, that the caffeine in Stolis Winner's blood sample was below the threshold that the Racing Commission permits for environmental contamination does not make it irrelevant whether other horses' samples also contain caffeine.  Consequently, the blood and urine samples taken from twenty-three horses that ran races at the Ruidoso Downs on September 1, 2008, are relevant and, therefore, discoverable.

IV.     **THE PLAINTIFFS MAY SUBPOENA BOTH THE RACING COMMISSION AND IOWA STATE.**

The Plaintiffs may subpoena the Racing Commission to obtain its permission to test the blood and urine samples, because the Racing Commission has legal control over them.  The Plaintiffs may also subpoena Iowa State to produce the samples, because Iowa State currently has physical possession of them.

Rule 45 governs demands upon nonparties for the production of persons or documents. See Fed. R. Civ. P. 45.  Under the December 1, 2013, amendments to rule 45, the subpoena "must issue from the court where the action is pending," rather than a court in the district where the subpoenaing party seeks compliance.  Fed. R. Civ. P. 45(a)(2).  "A subpoena may be served at any place within the United States," but the subpoenaed party must only comply with that subpoena "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(b)(2), (c)(2).

The Plaintiffs may also properly serve a subpoena from the District of New Mexico on the Racing Commission to obtain the Racing Commission's permission to test the samples.  Rule 45 requires a non-party served with a subpoena to inspect a tangible item to allow that inspection of that item if it is in the non-party's "possession, custody or control."  Fed. R. Civ. P. 45(a). The samples that the Plaintiffs seek to test are neither in the Racing Commission's possession nor custody.  The only question before the Court, therefore, is whether they are within the Racing Commission's control.  The Court concludes that they are.

Neither legal ownership nor physical possession of the document, electronically stored information, or tangible thing is required for a non-party to "control" it under rule 45.  In re NTL, Inc. Secs. Litig., 244 F.R.D. 179, 195-97 (S.D.N.Y. 2007).  "Control is defined as the legal right to obtain documents upon demand."  United States v. Int'l Un. of Petroleum & Indus.

Workers, 870 F.2d 1450, 1452 (9th Cir. 1989).  See Walker v. THI of N.M. at Hobbs Ctr., 2010

WL 4929069, at *5 ("Control comprehends not only possession, but also the right, authority, or

ability to obtain the documents.")(citation omitted)(internal quotation marks omitted).  "The term

control in the context of discovery is to be broadly construed."  New York ex rel. Boardman v.

Nat'l R.R. Passenger Corp., 233 F.R.D. 259, 268 (N.D.N.Y. 2006).  The Honorable Lewis A.

Kaplan, United States District Judge for the Southern District of New York has noted:

> The phrase "possession, custody or control" has a venerable history in the federal rules of procedure.  It first appeared in 1938 in the original version of Civil Rule 34, which provided for discovery in civil cases of documents in the "possession, custody, or control" of any party.  As adopted in 1945, Criminal Rule 16 did not use the phrase, but it was incorporated by the 1966 amendments into the predecessor of current Rule 16(a)(1)(E), which permitted discovery from the government, upon motion, of documents "within the possession, custody or control of the government" upon a showing of materiality to the preparation of the defense.  The 1991 revision of Civil Rule 45, which governs subpoenas, also adopted the term, using it in Rule 45(a)(1)(C).
>
> There is no hint in the history of these rules that the meaning of the phrase differs depending upon which rule is in question.  To the contrary, the phrase in each case defines in identical language the extent of the obligation of a party subject to a duty to produce evidence to respond.  Common sense, not to mention settled principles of construction, suggests a uniform construction.  Hence, case law under all of the relevant rules is equally instructive.
>
> One noted commentator aptly summarized the scope of the obligation:
>
> "Legal ownership of the requested documents or things is not determinative, nor is actual possession necessary if the party has control of the items.  *Control* has been defined to include 'the legal right to obtain the documents requested upon demand.' The term 'control' is broadly construed."
>
> These principles have been applied in a wide variety of situations.  Parent corporations have been compelled to produce documents in the hands of subsidiaries, subsidiaries documents in the hands of their parent entities, corporations documents in the hands of employees, clients documents in the hands of attorneys, corporate officers and directors documents in the hands of their corporations, and patients documents in the hands of health care providers.  Indeed, the principles have been applied even where the legal relationship arguably was less compelling.  In In re NTL Securities Litigation, a corporate

> defendant was sanctioned for failing to produce documents that were in the hands of another company where the possessor was under a contractual obligation to provide the documents to the defendant.  And in <u>In re Auction Houses Antitrust Litigation</u>, a corporation was ordered under an analogous portion of Civil Rule 33 to answer interrogatories calling for information in the hands of its former chief executive officer where the former officer had contracted to provide the company with such information as it might request in exchange for substantial severance payments that had not all been made.

<u>United States v. Stein</u>, 488 F. Supp. 2d 350, 360-62 (S.D.N.Y. 2007)(footnotes omitted).

In the Oct. 25, 2010, Electronic Mail Transmission that Dr. Kind sent to the Plaintiffs in response to their Sept. 10, 2010, letter requesting Dr. Kind to test the samples, Dr. Kind stated: "These samples are the property of the NMRC, and I cannot proceed with any testing, or distribute these samples without their approval.  The request for further testing or disposition must come through the NMRC."  Oct. 25, 2010, Electronic Mail Transmission at 1.  As Judge Kaplan noted in <u>United States v. Stein</u>, courts have compelled corporations to produce documents in their subsidiaries' hands, clients to produce documents in their attorney's hands, and patients to produce documents in their healthcare providers' hands -- all because they had the legal right to obtain those documents upon demand.  <u>See</u> 488 F. Supp. 2d at 360-62.  Similar to those cases, the Racing Commission has the legal right to have those horses' samples tested upon demand.  The Racing Commission, therefore, has control over those samples, and the Plaintiffs may properly subpoena the Racing Commission for its permission to test the samples. The Plaintiffs must be sure, however, to follow Federal and Local Rules' requirements for doing so.

The Plaintiffs may also properly serve a subpoena on Iowa State from the District of New Mexico, because Iowa State has "possession" of the test samples.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Under the revised rule 45, the Court -- rather than the United States District Court for the Southern District of Iowa -- must issue the subpoena.  <u>See</u> Fed. R. Civ. P. 45(a)(2)

("A subpoena must issue from the court where the action is pending."). The Plaintiffs may only require Iowa State to produce the samples within 100 miles of its campus. See Fed. R. Civ. P. 45(c)(2) ("A subpoena may command . . . production of . . . tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ."). If Iowa State objects to the subpoena, the Plaintiffs would have to move the Southern District of Iowa to compel Iowa State to produce the test samples. See Fed. R. Civ. P. 45(d)(2)(B)(explaining that, after the subpoenaed party makes an objection, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."). Iowa State may also move to quash or modify the subpoena in the Southern District of Iowa. See Fed. R. Civ. P. 45(d)(3) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena . . . .").

The Southern District of Iowa may transfer any motions to quash, compel, or modify the subpoena to the Court if: (i) Iowa State consents; or (ii) the district court finds "exceptional circumstances." Fed. R. Civ. P. 45(f). The advisory committee's notes provide some guidance as to when exceptional circumstances may be found:

> The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45 advisory committee's note to the December 1, 2013, amendments.

The Court also notes that the Racing Commission may have standing to move to quash a subpoena served on Iowa State.  A non-party has standing to move to quash a subpoena where the subpoena infringes upon its legitimate interests.  See Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc., 297 F.R.D. 19, 20 (D.P.R. 2014)("The non-parties, claiming that the records sought include their confidential financial information, have standing to object to the subpoenas.").  Cf. Trujillo v. Bd. of Educ., No. CIV 03-1185 JB/LFG, 2007 WL 2296916, at *1 (D.N.M. June 26, 2007)(Browning, J.)("[A] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.")(internal quotation marks omitted)(citations omitted).  As the Federal Rules of Civil Procedure require the Racing Commission to file any motion to quash in the district where compliance is sought -- i.e., the Southern District of Iowa -- the Court will not comment on or predict how that court should rule on this issue.  See Fed. R. Civ. P. 45(d)(3)("On timely motion, the court for the district where compliance is required must quash or modify a subpoena . . . .").

**IT IS ORDERED** that the Plaintiffs' Motion to Compel Production of Lab Samples for Scientific Testing, filed April 23, 2014 (Doc. 58), is denied without prejudice to the Plaintiffs filing another motion to compel if the Racing Commission fails to comply with a properly served subpoena.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Robert H. Fritz, III
Fritz Law Firm
Houston, Texas

--and--

Chad W. Dunn
Brazil & Dunn
Houston, Texas

>   *Attorneys for the Plaintiffs*

Brian O'Toole
Brian O'Toole, P.C.
Austin, Texas

--and--

Billy R. Blackburn
Blackburn Law Office
Albuquerque, New Mexico

>   *Attorneys for Defendants Heath Taylor, Jerry Windham, and Pat Windham*

Gary K. King
  Attorney General of New Mexico
Sally Galanter
  Assistant Attorney General
Albuquerque, New Mexico

>   *Attorneys for Defendants Marty L. Cope, Arnold J. Rael, B. Ray Willis, Thomas Fowler,
>   Larry Delgado, and the New Mexico Racing Commission*