IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD SIMON, JANELLE SIMON,
ERIC CURTIS, and JOSE VEGA,

      Plaintiffs,[1]

vs.                                    No. CIV 12-0096 JB/WPL

HEATH TAYLOR, JERRY WINDHAM,
PAT WINDHAM, MARTY L. COPE,
ARNOLD J. RAEL, B. RAY WILLIS,
THOMAS FOWLER, LARRY DELGADO,
and THE NEW MEXICO RACING
COMMISSION,

      Defendants.

**MEMORANDUM OPINION**[2]

**THIS MATTER** comes before the Court on: (i) Defendant Taylor's Motion to Compel

Plaintiff Janelle Simon to Fully Respond to His First Set of Interrogatories and Requests for

Production, filed July 7, 2014 (Doc. 68)("MTC 1"); and (ii) Jerry Windham's Motion to Compel

Plaintiff Richard Simon to Fully Respond to His First Set of Interrogatories and Requests for

---

[1]On January 14, 2015, the Court entered an order dismissing without prejudice all of Eric Curtis' and Jose Vega's claims in the Plaintiffs' Original Complaint, filed January 31, 2012 (Doc. 1). See Order, filed January 14, 2015 (Doc. 99). Accordingly, Plaintiffs Janelle Simon and Richard Simon are the only remaining plaintiffs in this case. Because Vega and Curtis were still in the case when the motions to compel were filed, parts of the Procedural History in this Memorandum Opinion will use the term "Plaintiffs" to refer to the Simons, Vega, and Curtis collectively, with the understanding that Vega and Curtis are no longer plaintiffs in this case.

[2]On March 4, 2015, the Court entered: (i) an order denying in part and granting in part Defendant Taylor's Motion to Compel Plaintiff Janelle Simon to Fully Respond to His First Set of Interrogatories and Requests for Production, filed July 7, 2014 (Doc. 68), see Order, filed March 4, 2015 (Doc. 102)("Order 1"); and (ii) an order denying in part and granting in part Jerry Windham's Motion to Compel Plaintiff Richard Simon to Fully Respond to His First Set of Interrogatories and Requests for Production, filed July 7, 2014 (Doc. 69), see Order, filed March 4, 2015 (Doc. 103)("Order 2"). In those orders, the Court said that it "may . . . at a later date issue a memorandum opinion more fully detailing its rationale for this decision." Order 1 at 1; Order 2 at 1. This Memorandum Opinion is the promised opinion for those two motions.

Production, filed July 7, 2014 (Doc. 69)("MTC 2").  The Court held a hearing on November 18, 2014.  The primary issues are: (i) whether the Court will overrule Plaintiffs Janelle Simon's and Richard Simon's (collectively, the "Simons") general objections to the Interrogatories and Requests for Production; (ii) whether the Court will order the Simons to verify their supplemental interrogatory answers under oath; (iii) whether the Court will order J. Simon to amend her answers to Interrogatory Nos. 2 and 3, which seek information about entities and individuals who did not contract with J. Simon because Jet Black Patriot did not win the All American Futurity; (iv) whether the Court will order the Simons to identify which documents are responsive to Interrogatory Nos. 7 and 8, which seek information about Jet Black Patriot's stud/mating agreements; (v) whether the Court will order J. Simon to respond to Request for Production Nos. 2 and 3, which seek J. Simon's tax returns and financial records; (vi) whether the Court will order R. Simon to respond to Request for Production Nos. 8 through 10, which seek documents relating to the Simons' claim for attorney's fees; (vii) whether the Court will order J. Simon to respond to Interrogatory No. 14, which seeks all communications between the Simons and the Defendants; and (ix) whether the Court will order Defendants Heath Taylor, Jerry Windham, and Pat Windham (collectively, the "Defendants") to produce their racing-license histories or disciplinary histories at this time.

The Court will overrule the Simons' general objections to the Interrogatories and Requests for Production without prejudice to them raising those objections at a later point if new documents are uncovered.  The Court will order the Simons to verify their amended Interrogatory answers under oath, as rule 33(b)(3) requires.  The Court will not order J. Simon to amend her answers to Interrogatory Nos. 2 and 3, because she has asserted that she has no additional information to provide.  The Court will order the Simons to identify which documents

are responsive to Interrogatory Nos. 7 and 8, as rule 33(d) requires.  The Court will put provide a provision for a protective order to resolve the parties' remaining dispute over the protective order, and order J. Simon to respond to Requests for Production Nos. 2 and 3.  The Court will not order R. Simon to respond to Request for Production Nos. 8 through 10, and will dismiss the Simons' remaining claims for attorney's fees.  Finally, the Court will order J. Simon to respond to Interrogatory No. 14.  The Court will not order the Defendants to produce their racing license histories or disciplinary histories at this time.  The Simons' supplemental discovery responses are due ten business days after they receive the transcript from the court reporter, Jennifer Bean.  Accordingly, the Court will deny the MTC 1 and the MTC 2 in part and grant them in part.

## FACTUAL BACKGROUND

The Court takes the following facts from the Plaintiffs' Original Complaint, filed January 31, 2012 (Doc. 1)("Complaint").  This dispute arises out of a quarter-horse[3] race -- the All American Futurity -- which was held in Ruidoso Downs, New Mexico, on September 1, 2008.  See Complaint ¶ 1, at 2.  The All American Futurity is widely recognized in the quarter-horse-racing world as the major quarter-horse racing event of the year.  See Complaint ¶ 3, at 3.  The winning horse in the event receives a purse of approximately one-million dollars.  See Complaint ¶ 3, at 3.  Because of the significance of the All American Futurity within the racing community, the first-place horses are valuable to the horse owner, trainer, and jockey for marketing, stud fees, and other benefits.  See Complaint ¶¶ 3-4, at 3; id. ¶¶ 93, 94, at 17.

---

[3]The American quarter horse "excels at sprinting short distances.  Its name came from its ability to outdistance other horse breeds in races of a quarter mile or less; some individuals have been clocked at speeds up to 55 mph (88.5 km/h)."  American Quarter Horse, Wikipedia.org, http://en.wikipedia.org/wiki/American_Quarter_Horse (last visited Apr. 16, 2015).

Stolis Winner -- a horse that Defendants Jerry and Pat Windham ("the Windhams") owned, and Defendant Heath Taylor trained -- barely crossed the finish line ahead of Jet Black Patriot -- a horse that the Simons owned, Defendant Eric Curtis trained, and Defendant Jose Vega rode.  See Complaint ¶¶ 2, 9-11, at 2-3.  A licensed veterinarian collected blood and urine samples from each of the horses that competed in every race at the Ruidoso Downs on September 1, 2008.  See Complaint ¶¶ 13-14, at 4.  The samples taken from Stolis Winner tested positive for caffeine, a substance that the New Mexico Racing Commission rules prohibit.  See Complaint ¶¶ 16, 17, 21, at 4-5.

The Racing Commission held a hearing of the stewards[4] on January 8, 2009, to consider disciplinary action against Taylor and the Windhams.  See Complaint ¶¶ 22, 24, at 5.  The stewards disqualified Stolis Winner, declared Jet Black Patriot the winner, and issued a variety of sanctions against Taylor.  See Complaint ¶ 24, at 5.  Taylor appealed the decision and requested a de novo review of the evidence.  See Complaint ¶ 26, at 6.  The Racing Commission appointed a three-judge administrative panel to hear Taylor's appeal.  See Complaint ¶ 26, at 6.

The Plaintiffs tried to participate in the appeal by filing a motion to appear at the administrative panel's hearing, but the panel recommended that the Racing Commission deny the motion.  See Complaint ¶¶ 27-28, at 6.  Although the Plaintiffs demonstrated that they "ha[d] an effected [sic] interest sufficient to create standing in the case," which is the test set forth in 15.2.1.9(C)(1)(d) N.M.A.C. for an interested party to intervene, they were prohibited from

---

[4]Section 60-1A-2 of the Horse Racing Act, N.M. Stat. Ann. §§ 60-1A-1 through 60-1A-30, defines "steward" as "an employee of the commission who supervises horse races and oversees a race meet while in progress, including holding hearings regarding licensees and enforcing the rules of the commission and the horse racetrack."  N.M. Stat. Ann. § 60-1A-2GG. One of the stewards' duties is conducting hearings on complaints brought on the stewards' motion, or on receipt of a complaint from an official or third party.  See 15.2.1.9(B)(2)(a) N.M.A.C.

participating in the review process.  Complaint ¶ 29, at 6.  In an effort to obtain a final ruling regarding the administrative panel's recommendation to exclude them, the Plaintiffs filed a petition for writ of certiorari in the First Judicial District Court, State of New Mexico.  See Complaint ¶ 33, at 7.

On November 3, 2009, the First Judicial District Court held a hearing on the Plaintiffs' petition for writ of certiorari.  See Complaint ¶ 41, at 8.  The state court held that it lacked jurisdiction to hear the Plaintiffs' petition, because the Racing Commission had not entered a final order whether to adopt the administrative panel's recommendation to exclude the Plaintiffs from the review process.  See Complaint ¶ 41, at 8.  On November 19, 2009, the Racing Commission conducted a hearing to determine whether to permit the Plaintiffs to participate in the administrative review hearing and adopted the administrative panel's recommendation to exclude them.  See Complaint ¶ 43, at 9.

Thereafter, the Plaintiffs filed a second petition for writ of certiorari in the First Judicial District Court and requested an emergency hearing.  See Complaint ¶ 44, at 9-10.  The state court again denied the Plaintiffs' request.  See Complaint ¶ 44, at 9-10.  The state court "stated during argument that it relied upon state case law that found administrative actions of this nature were quasi-criminal actions and private litigants were not permitted to participate."  Complaint ¶ 45, at 9-10.

On May 11, 2010, the administrative panel conducted an evidentiary hearing to review the stewards' decision.  See Complaint ¶ 45, at 10.  The Plaintiffs' counsel appeared at the hearing, but the panel would not allow them to participate.  See Complaint ¶ 46, at 10.  The administrative panel found in Taylor's favor and overturned the stewards' decision.  See

Complaint ¶ 46, at 10.   The Racing Commission then adopted the panel's decision.   See Complaint ¶ 47, at 10.

The Plaintiffs filed a complaint in the United States District Court for the Western District of Texas on November 11, 2008.  See Plaintiff's Original Complaint, filed Nov. 1, 2008 (Doc. 1), Simon v. Taylor, No. CIV 08-0827 LY (W.D. Tex.)("Texas Complaint"); Complaint ¶ 82, at 15-16.  On November 4, 2010, the Honorable Lee Yeakel, United States District Judge for the Western District of Texas, entered an order dismissing the Texas Complaint for failure to state a claim upon which relief could be granted.  See Order, filed Nov. 5, 2010 (Doc. 1-1), Simon v. Taylor, No. CIV 08-0827 LY (W.D. Tex.)("Texas Order").  The Texas Order was based, in part, on the Racing Commission's decision that no violation of racing rules had occurred.  See Texas Order at 5.  The Plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit.  See Notice of Appeal, filed December 20, 2010 (Doc. 77), Simon v. Taylor, No. CIV 08-0827 LY (W.D. Tex.).  On December 22, 2011, the Fifth Circuit vacated the district court opinion and ordered the case dismissed without prejudice for lack of diversity jurisdiction. See Simon v. Taylor, 455 F. App'x 444, 445-46 (5th Cir. 2011); Complaint, ¶ 88, at 16.

## PROCEDURAL BACKGROUND

On January 31, 2012, the Plaintiffs filed the Complaint in the District of New Mexico. See Complaint at 1.   The Plaintiffs allege claims against Taylor and the Windhams for: (i) intentional interference with prospective economic advantage, see Complaint ¶¶ 127-32, at 23; (ii) fraud, see Complaint ¶¶ 133-39, at 24; (iii) prima facie tort, see Complaint ¶¶ 140-44, at 24-25; (iv) "foul play in sport or a game of chance," Complaint ¶¶ 146-48, at 25; (v) negligence, see Complaint ¶¶ 149-51, at 26; and (vi) breach of contract, see Complaint ¶ 152, at 26.  The Plaintiffs also allege that Marty Cope, Arnold Rael, B. Ray Willis, Thomas Fowler, Larry

Delgado, and the Racing Commission violated the Plaintiffs' rights to procedural and substantive due process under the Fourteenth Amendment to the Constitution of the United States of America.  See Complaint ¶¶ 153-73, at 26-29.

The Plaintiffs ask the Court to: (i) declare that Jet Black Patriot won the All American Futurity, see Complaint ¶ 116, at 21; and (ii) declare that Jet Black Patriot is "due all the benefits and emoluments" of the first place winner of the All American Futurity, Complaint ¶ 117, at 21. The Plaintiffs also request the following injunctive relief: (i) an order compelling the Racing Commission to release for testing all of the samples in its custody or control taken from horses on the day of the All American Futurity, see Complaint ¶¶ 120-23, at 22; (ii) if the Court determines that the Plaintiffs "are not entitled to adjudication in Court," the Plaintiffs seek adjudication of the racing claims in a fair hearing that complies with federal law and permits the Plaintiffs to participate, Complaint ¶¶ 123, at 22; (iii) regardless whether the Court issues an Order granting the relief in (ii), the Plaintiffs ask the Court to adjudicate their claims with respect to stud fees, marketing fees, and other benefits that the Plaintiffs would have received had the Racing Commission declared Jet Black Patriot the winner, because the Racing Commission could not adjudicate their private claims,  see Complaint ¶¶ 124-25 at 21-23. If the Court awards the Plaintiffs relief from the Racing Commission, the Plaintiffs also ask for attorney's fees.  See Complaint ¶ 126, at 23.

### 1.     The Plaintiffs' Initial Disclosures and the Defendants' Initial Discovery Requests.

On October 31, 2013, the Plaintiffs served their Initial Disclosures to the Defendants, indicating that they "seek recovery of the race purse and the other breeding fees and damages claimed in the Complaint."  Plaintiffs Initial Disclosures, filed July 7, 2014 (Doc. 68-1).  On February 28, 2014, the Plaintiffs served their Designation of Experts, which outlined four experts

who would testify to the Plaintiffs' damages and lost income.  See Plaintiffs' Designation of Experts, filed July 7, 2014 (Doc. 68-2).  On April 4, 2014, Taylor served his First Set of Interrogatories and First Requests for Production to J. Simon.  See Heath Taylor's First Set of Interrogatories to Plaintiff Janelle Simon, filed July 7, 2014 (Doc. 68-3)("J. Simon Interrogatories"); Heath Taylor's First Requests for Production to Plaintiff Janelle Simon, filed July 7, 2014 (Doc. 68-4)("J. Simon RFP").  That same day, J. Windham served his First Set of Interrogatories and First Requests for Production to R. Simon.  See Jerry Windham's First Set of Interrogatories to Plaintiff Richard Simon, filed July 7, 2014 (Doc. 69-3)("R. Simon Interrogatories"); Jerry Windham's First Requests for Production to Plaintiff Richard Simon, filed July 7, 2014 (Doc. 69-4)("R. Simon RFP").

### 2.        The Simons' Responses to the Defendants' Discovery Requests.

The Simons requested additional time to respond to the discovery requests, and J. Windham and Taylor agreed to extend the response deadline to June 11, 2014.  See MTC 1 at 4; MTC 2 at 4.  On June 11, 2014, the Simons responded to Taylor's and J. Windham's Interrogatories and Requests for Production.  See Plaintiff Janelle Simon's Responses to Defendant Heath Taylor's First Set of Interrogatories, filed July 7, 2014 (Doc. 68-5)("Answers to J. Simon Interrogatories"); Plaintiff Janelle Simon's Responses to Defendant Heath Taylor's First Requests for Production, filed July 7, 2014 (Doc. 68-6)("Responses to J. Simon RFP"); Plaintiff Richard Simon's Responses to Defendant Jerry Windham's First Set of Interrogatories, filed July 7, 2014 (Doc. 69-5)("Answers to R. Simon Interrogatories"); Plaintiff Richard Simon's Responses to Defendant Jerry Windham's First Requests for Production, filed July 7, 2014 (Doc. 69-6)("Responses to R. Simon RFP").  The Simons' response to the Interrogatories and Requests

for Production contained nearly identical "general objections" -- the only difference being that

the objections to the requests for production stated "Production" rather than "Interrogatories":

> The following General Objections apply to each of the Defendant's Interrogatories.  Although Plaintiff may respond specifically to certain Requests for Interrogatories, their responses are made subject to each and every General Objection and no response shall be considered as, or is, a waiver of any General Objection.

> 1.   Plaintiff objects to Defendant's Interrogatories to the extent they seek information or the disclosure of information which is protected by the attorney-client privilege, work product doctrine or any other statutory or common law privilege.  Plaintiff reserves the right to withhold such information from production.  Any inadvertent disclosure of such privileged or otherwise protected information shall not be deemed a waiver of any privilege or work product immunity.

> 2.   Plaintiff objects to Defendant's First Request for Interrogatories to the extent Plaintiff attempts or purports to impose greater or different obligations in discovery than are required by the Federal Rules of Civil Procedure or the Local Rules of this Court.

> 3.   Plaintiff objects to Defendant's Request for Interrogatories to the extent Plaintiff seeks information that calls for a legal conclusion.

> 4.   Plaintiff objects to Defendant's Request for Interrogatories on the grounds that the separate requests are vague, ambiguous, and make responding impossible without speculation because Plaintiff has failed to define the terms contained in the separate requests.

> 5.   Plaintiff objects to Defendant's Request for Interrogatories to the extent that they seek information not within Plaintiff's possession, custody or control.

> 6.   Plaintiff objects to Defendant's Request for Interrogatories to the extent that they are premature at this stage of discovery.

> 7.   Plaintiff's consent herein to respond to Defendant's Interrogatories shall not be construed as an admission by

Plaintiff that such information, in fact, exists or that such information, if it exists, is in Plaintiff's possession, custody or control.

8.      Plaintiff responds solely for the purpose of and in relation to this action. Plaintiff's Responses to Defendant's Interrogatories are made subject to any and all objections to competence, relevance, materiality, and admissibility that would require the exclusion at the time of trial of any statement and/or document produced in response to the Request for Interrogatories. Plaintiff reserves the right to interpose such objections at the time of trial, if any.

9.      Plaintiff reserves the right to amend, revise or supplement its responses at any time prior to trial or otherwise permitted by applicable law or under the Court's Scheduling Order.

10.      Each of the above stated General Objections is incorporated by reference into each of Plaintiff's specific responses below.

Answers to J. Simon Interrogatories at 3; Answers to R. Simon Interrogatories at 3.   See

Responses to J. Simon RFP at 3; Responses to R. Simon RFP at 3.

J. Simon's answers to the Interrogatories included, among other things:

**INTERROGATORY NO. 2:** Identify any persons that refused to enter into an economic relationship, or terminated an existing economic relationship, with you which you contend was a result of Defendants' actions as set forth in Count 1 of your Original Complaint filed in this matter (Doc. 1).

**ANSWER:** I am aware of no person who refused to enter into an economic relationship. I'm sure there would have been many more if this hadn't have happened.

**INTERROGATORY NO. 3:** For all persons identified in your Answer to Interrogatory No. 2, identify the "economic relationship" affected, including: a) the nature of the relationship; b) any specific future economic benefits you expected from the relationship; and c) all principal facts you rely upon to support the contention that said relationship was disrupted as a result of the actions of Defendants.

- 10 -

**ANSWER:** See answer to Interrogatory Number 2.

**INTERROGATORY  NO. 4:** Identify any persons with knowledge of the principal facts upon which you rely to contend that Defendants knowingly and/or intentionally improperly trained Stolis Winner or provided Stolis Winner with performance enhancing substances prior to the 2008 All American Futurity as alleged in your Original Complaint filed in this matter (Doc. 1).

**ANSWER:** Objection in that this is inappropriate inquiry in an Interrogatory.  See Rule 26 Disclosures for identity of persons with knowledge of relevant facts.

**INTERROGATORY  NO. 5:** Identify any licenses held by you between 2005 and current which relate to the owning, training and/or riding of race horses, including: a) the nature of the license; b) the jurisdiction in which the license was/is held; c) the entity providing the licensure; d) the current status of the license; and e) any disciplinary actions threatened or taken against the license.

**ANSWER:** I have [a] license with Louisiana now and in the past had licenses in Texas and New Mexico.  There were never any disciplinary actions.

. . . .

**INTERROGATORY  NO. 7:** Identify any and all parties with which you entered into a stud/mating agreement relating to the horse Jet Black Patriot.

**ANSWER:** See attachment document produced in response to Requests for Production.

**INTERROGATORY  NO. 8:** Please state the terms of any and all stud/mating agreements entered into by you in relation to the horse Jet Black Patriot, including: a) the amount of compensation promised/paid in stud fees; b) the date of the agreement; c) the identity of any mare associated with the agreement; and d) the identity of any offspring resulting therefrom.

**ANSWER:** See attachment document produced in response to Requests for Production.

. . . .

**INTERROGATORY  NO. 14:** Identify any and all communications between you and Defendants concerning this lawsuit or the subject matter thereof, including: a) the nature of the communication; b) the date of the

communication; c) the persons communicating; and d) the contents of the communication.

        **ANSWER:** This request is overly broad and unduly burdensome. There has been hundreds, if not thousands of communications between Plaintiffs [and] Defendants, especially through counsel. Plaintiff objects to being asked to identify every one of these communications.

Answers to J. Simon Interrogatories at 1-6.   J. Simon's responses to the Requests for

Production included, among other things:

        **REQUEST FOR PRODUCTION NO. 2:** Produce copies of your tax returns for the years 2007 through today.

        **RESPONSE:** Plaintiff objects to producing [her] highly confidential and protected tax returns. This request is unduly burdensome and harassing. Subject to same, Plaintiff is willing to exchange tax returns as long as Defendants do likewise and a protective order is in place protecting the disclosure of such documents.

        **REQUEST FOR PRODUCTION NO. 3:** Produce copies of any and all bank statements for accounts owned by you and/or any business owned, in whole or in part, by you and/or your husband, and which are used by you in the conduct of business associated with the owning, racing, training, breeding or otherwise maintaining of horses for the years 2007 through today.

        **RESPONSE:** Plaintiff objects to producing their highly confidential and protected bank statements. This request is unduly burdensome and harassing. The information that Defendants are reasonably entitled to on this basis are being provided in the records produced.

Responses to J. Simon RFP at 1-2.

        R. Simon's answers to the Interrogatories included, among other things:

        **INTERROGATORY NO. 4:** Identify any persons with knowledge of the principal facts upon which you rely to contend that Defendants knowingly and/or intentionally improperly trained Stolis Winner or provided Stolis Winner with performance enhancing substances prior to the 2008 All American Futurity as alleged in your Original Complaint filed in this matter (Doc. 1).

        **ANSWER:** Objection in that this is inappropriate inquiry in an Interrogatory. See Rule 26 Disclosures for identity of persons with knowledge of relevant facts.

**INTERROGATORY NO. 5:** Identify any licenses held by you between 2005 and today which relate to the owning, training and/or riding of race horses, including: a) the nature of the license; b) the jurisdiction in which the license was/is held; c) the entity providing the licensure; d) the current status of the license; and e) any disciplinary actions threatened or taken against the license.

**ANSWER:** I have [a] license with Louisiana now and in the past had licenses in Texas and New Mexico.

. . . .

**INTERROGATORY NO. 7:** Identify any and all parties with which you entered into a stud/mating agreement relating to the stud services of the horse Jet Black Patriot.

**ANSWER:** See attachment document produced in response to Requests for Production.

. . . .

**INTERROGATORY NO. 8:** Please state the terms of any and all stud/mating agreements entered into by you in relation to the horse Jet Black Patriot, including: a) the amount of compensation promised/paid in stud fees; b) the date of the agreement; c) the identity of any mare associated with the agreement; and d) the identity of any offspring resulting therefrom.

**ANSWER:** See attachment document produced in response to Requests for Production.

Answers to R. Simon Interrogatories at 4-5.

R. Simon's responses to the Requests for Production included, among other things:

**REQUEST FOR PRODUCTION NO. 3:** Produce any and all documents, correspondence, electronic mail, notes, letters or other written or electronic communications between you and any person concerning the subject matter of this lawsuit.

**RESPONSE:** Objection in that the request invades the Attorney Client Privilege and the Attorney Work Product Privilege. Subject to same, none in my possession.

. . . .

**REQUEST FOR PRODUCTION NO. 8:** All documents, records, or other tangible items, including electronic information, that you contend support any attorney's fees which you claim in your Original Complaint in this matter (Doc. 1).

  **RESPONSE:** Objection in that the request invades the Attorney Client Privilege and the Attorney Work Product Privilege and are not likely to lead to admissible evidence in any event or are otherwise irrelevant.

. . . .

  **REQUEST FOR PRODUCTION NO. 10:** A copy of all invoices/bills Chad Dunn, Robert Fritz, and/or any law firm associated with said attorneys retained by you or in your behalf with respect to any matters pertaining to this action, including, but not limited to, your efforts to intervene in any administrative actions against Defendant Heath Taylor, any writs submitted for consideration in the courts of the State of New Mexico, any prior lawsuits brought against Defendants, and this action.

  **RESPONSE:** Objection in that the request invades the Attorney Client Privilege and the Attorney Work Product Privilege and are not likely to lead to admissible evidence in any event or are otherwise irrelevant.

Responses to R. Simon RFP at 3-4.

On July 3, 2014, the Defendants sent separate letters to the Simons, responding to their objections and asking them to amend their answers to the Interrogatories and Requests for Production. See Letter from Letter from Billy R. Blackburn, Counsel for the Defendants, to Chad W. Dunn, Counsel for the Plaintiffs (dated July 3, 2014), filed July 7, 2014 (68-7); Letter from Billy R. Blackburn, Counsel for the Defendants, to Chad W. Dunn, Counsel for the Plaintiffs (dated July 3, 2014), filed July 7, 2014 (69-7).

  **3.**  **The MTC 1.**

After the Simons failed to respond to the letters, Taylor filed the MTC 1 on July 7, 2014. See MTC 1 at 1. Taylor begins the MTC 1 by raising three general issues regarding J. Simon's answers to the Interrogatories and Requests for Production. See MTC 1 at 6-7. First, Taylor contends that several of J. Simon's general objections indicate that they apply to Taylor's

- 14 -

discovery requests "to the extent that [they are objectionable pursuant to _____ ]."  MTC 1 at 6 (alteration in MTC 1, but not in source)(internal quotation marks omitted)(citation omitted). Taylor asserts that these general objections are invalid, because they are based on "'mere hypothetical or contingent possibilities,'" and J. Simon makes no effort to "'show the application of any such theoretical objection to any request for discovery.'"  MTC 1 at 6 (quoting Cardenas v. Dorel Juvenile Grp., Inc., 232 F.R.D. 377, 380 (D. Kan. 2005)).   Taylor adds that the objections also fail, because J. Simon has not shown how each objection specifically applies to individual discovery requests.  See MTC 1 at 6-7 (citing Fed. R. Civ. P. 33(b)(4) (requiring grounds for objection "be stated with specificity"); Fed. R. Civ. P. 34(b)(2)(C) (requiring specificity as to objections)).  Taylor argues that, consequently, J. Simon's general objections are invalid.  See MTC 1 at 7.

Second, Taylor points out that J. Simon failed to verify her Interrogatory answers under oath as rules 33 and 34 of the Federal Rules of Civil Procedure require.  See MTC 1 at 7.  Taylor argues that, accordingly, J. Simon's answers are "'invalid on procedural grounds, regardless of the substance of the answers given.'"  MTC 1 at 7 (quoting Black Hills Molding, Inc. v. Brandom Holdings, LLC, 295 F.R.D. 403, 412 (D.S.D. 2013)).  Consequently, Taylor asks the Court to compel J. Simon to submit her Interrogatory answers under oath.  See MTC 1 at 7.

Third, Taylor says that J. Simon failed to identify which documents were responsive to which discovery requests.  See MTC 1 at 7.  Taylor explains that J. Simon did not separate her document production in any fashion, and did not identify which plaintiff produced them or to which request they applied.  See MTC 1 at 7.  Taylor asserts that "[t]his is wholly insufficient and violates the spirit" of rule 34 of the Federal Rules of Civil Procedure.  MTC 1 at 7.  Taylor

thus asks the Court to compel J. Simon to specify which documents are responsive to which discovery requests.  See MTC 1 at 7.

Taylor next addresses J. Simon's answers to Interrogatory Nos. 1 and 2.  See MTC 1 at 7-9.  Taylor argues that, while J. Simon does not object to those Interrogatories, she failed to fully answer them.  See MTC 1 at 8.  Taylor says that J. Simon does not explain which individuals "terminated or otherwise altered an existing economic relationship with you as a result of the order of finish of the 2008 All American Futurity," which both Interrogatory Nos. 1 and 2 referenced.  MTC 1 at 8 (citation omitted)(internal quotation marks omitted).  Taylor argues that, consequently, the Court should compel J. Simon to fully answer those Interrogatories.  See MTC 1 at 8.

Taylor argues that J. Simon's objection to Interrogatory No. 4 -- that it is an "inappropriate inquiry in an Interrogatory" -- lacks sufficient specificity under rule 33.  MTC 1 at 8 (citation omitted)(internal quotation marks omitted).  Taylor states that "[p]ersons with knowledge that Defendant Taylor intentionally improperly trained Stolis Winner or provided Stolis Winner with performance enhancing substances will either have admissible testimony themselves or have a knowledge base that likely will include admissible evidence."  MTC 1 at 9.  Taylor asserts that, accordingly, "[t]here is simply no valid objection to this Interrogatory."  MTC 1 at 9 (citing Bregman v. District of Columbia, 182 F.R.D. 352, 255-56 (D.D.C. 1998)("[T]hat a party may have to list what witnesses she will call and what exhibits she will introduce in her pretrial statement does not operate retroactively to make those matters unfit subjects of discovery.")).  Taylor argues that the Court should, therefore, compel J. Simon to respond to Interrogatory No. 4.  See MTC 1 at 9.

Taylor contends that, while J. Simon did not object to Interrogatory No. 5, she also did not fully respond to its request for "the nature of the license" that she holds -- <u>e.g.</u>, owner, breeder, etc.  MTC 1 at 9 (internal quotation marks omitted).  Taylor asserts that, because J. Simon did not object to Interrogatory No. 5, the Court should compel her to fully respond to it. <u>See</u> MTC 1 at 9.  Tackling J. Simon's answers Interrogatory Nos. 7 and 8 together, Taylor asserts that, although J. Simon responded to those Interrogatories by stating, "[s]ee attachment document produced in response to Requests for Production," she failed to identify which document was responsive to which request.  MTC 1 at 10.  Taylor says that he is not required to "sift through documents hoping to find the responsive information."  MTC 1 at 10.  Taylor argues that the Court should compel J. Simon to amend her Interrogatory answers to specify which documents respond to each Interrogatory.  <u>See</u> MTC 1 at 10.

Taylor asserts that, to address J. Simon's objection that Interrogatory No. 14 is overly broad and unduly burdensome, he will limit that Interrogatory "to only those communications directly between the parties which did not occur through counsel."  MTC 1 at 11 (internal quotation marks omitted)(citation omitted).  Taylor contends that the direct communications between the parties do not number in the hundreds or thousands, particularly communications related to this lawsuit.  <u>See</u> MTC 1 at 11.  Taylor argues that, accordingly, J. Simon's objection to Interrogatory No. 14 is meritless and the Court should compel her to identify those communications.  <u>See</u> MTC 1 at 11.

Taylor next addresses J. Simon's objection to Request for Production No. 2.  <u>See</u> MTC at 12.  Taylor contends that, while J. Simon objects to that request as "unduly burdensome and harassing," she does not explain why, "particularly since the Internal Revenue Service requires records to be kept for that period of time."  MTC 1 at 12.  Taylor asserts that, moreover, J. Simon

chose to file this lawsuit, and chose to assert a claim for lost income and lost stud business.  See MTC 1 at 12.  Taylor says that, accordingly, J. Simon placed her income at issue and made her tax returns discoverable as a result.  See MTC 1 at 12 (citing Madrid v. Don Kelly Constr., Inc., No. CIV 12-0451 JB/GBW, 2013 WL 1897826 (D.N.M. Apr. 24, 2013)(Browning, J.); Dominion Liquid Tech., LLC v. GT Beverage Co., No. CIV 11-0444, 2013 WL 2181710 (S.D. Ohio May 20, 2013); Channel Control Merchants, LLC v. Davis, No. CIV 11-0021 KS/MTP, 2012 WL 1365743 (S.D. Miss. Apr. 19, 2012); Fin. Bus. Equip. Solutions, Inc. v. Quality Data Sys., No. CIV 08-60769, 2008 WL 4663277 (S.D. Fla. Oct. 21, 2008)).  Taylor urges that, because J. Simon's tax returns are discoverable, the Court should compel her to produce them. See MTC 1 at 13.

Taylor states that J. Simon objects to Request for Production No. 3 -- which seeks J. Simon's financial records -- for the same reason that she objects to Taylor's request for her tax returns.  See MTC 1 at 13.  Taylor argues that J. Simon's financial records are properly discoverable for the same reasons as her tax returns are.  See MTC 1 at 13.  Taylor contends that J. Simon "should not be permitted to make broad, sweeping damage claims for millions of dollars and then preclude Defendants from examining any of the veracity of the same."  MTC 1 at 13.  Taylor adds that J. Simon has made no effort to clarify which records were responsive to which Requests for Production.  See MTC 1 at 13.  Taylor asserts that the Court should therefore order J. Simon to fully respond to Request for Production No. 3.  See MTC 1 at 13.

### 4.    The MTC 2.

J. Windham filed the MTC 2 on July 7, 2014.  See MTC 2 at 1.  In the MTC 2, J. Windham raises the same general issues regarding R. Simon's general objections and discovery responses as Taylor raised in the MTC 1 -- namely that: (i) R. Simon's general objections fail,

- 18 -

because they fail to identify a specific request; (ii) R. Simon's Interrogatory answers are invalid, because he did not submit them under oath; and (iii) R. Simon failed to specify which documents are responsive to which Requests for Production.  See MTC 2 at 5-7.

J. Windham argues that R. Simon's objection to Interrogatory No. 4 -- that it is an "inappropriate inquiry in an Interrogatory" -- lacks sufficient specificity under rule 33.  MTC 2 at 7 (citation omitted)(internal quotation marks omitted).  J. Windham states that "[p]ersons with knowledge that Defendant Taylor intentionally improperly trained Stolis Winner or provided Stolis Winner with performance enhancing substances will either have admissible testimony themselves or have a knowledge base that likely will include admissible evidence."  MTC 2 at 7. J. Windham asserts that, accordingly, "[t]here is simply no valid objection to this Interrogatory." MTC 2 at 7-8 (citing Bregman v. District of Columbia, 182 F.R.D. 352, 255-56 (D.D.C. 1998)("[T]hat a party may have to list what witnesses she will call and what exhibits she will introduce in her pretrial statement does not operate retroactively to make those matters unfit subjects of discovery.")).  J. Windham argues that the Court should, therefore, compel R. Simon to respond to Interrogatory No. 4.  See MTC 2 at 8.

J. Windham contends that, while R. Simon did not object to Interrogatory No. 5, he did not fully respond to its request for "the nature of the license" that he holds -- e.g., owner, breeder, etc.  MTC 2 at 9 (internal quotation marks omitted).  J. Windham asserts that, because R. Simon did not object to Interrogatory No. 5, the Court should compel him to fully answer it. See MTC 2 at 9.  Tackling R. Simon's responses to Interrogatory Nos. 7 and 8 together, J. Windham asserts that, although R. Simon responded to those interrogatories by stating "[s]ee attachment document produced in response to Requests for Production," he failed to identify which document was responsive to which interrogatory.  MTC 2 at 10.  J. Windham says that he

is not required to "sift through documents hoping to find the responsive information."  MTC 2 at

10.  J. Windham argues that the Court should compel R. Simon to amend his answers to specify

which documents respond to each interrogatory.  See MTC 2 at 10.

Turning to R. Simon's objections to Request for Production No. 3, J. Windham asserts

that, while R. Simon states that the attorney-client privilege and the attorney-work-product

privilege protect that information, he "made no attempt to show any privilege applies."  MTC 2

at 9.  According to J. Windham, R. Simon's objection "is thus insufficient and should be

overruled."  MTC 2 at 9 (citing Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)("A party

seeking to assert the privilege must make a clear showing that it applies.")).  J. Windham adds

that R. Simon failed to provide a privilege log, as rule 26(b)(5) of the Federal Rules of Civil

Procedure requires.  See MTC 2 at 10.  J. Windham argues that a privilege log is necessary for

the Defendants and the Court to analyze whether any of the allegedly privileged documents are

discoverable in light of the Plaintiffs' claim for attorney's fees and damages.  See MTC 2 at 10.

J. Windham asserts that R. Simon's failure to provide a privilege log waived any privilege that

he may have had.  See MTC 2 at 10 (citing Anaya v. CBS Broadcasting, Inc., 251 F.R.D. 645,

651 (D.N.M. 2007)(Browning, J.)).  J. Windham contends that, accordingly, the Court should

compel R. Simon to produce all responsive documents to Request for Production No. 3, or, at a

minimum, produce a privilege log.  See MTC 2 at 10.

J. Windham next takes up R. Simon's objections to Request for Production Nos. 8

through 10, which seek documents related to R. Simon's claim for attorney's fees.  See MTC 2 at

10-11.  J. Windham argues that R. Simon's objection that the information is irrelevant "is clearly

erroneous."  MTC 2 at 11.  J. Windham points out that R. Simon seeks attorney's fees and has

listed his attorneys as experts for that claim.  See MTC 2 at 11.  Accordingly, R. Simon says, the

documents related to those fees are relevant and discoverable.  See MTC 2 at 11 (citing Crispin

Co. v. Petrobuv-S.A., No. CIV 05-0159 C, 2006 WL 2472878 (W.D. Okla. Aug. 24, 2006)).

J. Windham contends that R. Simon cannot rely on a claim of privilege to refuse to

produce the requested documents.  See MTC 2 at 11.  J. Windham says that the "'general rule is

that information regarding attorney fees billed to and received from a client are not protected by

the attorney client privilege.'"  MTC 2 at 12 (quoting Kan. Food Packer v. Corpak, No. CIV 99-

1418 JTM, 2000 WL 33170870, at *4, n.7 (D. Kan. Oct. 12, 2000)).  J. Windham asserts that,

while a party can redact portions of these documents, "'the party asserting the privilege must

make a clear showing why the attorney client privilege should apply to billing records.'"  MTC 2

at 11 (quoting Kan. Food Packer v. Corpak, 2000 WL 33170870, at *4, n.7)(citing Crispin Co. v.

Petrobuv-S.A., 2006 WL 2472878, at *1 ("Although specific entries may contain confidential

communications, the party asserting the privilege must establish that the privilege applies to

avoid production of the records."); Schein v. N. Rio Arriba Elec. Coop., 1997-NMSC-011, ¶ 6,

934 P.2d 490, 493 (compelling company to produce unredacted versions of its legal billing

statements, because the "narrative portions" that had been redacted "were not protected by the

attorney-client privilege.")).  J. Windham argues that, because R. Simon has made no such

showing, the Court should compel him to respond to Request for Production Nos. 8 through 10.

See MTC 2 at 12.

### 5.     The Simons' Amended Discovery Responses.

On July 18, 2014, the Simons' counsel told the Defendants' counsel that their amended

discovery responses were forthcoming.  See Defendant Heath Taylor's Reply in Support of His

Motion to Compel Plaintiff Janelle Simon to Fully Respond to His First Set of Interrogatories

and Requests for Production at 2, filed November 3, 2014 (Doc. 83)("Reply to MTC 1").  Based

on these representations, the Defendants agreed to a stipulated tolling of the time within which

the Plaintiffs could respond to the motions to compel.  See Notice of Stipulated Tolling of Time

Within Which to Respond to Defendants' Motions to Compel, filed July 18, 2014 (Doc. 73).  On

August 6, 2014, the Defendants' counsel sent the Simons' counsel an electronic-mail

transmission asking when he would submit supplemental discovery responses and what those

responses would entail.  See Reply to MTC 1 at 2.  The Simons' counsel responded only that he

intended to produce "more documents" in the future.  Reply to MTC 1 at 2 (internal quotation

marks omitted).

On September 11, 2014, because the Defendants' counsel had not received a further

response from the Simons' counsel, the Defendants' counsel sent another letter to the Simons'

counsel, requesting them to provide supplemental discovery responses by September 26, 2014.

See Letter from Billy R. Blackburn and Paul Linnenburger, Counsel for the Defendants, to Chad

W. Dunn and Robert H. Fritz (Sept. 11, 2014), filed November 3, 2014 (Doc. 83-1).  After again

receiving no response, the Defendants filed a notice indicating that the stipulated tolling time had

expired.  See Notice of Expiration of Stipulated Tolling of Time Within Which to Respond to

Defendants' Motion to Compel, filed September 29, 2014 (Doc. 75).

On October 23, 2014, the Simons submitted their amended discovery responses.  See

Plaintiff Janelle Simon's Amended Responses to Defendant Heath Taylor's First Set of

Interrogatories, filed November 3, 2014 (Doc. 83-2)("Amended Answers to J. Simon

Interrogatories"); Plaintiff Janelle Simon's Amended Responses to Defendant Heath Taylor's

First Requests for Production, filed November 3, 2014 (Doc. 83-3)("Amended Responses to J.

Simon RFP"); Plaintiff Richard Simon's Amended Responses to Jerry Windham's First Set of

Interrogatories, filed November 3, 2014 (Doc. 85-2)("Amended Answers to R. Simon

- 22 -

Interrogatories"); Plaintiff Richard Simon's Amended Responses to Defendant Jerry Windham's

First Requests for Production, filed November 3, 2014 (Doc. 85-3)("Amended Responses to R.

Simon RFP").   J. Simon's amended responses to the Interrogatories included, among other

things:

> **INTERROGATORY  NO. 2:** Identify any persons that refused to enter into an economic relationship, or terminated an existing economic relationship, with you which you contend was a result of Defendants' actions as set forth in Count 1 of your Original Complaint filed in this matter (Doc. 1).

> **AMENDED  ANSWER:** I am aware of no person who refused to enter into an economic relationship or who otherwise cancelled existing contracts.  I am sure I would have been hired by many more clients had Jet Black Patriot been declared the winner like he should have been.  I cannot name these clients because Defendants actions prevented me from ever being introduced to them[.]  Having been the owners/breeders of the winner horse of the All-American [F]uturity would have gained me great publicity and new clients.

> **INTERROGATORY  NO. 3:** For all persons identified in your Answer to Interrogatory No. 2, identify the "economic relationship" affected, including: a) the nature of the relationship; b) any specific future economic benefits you expected from the relationship; and c) all principal facts you rely upon to support the contention that said relationship was disrupted as a result of the actions of Defendants.

> **AMENDED  ANSWER:** I am aware of no person who refused to enter into an economic relationship or who otherwise cancelled existing contracts.  Based upon my experience in the industry, I am aware that owners/breeders of the horse who win the All American Futurity receive a great increase in business.  I never got the chance to enjoy these new clients due to the Defendants' actions.

> **INTERROGATORY  NO. 4:** Identify any persons with knowledge of the principal facts upon which you rely to contend that Defendants knowingly and/or intentionally improperly trained Stolis Winner or provided Stolis Winner with performance enhancing substances prior to the 2008 All American Futurity as alleged in your Original Complaint filed in this matter (Doc. 1).

> **AMENDED  ANSWER:** Objection in that this is inappropriate inquiry in an Interrogatory.  See Rule 26 Disclosures for identity of persons with knowledge of relevant facts.

> [the amended answer then provides a list of twenty-one people]

**INTERROGATORY NO. 5:** Identify any licenses held by you between 2005 and current which relate to the owning, training and/or riding of race horses, including: a) the nature of the license; b) the jurisdiction in which the license was/is held; c) the entity providing the licensure; d) the current status of the license; and e) any disciplinary actions threatened or taken against the license.

**AMENDED ANSWER:** I have [a] license with Louisiana now and in the past had licenses in Texas and New Mexico.  There were never any disciplinary actions.

. . . .

**INTERROGATORY NO. 7:** Identify any and all parties with which you entered into a stud/mating agreement relating to the horse Jet Black Patriot.

**AMENDED ANSWER:** Plaintiff will provide Defendants such information upon entry of an appropriate protective order.  The listing of clients is included on the printed records from Robicheaux Ranch who handled the horse breeding sales.

**INTERROGATORY NO. 8:** Please state the terms of any and all stud/mating agreements entered into by you in relation to the horse Jet Black Patriot, including: a) the amount of compensation promised/paid in stud fees; b) the date of the agreement; c) the identity of any mare associated with the agreement; and d) the identity of any offspring resulting therefrom.

**AMENDED ANSWER:** Plaintiff will provide Defendants such information upon entry of an appropriate protective order.  The listing of clients is included on the printed records from Robicheaux Ranch who handled the horse breeding sales.  This list also has whatever information I have concerning the terms of each sale.

. . . .

**INTERROGATORY NO. 14:** Identify any and all communications between you and Defendants concerning this lawsuit or the subject matter thereof, including: a) the nature of the communication; b) the date of the communication; c) the persons communicating; and d) the contents of the communication.

**ANSWER:** This request is overly broad and unduly burdensome. There has been hundreds, if not thousands of communications between Plaintiffs [and] Defendants, especially through counsel.  Plaintiff objects to being asked to identify every one of these communications.

Amended Answers to J. Simon Interrogatories at 1-9.  J. Simon's amended responses to the

Requests for Production included, among other things:

> **REQUEST FOR PRODUCTION NO. 2:** Produce copies of your tax returns for the years 2007 through today.
>
> **AMENDED RESPONSE:** Plaintiff will produce responsive documents in their possession, if any, upon the entry of an appropriate protective order and with the agreement Defendants will produce their tax returns as well.
>
> **REQUEST FOR PRODUCTION NO. 3:** Produce copies of any and all bank statements for accounts owned by you and/or any business owned, in whole or in part, by you and/or your husband, and which are used by you in the conduct of business associated with the owning, racing, training, breeding or otherwise maintaining of horses for the years 2007 through today.
>
> **AMENDED RESPONSE:** Plaintiff will produce responsive documents in their possession, if any, upon the entry of an appropriate protective order and with the agreement Defendants will produce their tax returns as well.

Amended Responses to J. Simon RFP at 1-2.

> R. Simon's amended answers to the Interrogatories included, among other things:
>
> **INTERROGATORY NO. 4:** Identify any persons with knowledge of the principal facts upon which you rely to contend that Defendants knowingly and/or intentionally improperly trained Stolis Winner or provided Stolis Winner with performance enhancing substances prior to the 2008 All American Futurity as alleged in your Original Complaint filed in this matter (Doc. 1).
>
> **AMENDED ANSWER:** Objection in that this is inappropriate inquiry in an Interrogatory.  See Rule 26 Disclosures for identity of persons with knowledge of relevant facts and specifically the following.
>
> [the amended answer then provides a list of twenty-one people]
>
> **INTERROGATORY NO. 5:** Identify any licenses held by you between 2005 and today which relate to the owning, training and/or riding of race horses, including: a) the nature of the license; b) the jurisdiction in which the license was/is held; c) the entity providing the licensure; d) the current status of the license; and e) any disciplinary actions threatened or taken against the license.

**AMENDED ANSWER:** I have [a] license with Louisiana now and in the past had licenses in Texas and New Mexico.

. . . .

**INTERROGATORY NO. 7:** Identify any and all parties with which you entered into a stud/mating agreement relating to the stud services of the horse Jet Black Patriot.

**AMENDED ANSWER:** Plaintiff will provide Defendants such information upon entry of an appropriate protective order. The listing of clients is included on the printed records from Robicheaux Ranch who handled the horse breeding sales.

. . . .

**INTERROGATORY NO. 8:** Please state the terms of any and all stud/mating agreements entered into by you in relation to the horse Jet Black Patriot, including: a) the amount of compensation promised/paid in stud fees; b) the date of the agreement; c) the identity of any mare associated with the agreement; and d) the identity of any offspring resulting therefrom.

**AMENDED ANSWER:** Plaintiff will provide Defendant such information upon entry of an appropriate protective order. The listing of clients is included on the printed records from Robicheaux Ranch who handled the horse breeding sales. This list also has whatever information I have concerning the terms of each sale.

Amended Responses to R. Simon Interrogatories at 3-8.

R. Simon's amended responses to J. Windham's Requests for Production included, among other things:

**REQUEST FOR PRODUCTION NO. 3:** Produce any and all documents, correspondence, electronic mail, notes, letters or other written or electronic communications between you and any person concerning the subject matter of this lawsuit.

**SUPPLEMENTAL RESPONSE:** I have no responsive documents other than communications with my attorneys.

. . . .

- 26 -

**REQUEST FOR PRODUCTION NO. 8:** All documents, records, or other tangible items, including electronic information, that you contend support any attorney's fees which you claim in your Original Complaint in this matter (Doc. 1).

**AMENDED RESPONSE:** Plaintiffs do not seek the recovery of attorney[']s fees from the remaining Defendants including the propounder of this discovery. A claim for attorney's fees was only sought against the government defendants who have now been dismissed. Therefore, the information requested is not relevant to any claim and is not likely to lead to relevant evidence and furthermore the request invades the Attorney Client Privilege and the Attorney Work Product Privilege.

**REQUEST FOR PRODUCTION NO. 9:** Produce a copy of any retention letter/agreement between you and Chad Dunn, Robert Fritz, and/or any law firm associated with said attorneys retained by you or [o]n your behalf with respect to any matters pertaining to this action, including, but not limited to, your efforts to intervene in any administrative actions against Defendant Heath Taylor, any writs submitted for consideration in the courts of the State of New Mexico, any prior lawsuits brought against Defendants, and this action.

**AMENDED RESPONSE:** Plaintiffs do not seek the recovery of attorney[']s fees from the remaining Defendants including the propounder of this discovery. A claim for attorney's fees was only sought against the government defendants who have now been dismissed. Therefore, the information requested is not relevant to any claim and is not likely to lead to relevant evidence and furthermore the request invades the Attorney Client Privilege and the Attorney Work Product Privilege.

**REQUEST FOR PRODUCTION NO. 10:** A copy of all invoices/bills Chad Dunn, Robert Fritz, and/or any law firm associated with said attorneys retained by you or in your behalf with respect to any matters pertaining to this action, including, but not limited to, your efforts to intervene in any administrative actions against Defendant Heath Taylor, any writs submitted for consideration in the courts of the State of New Mexico, any prior lawsuits brought against Defendants, and this action.

**AMENDED RESPONSE:** Plaintiffs do not seek the recovery of attorney[']s fees from the remaining Defendants including the propounder of this discovery. A claim for attorney's fees was only sought against the government defendants who have now been dismissed. Therefore, the information requested is not relevant to any claim and is not likely to lead to relevant evidence and furthermore the request invades the Attorney Client Privilege and the Attorney Work Product Privilege.

Amended Responses to R. Simon RFP at 1-4.

6.      **The Response.**

On October 23, 2014, the Simons responded to the MTC 1 and MTC 2 in the same

document.  See Plaintiffs' Response to Defendants' Motion to Compel, filed October 23, 2014

(Doc. 78)("Response").  The Simons' argument in the Response consists of the following three

paragraphs:

> On this date, Plaintiffs have provided Amended and/or Supplemental
> Responses to the written discovery propounded by Defendants.  Plaintiff[s]
> believe these amended Responses resolve any issues raised by Defendants which
> had the potential to be sustained by the Court.  Plaintiffs have sought to confer
> with opposing counsel by phone once they have reviewed the Amended and
> Supplemental Responses.  In the event issues remain to be resolved after the
> attorneys confer by phone, Plaintiffs will provide supplemental briefing to the
> Court.

> Also, Plaintiffs have objected to producing their tax returns and private
> financial information without the Court first entering a protective order.  Plaintiffs
> have proposed such an order to opposing counsel and when/if an agreement can
> be reached, the parties will file an agreed order for the Court's consideration.

> Finally, Plaintiffs have been requesting deposition dates for the
> Defendants for over a year now without success.  Hopefully that issue can be
> resolved during our meet and confer but if not, additional briefing will be
> submitted for the Court to review.

Response at 1-2.

7.      **The MTC 1 Reply.**

Taylor replied to the Response on November 3, 2014.  See MTC 1 Reply at 1.  In the

MTC 1 Reply, J. Windham reiterates some of the general issues that he raised in the MTC 1 --

namely, that J. Simon's general objections lack specificity, and that J. Simon failed to identify

which documents are responsive to each Request for Production.  See MTC 1 Reply at 4-5.

Taylor also argues that, although J. Simon has verified her initial Interrogatory answers under

oath, she did not verify her amended answers.  See MTC 1 Reply at 5.

Taking up J. Simon's amended answers to Interrogatory Nos. 2 and 3, Taylor says that those responses do not provide any additional information.  See MTC 1 Reply at 6.  Taylor adds that, based on J. Simon's responses, "it is difficult to understand what good faith basis she may have for the claims and allegations of Count 1 of the Complaint."  MTC 1 Reply at 6.  Taylor asserts that either J. Simon's answers are incomplete or she should dismiss Count 1 of the Complaint as unsupported.  See MTC 1 Reply at 6.  Taylor repeats that the Court should overrule J. Simon's objection to Interrogatory No. 4 for the same reasons that he stated in the MTC 1.  See MTC 1 Reply at 7.  Taylor says that J. Simon's amended answers to Interrogatory Nos. 7 and 8 still fail to identify sufficiently the responsive documents as rule 33(d) requires.  See MTC 1 Reply at 7.  Taylor reiterates that the request for communications between parties in Interrogatory No. 14 is not unduly burdensome.  See MTC 1 Reply at 7-8.  Addressing J. Simon's amended responses to the Requests for Production, Taylor states that he does not object to putting in place an appropriate protective order for those documents.  See MTC 1 Reply at 8.

**8.    The MTC 2 Reply.**

J. Windham replied to the Response on November 3, 2014.  See Defendant Jerry Windham's Reply in Support of His Motion to Compel Plaintiff Richard Simon to Fully Respond to His First Set of Interrogatories and Requests for Production, filed November 3, 2014 (Doc. 85)("MTC 2 Reply").  In the MTC 2 Reply, J. Windham reiterates some of the general issues that he raised in the MTC 1 -- namely, that R. Simon's general objections lack specificity and that R. Simon failed to identify which documents are responsive to each Request for Production.  See MTC 1 Reply at 4-5.  Windham says that, although R. Simon has verified his initial Interrogatory answers under oath, he did not verify his amended answers, so the Court should compel him to do so.  See MTC 1 Reply at 5.

- 29 -

Addressing R. Simon's amended answers to Interrogatory Nos. 7 and 8, Taylor argues that, while the amended responses identify the responsive document, the document does not provide the requested information -- such as the last known address or contact number -- for the parties involved in the stud/mating agreements.  See MTC 2 Reply at 7.  Taylor notes that the information that R. Simon provided is limited to 2009 and does not include any information for the other years for which the Interrogatories sought information.  See MTC 2 Reply at 7.

Turning to R. Simon's amended response to Request for Production No. 3, Taylor contends that, although R. Simon says he has no responsive documents outside of attorney-client communications, he has not provided adequate certification that he conducted reasonable diligence in attempting to locate those documents.  See MTC 2 Reply at 7-8.  Finally, addressing R. Simon's amended responses to Request for Production Nos. 8 through 10, Taylor states:

> Although Plaintiff Simon claims he no longer seeks attorney's fees, at this time, those claims remain outstanding.  There has not been any dismissal, voluntary or otherwise, of Plaintiffs' claims for attorney fees as set forth in the Complaint. Accordingly, this remains a valid discovery request to which Plaintiff Richard Simon has failed to respond or offer any valid objection thereto.

MTC 2 Reply at 8.

### 9.    The November 18, 2014, Hearing.

The Court held a hearing on November 18, 2014.  See Transcript of Hearing (taken November 18, 2014), filed December 5, 2014 (Doc. 96)("Tr.").  Throughout the hearing, Taylor and J. Windham -- whom the same counsel represent -- addressed their motions to compel together.  They began the hearing by raising their broad concerns about the Simons' general objections, failure to verify their amended answers, and failure to identify which documents were responsive to which requests.  See Tr. at 17:6-15 (Linnenburger).  The Court asked the Simons whether they are withholding any documents pursuant to their general objections, and the

Simons replied that they were not and were only withholding the documents until the Court enters a protective order.  See Tr. at 17:25-18:5 (Dunn).  The Court thus overruled the Simons' general objections without prejudice to renewing them at a later point if they find new documents that raise additional concerns.  See Tr. at 18:6-10 (Court).

The Court and the parties then took up the verification issue, and Taylor and J. Windham clarified that they only need signatures from the Simons for the amended answers.  See Tr. at 18:21-19:9 (Court, Linnenburger).  The Simons responded that, when they amended their Interrogatory answers, they produced verifications with the same document and thought that would be sufficient.  See Tr. at 19:14-22 (Dunn).  Taylor and J. Windham countered that those verifications are insufficient, because they do not reference the amended answers.  See Tr. at 20:1-12 (Linnenburger).  The Court said that Taylor and J. Windham are entitled to a complete set of verifications, and the Simons must provide them.  See Tr. at 20:13-19 (Court).

Taylor and J. Windham next focused on Interrogatory Nos. 2 and 3 to J. Simon.  See Tr. at 24:1-19 (Linnenburger).  Taylor and J. Windham said that they were concerned that J. Simon's responses to those Interrogatories -- which said that she was unaware of any economic relationships that the Defendants' actions disrupted -- might not be complete based on the Complaint's allegations.  See Tr. at 25:5-20 (Linnenburger).  The Court said that, if J. Simon does not identify "any specific names or any specific contracts or relationships" that the Defendants' actions disrupted, the Plaintiffs cannot mention those individuals, contracts, or relationships at trial.  Tr. at 26:1-8 (Court).  Taylor and J. Windham said that such a ruling would be acceptable.  See Tr. at 26:12-15 (Linnenburger).

There followed a brief discussion whether Taylor and J. Windham seek J. Simon's list of clients who purchased Jet Black Patriot's sperm, but would have paid more for it if he had won

the race.  See Tr. at 26:21-30:5 (Dunn, Court).  Taylor and J. Windham clarified that those Interrogatories only seek information about which individuals or entities refused to enter into contracts with the Plaintiffs altogether because of the Defendants' actions.  See Tr. at 28:15-29:3 (Linnenburger).  The Court said that, if J. Simon thought that the list of clients who purchased Jet Black Patriot's sperm was relevant to those Interrogatories, she would have to type that list into her Interrogatory answers.  See Tr. at 30:6-15 (Court).  The Court stated, however, that it did not sound like the client list would be relevant to Interrogatory Nos. 2 and 3.  See Tr. at 30:16-19 (Court).  Accordingly, the Court would not compel J. Simon to respond to Interrogatory Nos. 2 and 3, while adding that, if she does not amend her answer with specific names or entities, "then the plaintiffs will be precluded at trial from bringing any specific names or relationships up."  Tr. at 30:20-25 (Court).  The Court said that, in other words, the Simons would "have to rely on something general like they were saying in their answer" to Interrogatory Nos. 2 and 3.  Tr. at 30:25-31:2 (Court).

Turning to the Simons' answers to Interrogatory Nos. 7 and 8, J. Windham and Taylor argued that, although the Simons produced a number of documents, none of their Interrogatory answers identify which documents are responsive to which Interrogatories.  See Tr. at 31:4-32:14 (Linnenburger).  The Court said that, under rule 34, it generally requires parties to identify which documents are responsive to which party -- for example, if a party has requested a category of documents, "then the response has to identify by Bates numbers or, if there's not Bates numbers being used, the individual documents with the requests."  Tr. at 32:18-24 (Court).  The Court explained that the Simons' counsel has a choice:

> [I]f he doesn't want to respond by putting the Bates numbers there, then he has to produce them as they're kept in the usual course of business.  And that means he's welcome to bring you to the ranch and show you the filing cabinets and say, "All the documents are there."

> But once he starts going through those documents and culling them and putting up a stack, then he's got to indicate by Bates label or some other way which fall into what category.

Tr. at 22:9-19 (Court).  The Court asked Taylor and J. Windham if that ruling for Interrogatory Nos. 7 and 8 would satisfy them, and they said that it would.  See Tr. at 34:2-7 (Court).

The Court and the parties next took up Taylor's Request for Production Nos. 2 and 3, which seek J. Simon's tax returns and financial records.  See Tr. at 37:1-4 (Linnenburger).  J. Simon asserted that, as long as there is an appropriate protective order in place, she has no objection to producing those documents.  See Tr. at 38:7-12 (Dunn).  J. Simon added, however, that she is also entitled to the Defendants' tax returns and financial records.  See Tr. at 38:19-39:3 (Dunn).  The Court said that it would address any issues with the Defendants' tax returns and financial records when they arise, and, for the time being, would order only J. Simon to produce those documents.  See Tr. at 39:4-8 (Court).

Turning to the issue of the protective order, the parties said that the main sticking point between them is which party would bear the burden of establishing that information is or is not protected.  See Tr. at 39:16-44:18 (Linnenburger, Dunn).  The Court provided the parties a provision from the sample protective order on page 753 of the fourth edition of the Manual for Complex Litigation, which says:

> If a party believes that a document designated or sought to be designated confidential by the producing party does not warrant such designation, the party shall first make a good-faith effort to resolve such a dispute with opposing counsel.  In the event that such a dispute cannot be resolved by the parties, either party may apply to the court or special master for a determination as to whether the designation is appropriate.   The burden rests on the party seeking confidentiality to demonstrate that such designation is proper.

Tr. at 64:22-65:10 (Court)(quoting, Manual for Complex Litigation § 40.27 Confidentiality Order (4th ed. 2004))(internal quotation marks omitted).

- 33 -

The Court and the parties then addressed R. Simon's responses to Request for Production Nos. 8, 9, and 10 -- all of which sought documents and information related to the Plaintiffs' claim for attorney's fees.  See Tr. at 52:11-16 (Linnenburger); id. at 62:9-18 (Linnenburger). Taylor and J. Windham said that, although the Simons indicated in their discovery responses that they were no longer pursuing that claim, there has been no formal order from the Court or notice from the Plaintiffs to that effect.  See Tr. at 52:17-25 (Linnenburger).  The Court asked the Simons whether they would seek attorney's fees from the remaining defendants, and the Simons responded that they would not.  See Tr. at 53:4-6 (Court, Dunn).  The Court said that it would not compel R. Simon to respond to Request for Production Nos. 8 through 10, and dismissed any of the Plaintiffs' remaining claims for attorney's fees.  See Tr. at 53:7-10 (Court).

Taylor and J. Windham said that, although there had been some issues relating to the Simons' answers to Interrogatories seeking information about their licenses and disciplinary issues in racing, Taylor and J. Windham believed that both Simons had satisfactorily answered those requests.  See Tr. at 53:16-20 (Linnenburger).  A discussion then ensued about the Defendants' discovery requests for Vega's and Curtis' racing license histories and disciplinary histories, and the Simons' requests for the same.  See Tr. at 57:2-58:25 (Linnenburger, Dunn). The Defendants said that the information that the Plaintiffs seek is irrelevant to their claims.  See Tr. at 58:21-25 (Linnenburger).  The Court said that, although it would not rule on the Plaintiffs' requests for the Defendants' racing license histories and disciplinary histories, if it overruled the Defendants' relevancy objection down the road, the Defendants would have to try to obtain that information directly from the relevant agencies rather than forcing the Plaintiffs to subpoena those agencies at the outset.  See Tr. at 59:1-5 (Court).

> If, in fact, the agencies don't provide it, then the party that wants the information will need to subpoena it.  But . . . it sounds like this information is in the control

of the licensee or the person disciplined. . . .   [I]f I overrule any relevancy
objection, I'll require the plaintiffs to . . . go to the disciplinary licensing agencies
and secure that information with your request.

Tr. at 59:6-17 (Court).

Taylor and J. Windham said that the final outstanding discovery matter was J. Simon's
objection to Interrogatory No. 14, which seeks communications between J. Simon and the
Defendants about the case.  See Tr. at 62:19-22 (Linnenburger).  Taylor and J. Windham argued
that, although J. Simon's objection was that the Interrogatory seeks information that the attorney-
client privilege protects, Taylor and J. Windham agreed to limit the request to communications
between the parties.  See Tr. at 62:23-63:7 (Linnenburger).  The Simons said that, if the request
is limited to communications between the Plaintiffs and the Defendants, they would have no
objection to supplementing their responses with that information.  See Tr. at 64:1-3 (Dunn).
Accordingly, the Court ordered the Simons to supplement their responses to include those
communications.  See Tr. at 64:8-9 (Court).  Finally, the Court and the parties agreed that the
deadline for the Simons' supplemental responses and verifications would be ten days after they
received the transcript from the court reporter, Ms. Bean.  See Tr. at 67:6-15 (Linnenburger,
Dunn, Court).

## **RELEVANT LAW REGARDING DISCOVERY**

Rule 34 of the Federal Rules of Civil Procedure governs discovery requests for
documents.  See Fed. R. Civ. P. 34.  Rule 34(a) states:

A party may serve on any other party a request within the scope of Rule 26(b):

> **(1)** to produce and permit the requesting party or its representative to
> inspect, copy, test, or sample the following items in the responding
> party's possession, custody, or control:
>
> > **(A)** any designated documents or electronically stored
> > information -- including writings, drawings, graphs,

- 35 -

charts, photographs, sound recordings, images, and other data or data compilations -- stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

> **(B)**   any designated tangible things; or

**(2)**   to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a).   Rule 26(b)(1) explains that the proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."   Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to discovery of admissible evidence."   Fed. R. Civ. P. 26(b)(1).   Federal courts have held that the scope of discovery under rule 26 is broad.   See Gomez v. Martin Marrietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").   The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."   Hickman v. Taylor, 329 U.S. 495, 507 (1947).   As a result of this policy, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case."   Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-50 (D.N.M. 2007)(Browning, J.)(internal quotations marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim."   McGee v. Hayes, 43 F. App'x 214, 217 (10th

Cir. 2002)(unpublished).[5]   "'Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'"   Rivera v. DJO, LLC, No. CIV 11-1119 JB/RHS, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. CIV 00-7697 WK, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)).   See Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted).   "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."   Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."   Zenith Elecs. Corp. v. Exzec, Inc., No. CIV 93-5041 BMM, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998).   Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context

---

[5]McGee v. Hayes is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . .   However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that McGee v. Hayes has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted).

Rule 26(b)(1) was amended in 2000.  Before the 2000 amendments, rule 26(b)(1) defined the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending actions, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.   The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1)(1996).  The 2000 amendments made the following changes, shown here in redline form with the deleted language stricken and the added material underlined:

> Parties may obtain discovery regarding any matter, not privileged, that ~~which~~ is relevant to ~~the subject matter involved in the pending actions, whether it relates to~~ the claim or defense of ~~the party seeking discovery or to the claim or defense of~~ any ~~other~~ party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  <u>For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant</u> ~~The~~ information ~~sought~~ need not be admissible at the trial if discovery the ~~information sought~~ appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Putting aside the changes to the last sentence -- which the advisory committee's notes make clear was a housekeeping amendment to clarify that inadmissible evidence must still be relevant to be discoverable -- the 2000 amendments have two effects: (i) they narrow the substantive scope of discovery in the first sentence; and (ii) they inject courts into the process in the entirely new second sentence.

> In 1978, the Committee published for comment a proposed amendment, suggested by the Section of Litigation of the American Bar Association, to refine

the scope of discovery by deleting the "subject matter" language.  This proposal was withdrawn, and the Committee has since then made other changes in the discovery rules to address concerns about overbroad discovery.  Concerns about costs and delay of discovery have persisted nonetheless, and other bar groups have repeatedly renewed similar proposals for amendment to this subdivision to delete the "subject matter" language.  Nearly one-third of the lawyers surveyed in 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions.  Discovery and Disclosure Practice, supra, at 44-45 (1997).  The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action.

The amendments proposed for subdivision (b)(1) include one element of these earlier proposals but also differ from these proposals in significant ways.  The similarity is that the amendments describe the scope of party-controlled discovery in terms of matter relevant to the claim or defense of any party.  The court, however, retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause.  The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery.  The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery.  Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the attorneys surveyed by the Federal Judicial Center.  See Discovery and Disclosure Practice, supra, at 44. Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

**The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard.  Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information.  Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be**

**properly discoverable.  In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.**

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.  In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention.  When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

The amendments also modify the provision regarding discovery of information not admissible in evidence.  As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible.  The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery.  Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence.  As used here, "relevant" means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.

Finally, a sentence has been added calling attention to the limitations of subdivision (b)(2)(i), (ii), and (iii).  These limitations apply to discovery that is otherwise within the scope of subdivision (b)(1).  The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated.  See 8 Federal Practice & Procedure § 2008.1 at 121.  This otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery.  Cf. Crawford-El v. Britton, 118 S. Ct. 1584, 1597 (1998) (quoting Rule 26(b)(2)(iii) and stating that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

Fed. R. Civ. P. 26 advisory committee's notes (emphasis added).

One gets the impression from reading the advisory committee's notes that the amendment

was not intended to exclude a delineable swath of material so much as it is intended to send a

signal to district judges to become more hands-on in the process of regulating -- mostly limiting -- discovery on relevance grounds alone.  The "two effects" of the 2000 amendments might, thus, be only one effect: directing district judges to roll up their sleeves and manage discovery, and to do so on the basis of relevance.  The change in substantive scope from "subject matter," to "claim or defense," would, therefore, seem to exist more to "add teeth" to the relevance standard than to effectuate a substantive narrowing.  It is not surprising that Congress would want to increase judicial presence: "relevance" is a wide-open concept even in the context of trial, see Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."), and it is often said that relevance for discovery is an even broader concept.  One might then say that old rule 26(b)(1)'s relevant discovery provision was toothless.  It is likewise unsurprising that the rulemakers are unable to articulate precise language narrowing the substantive scope of discovery: no single general rule can adequately take into account the infinite number of possible permutations of different claims, defenses, parties, attorneys, resources of parties and attorneys, information asymmetries, amounts in controversy, availabilities of information by other means, etc.  The determination requires the individualized judgment of someone on the scene, and that presence is what the rulemakers wanted when they: (i) encouraged district judges to take a firmer grasp on the scope of discovery; and (ii) put their thumbs on the scale in favor of narrower discovery in the rule's definition of the scope of discovery.

Of course, courts should also seek to give substantive content to amendments.  Read literally, the rule does not permit parties to discover information relevant only to the claim or defense of another party; they must use discovery only to investigate their own claims and

defenses.   More problematically, however, the rule may prevent using the Federal Rules' compulsory discovery process to obtain "background" information not specifically relevant to any one claim or defense -- e.g., a plaintiff naming a pharmaceutical company as a defendant and then using discovery to educate itself generally about medicine, biochemistry, and the drug industry by using the defendant's expertise.

In In re Cooper Tire & Rubber Co., 568 F.3d 1180 (10th Cir. 2009), the Tenth Circuit clarified that the 2000 Amendments to rule 26 "implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action."  568 F.3d at 1188.  The Tenth Circuit further stated that,

> when a party objects that discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action."  This good-cause standard is intended to be flexible.  When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be.   "[T]he actual scope of discovery should be determined according to the reasonable needs of the action.   The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."

568 F.3d at 1188-89 (quoting the advisory committee's notes to the 2000 amendments to Fed. R. Civ. P. 26(b)(1))(citations omitted)(footnote omitted)(alteration in original).

## LAW REGARDING MOTIONS TO COMPEL

Rule 37 provides enforcement mechanisms for rule 34.  According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond.  See Fed. R. Civ. P. 37(a)(2)(B).  Accord Lewis v. Goldberry, No. CIV 11-0283 JB/ACT, 2012 WL 681800, at *4 (D.N.M. Feb. 27, 2012)(Browning, J.).  Rule 37(a) provides:

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a). Under rule 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). If a party refuses to turn over documents through proper discovery, a defendant should move to compel production pursuant to rule 37. See Lane v. Page, 727 F. Supp. 2d 1214, 1236 n.15 (D.N.M. 2010)(Browning, J.).

## ANALYSIS

The Court will deny the MTC 1 and MTC 2 in part and grant them in part. The Court will overrule the Simons' general objections to the Interrogatories and Requests for Production without prejudice to them raising those objections again if new documents are uncovered. The Court will order the Simons to verify their amended Interrogatory answers under oath, as rule 33(b)(3) requires. The Court will not order J. Simon to amend her answers to Interrogatory Nos. 2 and 3, because she has represented that she has no additional information to provide. The Court will order the Simons to identify which documents are responsive to Interrogatory Nos. 7 and 8, as rule 33(d) requires. The Court will provide a provision to resolve the parties' remaining dispute over the protective order, and order J. Simon to respond to Request for Production Nos. 2 and 3. The Court will not order R. Simon to respond to Request for Production Nos. 8 through 10, and will dismiss all of the Plaintiffs' remaining claims for attorney's fees. The Court will order J. Simon to respond to Interrogatory No. 14. The Court will not order the Defendants to produce their racing license histories or disciplinary histories at

this time.  The Simons' supplemental discovery responses are due ten business days after they

receive the transcript from the court reporter, Ms. Bean.

## I.      THE COURT WILL OVERRULE THE SIMONS' GENERAL OBJECTIONS TO THE INTERROGATORIES AND REQUESTS FOR PRODUCTION.

The Simons assert a variety of general objections to Taylor and J. Windham's discovery

requests.  See Response to J. Simon Interrogatories at 3; Response to R. Simon Interrogatories at

3; Response to J. Simon RFP at 3; Response to R. Simon RFP at 3.  The Simons' responses to

the Interrogatories and Requests for Production contain nearly identical "general objections" --

the only difference being that the objections to the Requests for Production stated "Production"

rather than "Interrogatories":

> The following General Objections apply to each of the Defendant's Interrogatories.  Although Plaintiff may respond specifically to certain Requests for Interrogatories, their responses are made subject to each and every General Objection and no response shall be considered as, or is, a waiver of any General Objection.

> 1.   Plaintiff objects to Defendant's Interrogatories to the extent they seek information or the disclosure of information which is protected by the attorney-client privilege, work product doctrine or any other statutory or common law privilege.  Plaintiff reserves the right to withhold such information from production.  Any inadvertent disclosure of such privileged or otherwise protected information shall not be deemed a waiver of any privilege or work product immunity.

> 2.   Plaintiff objects to Defendant's First Request for Interrogatories to the extent Plaintiff attempts or purports to impose greater or different obligations in discovery than are required by the Federal Rules of Civil Procedure or the Local Rules of this Court.

> 3.   Plaintiff objects to Defendant's Request for Interrogatories to the extent Plaintiff seeks information that calls for a legal conclusion.

4.      Plaintiff    objects    to    Defendant's    Request    for
Interrogatories on the grounds that the separate requests
are vague, ambiguous, and make responding impossible
without speculation because Plaintiff has failed to define
the terms contained in the separate requests.

5.      Plaintiff    objects    to    Defendant's    Request    for
Interrogatories to the extent that they seek information not
within Plaintiff's possession, custody or control.

6.      Plaintiff    objects    to    Defendant's    Request    for
Interrogatories to the extent that they are premature at
this stage of discovery.

7.      Plaintiff's consent herein to respond to Defendant's
Interrogatories shall not be construed as an admission by
Plaintiff that such information, in fact, exists or that such
information, if it exists, is in Plaintiff's possession, custody
or control.

8.      Plaintiff responds solely for the purpose of and in
relation to this action.    Plaintiff's Responses to
Defendant's Interrogatories are made subject to any and
all objections to competence, relevance, materiality, and
admissibility that would require the exclusion at the time
of trial of any statement and/or document produced in
response to the Request for Interrogatories.    Plaintiff
reserves the right to interpose such objections at the time
of trial, if any.

9.      Plaintiff reserves the right to amend, revise or supplement
its responses at any time prior to trial or otherwise
permitted by applicable law or under the Court's Scheduling
Order.

10.     Each of the above stated General Objections is
incorporated by reference into each of Plaintiff's specific
responses below.

Response to J. Simon Interrogatories at 3; Response to R. Simon Interrogatories at 3.   See

Response to J. Simon RFP at 3; Response to R. Simon RFP at 3.

At the hearing, the Court asked the Simons whether they are withholding any documents

pursuant to their general objections, and the Simons replied that they are only withholding

documents until the Court enters a protective order.  See Tr. at 17:25-18:5 (Dunn).  Because the Court provided a sample provision at the hearing to resolve the parties' remaining dispute over the protective order, it overruled the Simons' general objections without prejudice to renewing them at a later point if they find new documents that raise additional concerns.  See Tr. at 18:6-10 (Court).

As explained later in this Memorandum Opinion and Order, the Court will provide a sample provision to resolve the parties' remaining dispute over the protective order for the documents in this case.  Accordingly, the Simons do not have any outstanding general objections to Taylor's or J. Windham's discovery requests.  To the extent that the Simons did not withdraw any objections asserting that the interrogatories or requests for production are vague, ambiguous, overbroad, or unduly burdensome, the Court overrules those objections.  The Court concludes that Taylor and J. Windham's requests are narrowly tailored to the issues in this case and are sufficiently clear to permit the Simons to respond appropriately.  Consequently, the Court  will overrule the Simons' general objections without prejudice to them reasserting those objections at a later point if new issues arise with new documents that they discover.

## II.   THE COURT WILL ORDER THE SIMONS TO VERIFY THEIR AMENDED INTERROGATORY ANSWERS UNDER OATH.

The Court will order the Simons to verify their amended Interrogatory answers under oath.  At the hearing, Taylor and J. Windham asserted that they need signatures from the Simons for the amended Interrogatory answers, as rule 33(b)(3) requires.  See Tr. at 18:21-19:9 (Court, Linnenburger).  The Simons responded that, when they amended their Interrogatory answers, they produced verifications with the same document and thought that would be sufficient.  See Tr. at 19:14-22 (Dunn).   Taylor and J. Windham countered that those verifications are insufficient, because they do not reference the amended responses.   See Tr. at 20:1-12

- 46 -

(Linnenburger).   The Court said that Taylor and J. Windham are entitled to a complete set of verifications, so the Simons must provide them.   See Tr. at 20:13-19 (Court).

Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing and under oath."   Fed. R. Civ. P. 33(b)(3) (emphasis added).   Each of the Simons' verification pages states: "I have read my responses to defendant's interrogatories and the facts stated in."   Tr. at 20:1-3 (Linnenburger).   None of the Simons' verifications reference the amended answers, however.   Consequently, the Simons have failed to comply with rule 33(b)(3).   Moreover, the Plaintiffs cannot fully rely on those amended answers at trial unless the Simons swear to their accuracy under oath.   Accordingly, the Simons must submit additional verification pages swearing under oath that the information contained in the amended interrogatory answers is complete and accurate.

## III.   THE COURT WILL NOT ORDER J. SIMON TO AMEND HER ANSWERS TO INTERROGATORY NOS. 2 AND 3.

The Court will not order J. Simon to amend her answers to Interrogatory Nos. 2 and 3. Interrogatory No. 2 to J. Simon states: "Identify any persons that refused to enter into an economic relationship, or terminated an existing economic relationship, with you which you contend was a result of Defendants' actions as set forth in Count 1 of your Original Complaint filed in this matter (Doc. 1)."   J. Simon Interrogatories at 3.   J. Simon's amended response to Interrogatory No. 2 is as follows:

> I am aware of no person who refused to enter into an economic relationship or who otherwise cancelled existing contracts.  I am sure I would have been hired by many more clients had Jet Black Patriot been declared the winner like he should have been.  I cannot name these clients because Defendants actions prevented me from ever being introduced to them[.]  Having been the owners/breeders of the winner horse of the All-American [F]uturity would have gained me great publicity and new clients.

Amended Answers to J. Simon Interrogatories at 4.

>   Interrogatory No. 3 to J. Simon states:

>   For all persons identified in your Answer to Interrogatory No. 2, identify the
>   "economic relationship" affected, including: a) the nature of the relationship; b)
>   any specific future economic benefits you expected from the relationship; and c)
>   all principal facts you rely upon to support the contention that said relationship
>   was disrupted as a result of the actions of Defendants.

J. Simon Interrogatories at 3.  J. Simon's amended answer to Interrogatory No. 3 is as follows:

>   I am aware of no person who refused to enter into an economic relationship or
>   who otherwise cancelled existing contracts.  Based upon my experience in the
>   industry, I am aware that owners/breeders of the horse who win the All American
>   Futurity receive a great increase in business.  I never got the chance to enjoy these
>   new clients due to the Defendants' actions.

Amended Answers to J. Simon Interrogatories at 4.

At the hearing, Taylor and J. Windham said that they were concerned that J. Simon's amended answers to Interrogatory Nos. 2 and 3 might not be complete based on the Complaint's allegations.  See Tr. at 25:5-20 (Linnenburger).  The Court said that, if J. Simon does not identify "any specific names or any specific contracts or relationships" that the Defendants' actions disrupted in answer to the Interrogatories, then they cannot mention those individuals, contracts, or relationships at trial.  Tr. at 26:1-8 (Court).  Taylor and J. Windham said that such a ruling would work.  See Tr. at 26:12-15 (Linnenburger).

There followed a brief discussion whether Taylor and J. Windham sought J. Simon's list of clients who bought Jet Black Patriot's sperm, but would have paid more for it if he had won the race.  See Tr. at 26:21-30:5 (Dunn, Court).  Taylor and J. Windham clarified that those interrogatories sought information only about which individuals or entities refused to enter into contracts altogether based on the Defendants' actions.  See Tr. at 28:15-29:3 (Linnenburger). The Court said that, if J. Simon thought the list of clients who purchased Jet Black Patriot's

sperm was relevant to those interrogatories, she would have to type that list into her amended interrogatory answers.  See Tr. at 30:6-15 (Court).  The Court stated, however, that it did not sound like the client list would be relevant to Interrogatory Nos. 2 and 3.  See Tr. at 30:16-19 (Court).  Accordingly, the Court denied Taylor's request in the MTC 1 to compel J. Simon to respond to Interrogatory Nos. 2 and 3, while adding that, "if that is the answer of the plaintiffs, then the plaintiffs will be precluded at trial from bringing any specific names or relationships up."  Tr. at 30:20-25 (Court).  The Court said that, in other words, the Plaintiffs would "have to rely on something general like they were saying in their answer" to Interrogatory Nos. 2 and 3. Tr. at 30:25-31:2 (Court).

J. Simon's amended answers to Interrogatory Nos. 2 and 3 appear to be full answers to those interrogatories.  Given J. Simon's answers to these interrogatories, however, the Plaintiffs cannot identify specific individuals or entities who "refused to enter into an economic relationship, or terminated an existing economic relationship" at trial.  J. Simon Interrogatories at 1-2.  Instead, the Plaintiffs can rely only on the general statements that J. Simon offered in her Interrogatory answers.  The Court does not think that J. Simon's list of clients who purchased Jet Black Patriot's sperm, but did not pay as much as they would have if he had won the All American Futurity, is responsive to Interrogatory Nos. 2 and 3, because those interrogatories seek information about individuals or entities who "refused to enter into an economic relationship, or terminated an existing economic relationship," and not individuals who entered into economic relationships with the Simons but did not pay as much as they would have under different circumstances.  J. Simon Interrogatories at 1-2.  If J. Simon thinks that the list of clients who purchased Jet Black Patriot's sperm is responsive to those interrogatories, however, she needs to type those clients' names into her supplemental responses.  Accordingly, the Court will

not order J. Simon to amend her answers to Interrogatory Nos. 2 and 3 with information that she appears not to have, while making the important caveat that the Plaintiffs cannot later offer at trial evidence or testimony regarding their economic relationships with specific individuals or entities that the Defendants' actions disrupted.

## IV. THE COURT WILL ORDER THE SIMONS TO IDENTIFY WHICH DOCUMENTS ARE RESPONSIVE TO INTERROGATORY NOS. 7 AND 8.

The Court will order the Simons to identify which documents are responsive to Interrogatory Nos. 7 and 8. Interrogatory No. 7 to R. Simon states: "Identify any and all parties with which you entered into a stud/mating agreement relating to the stud services of the horse Jet Black Patriot." R. Simon Interrogatories at 4. R. Simon's amended answer to Interrogatory No. 7 states: "Plaintiff will provide Defendants such information upon entry of an appropriate protective order. The listing of clients is included on the printed records from Robicheaux Ranch who handled the horse breeding sales." Amended Answers to J. Simon Interrogatories at 3.

Interrogatory No. 8 to R. Simon states:

Please state the terms of any and all stud/mating agreements entered into by you in relation to the horse Jet Black Patriot, including: a) the amount of compensation promised/paid in stud fees; b) the date of the agreement; c) the identity of any mare associated with the agreement; and d) the identity of any offspring resulting therefrom.

R. Simon Interrogatories at 4-5. R. Simon's amended answer to Interrogatory No. 8 states: "Plaintiff will provide Defendant such information upon entry of an appropriate protective order. The listing of clients is included on the printed records from Robicheaux Ranch who handled the horse breeding sales. This list also has whatever information I have concerning the terms of each sale." Amended Answers to R. Simon Interrogatories at 6.

Interrogatory No. 7 to J. Simon states: "Identify any and all parties with which you entered into a stud/mating agreement relating to the horse Jet Black Patriot." J. Simon

Interrogatories at 4.   J. Simon's amended response to interrogatory 7 states: "Plaintiff will provide Defendants such information upon entry of an appropriate protective order.  The listing of clients is included on the printed records from Robicheaux Ranch who handled the horse breeding sales."  Amended Answers to J. Simon Interrogatories at 8.

> Interrogatory No. 8 to J. Simon states:
>
> Please state the terms of any and all stud/mating agreements entered into by you in relation to the horse Jet Black Patriot, including: a) the amount of compensation promised/paid in stud fees; b) the date of the agreement; c) the identity of any mare associated with the agreement; and d) the identity of any offspring resulting therefrom.

J. Simon Interrogatories at 4-5.   J. Simon's amended answer to Interrogatory No. 8 states: "Plaintiff will provide Defendants such information upon entry of an appropriate protective order.  The listing of clients is included on the printed records from Robicheaux Ranch who handled the horse breeding sales.  This list also has whatever information I have concerning the terms of each sale."  Amended Answers to J. Simon Interrogatories at 6.

At the hearing, J. Windham and Taylor argued that, although the Simons produced a number of documents in response to Interrogatory Nos. 7 and 8, none of their interrogatory answers identify which documents are responsive to which interrogatories.  See Tr. at 31:4-32:14 (Linnenburger).  The Court said that, under rule 34, it generally requires parties to identify which documents are responsive to which requests -- for example, if someone has requested a category of documents, "then the response has to identify by Bates numbers or, if there's not Bates numbers being used, the individual documents with the requests."  Tr. at 32:18-24 (Court).  The Court explained that the Simons' counsel has a choice:

> [I]f he doesn't want to respond by putting the Bates numbers there, then he has to produce them as they're kept in the usual course of business.  And that means he's welcome to bring you to the ranch and show you the filing cabinets and say, "All the documents are there."

> But once he starts going through those documents and culling them and putting up a stack, then he's got to indicate by Bates label or some other way which fall into what category.

Tr. at 22:9-19 (Court).  The Court asked Taylor and J. Windham if that ruling for Interrogatory

Nos. 7 and 8 would satisfy them, and they said that it would.  <u>See</u> Tr. at 34:2-7 (Court).

Rule 33(d) states:

> **Option to Produce Business Records.**  If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> > **(1)**   specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> >
> > **(2)**   giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

As explained later in this Memorandum Opinion and Order, the Court will enter a

protective order to address the parties' confidentiality concerns.  As to the substance of the

Simons' answers to Interrogatory Nos. 7 and 8, the Court concludes that those answers are

insufficient.  If the Simons are relying on the rule 33(d) option of producing business records,

they must specify which documents are responsive to each interrogatory in sufficient detail to

allow the Defendants to readily locate those records.  If the parties are using Bates numbers, the

Simons must identify the documents on which they rely by numbers; if they are not using Bates

numbers, the Simons must identify the documents so specifically that there can be no dispute at

trial about what documents to which the Defendants are referring.  <u>See</u> <u>Aragon v. San Jose Ditch</u>

<u>Ass'n</u>, No. CIV 10-0563 JB/RHS, 2011 WL 5822727, at *5 (D.N.M. Oct. 18, 2011)(Browning,

- 52 -

J.)(making the same instructions where the Defendants failed to sufficiently identify the responsive documents).  The Court will not allow the Simons to rely on or introduce documents on this issue at trial, if they do not identify them in their interrogatory answers.  As currently written, however, the Simons' answers to Interrogatories Nos. 7 and 8 do not pass muster under rule 33(d).  Accordingly, the Simons must supplement their responses to those interrogatories to satisfy rule 33(d).

## V.     AS THE PARTIES ARE GOING TO ENTER INTO A PROTECTIVE ORDER, THE COURT WILL ORDER J. SIMON TO RESPOND TO REQUEST FOR PRODUCTION NOS. 2 AND 3.

As the parties have agreed to enter into a protective order, the Court will order J. Simon to respond to Request for Production Nos. 2 and 3.  Request for Production No. 2 to J. Simon states:  "Produce copies of your tax returns for the years 2007 through today."  J. Simon RFP at 2.  J. Simon's amended response to Request for Production No. 2 states: "Plaintiff will produce responsive documents in their possession, if any, upon the entry of an appropriate protective order and with the agreement Defendants will produce their tax returns as well."  Amended Responses to J. Simon RFP at 2.

Request for Production No. 3 to J. Simon states:

Produce copies of any and all bank statements for accounts owned by you and/or any business owned, in whole or in part, by you and/or your husband, and which are used by you in the conduct of business associated with the owning, racing, training, breeding or otherwise maintaining of horses for the years 2007 through today.

J. Simon RFP at 2.  J. Simon's amended response to Request for Production No. 3 states: "Plaintiff will produce responsive documents in their possession, if any, upon the entry of an appropriate protective order and with the agreement Defendants will produce their tax returns as well."  Amended Responses to J. Simon RFP at 2.

At the hearing, J. Simon asserted that, as long as there is an appropriate protective order in place, she has no objection to producing those responsive documents.  <u>See</u> Tr. at 38:7-12 (Dunn).  J. Simon added, however, that she is also entitled to the Defendants' tax returns and financial records.  <u>See</u> Tr. at 38:19-39:3 (Dunn).  The Court said that it would address issues with the Defendants' tax returns and financial records when and if they arise, and that, for the time being, would only order J. Simon to produce her responsive documents.  <u>See</u> Tr. at 39:4-8 (Court).

Turning to the issue of the protective order, the parties said that the main sticking point between them is which party would have the burden of establishing that information is or is not protected.  <u>See</u> Tr. at 39:16-44:18 (Linnenburger, Dunn).  For that provision, the Court said the parties would use a section from the sample protective order from page 753 of the fourth edition of the <u>Manual for Complex Litigation</u>, which says:

> If a party believes that a document designated or sought to be designated confidential by the producing party does not warrant such designation, the party shall first make a good-faith effort to resolve such a dispute with opposing counsel.  In the event that such a dispute cannot be resolved by the parties, either party may apply to the court or special master for a determination as to whether the designation is appropriate.   The burden rests on the party seeking confidentiality to demonstrate that such designation is proper.

Tr. at 64:22-65:10 (Court)(quoting <u>Manual for Complex Litigation</u> § 40.27 Confidentiality Order (4th ed. 2004))(internal quotation marks omitted).

The Court will provide the sample provision from the <u>Manual for Complex Litigation</u> to resolve the parties' remaining dispute over the protective order.  With that protective order in place, J. Simon has no outstanding objections to Request for Production Nos. 2 and 3, and, because the information that those requests seek is discoverable and no privilege protects it from

production, J. Simon must produce it.  Accordingly, the Court will order J. Simon to respond to

Request for Production Nos. 2 and 3.

## VI.   THE COURT WILL NOT ORDER R. SIMON TO RESPOND TO REQUEST FOR PRODUCTION NOS. 8 THROUGH 10, AND WILL DISMISS THE SIMONS' REMAINING CLAIMS FOR ATTORNEY'S FEES.

The Court will not order R. Simon to respond to Request for Production Nos. 8 through

10, and will dismiss the Simons' remaining claims for attorney's fees.  Request for Production

Nos. 8 through 10, and R. Simon's accompanying supplemental responses, are as follows:

> **REQUEST FOR PRODUCTION NO. 8:** All documents, records, or other tangible items, including electronic information, that you contend support any attorney's fees which you claim in your Original Complaint in this matter (Doc. 1).

> **AMENDED RESPONSE:** Plaintiffs do not seek the recovery of attorney[']s fees from the remaining Defendants including the propounder of this discovery.  A claim for attorney's fees was only sought against the government defendants who have now been dismissed.  Therefore, the information requested is not relevant to any claim and is not likely to lead to relevant evidence and furthermore the request invades the Attorney Client Privilege and the Attorney Work Product Privilege.

> **REQUEST FOR PRODUCTION NO. 9:** Produce a copy of any retention letter/agreement between you and Chad Dunn, Robert Fritz, and/or any law firm associated with said attorneys retained by you or [o]n your behalf with respect to any matters pertaining to this action, including, but not limited to, your efforts to intervene in any administrative actions against Defendant Heath Taylor, any writs submitted for consideration in the courts of the State of New Mexico, any prior lawsuits brought against Defendants, and this action.

> **AMENDED RESPONSE:** Plaintiffs do not seek the recovery of attorney[']s fees from the remaining Defendants including the propounder of this discovery.  A claim for attorney's fees was only sought against the government defendants who have now been dismissed.  Therefore, the information requested is not relevant to any claim and is not likely to lead to relevant evidence and furthermore the request invades the Attorney Client Privilege and the Attorney Work Product Privilege.

> **REQUEST FOR PRODUCTION NO. 10:** A copy of all invoices/bills Chad Dunn, Robert Fritz, and/or any law firm associated with said attorneys retained by you or in your behalf with respect to any matters pertaining to this

- 55 -

action, including, but not limited to, your efforts to intervene in any administrative actions against Defendant Heath Taylor, any writs submitted for consideration in the courts of the State of New Mexico , any prior lawsuits brought against Defendants, and this action.

**AMENDED RESPONSE:** Plaintiffs do not seek the recovery of attorney[']s fees from the remaining Defendants including the propounder of this discovery. A claim for attorney's fees was only sought against the government defendants who have now been dismissed. Therefore, the information requested is not relevant to any claim and is not likely to lead to relevant evidence and furthermore the request invades the Attorney Client Privilege and the Attorney Work Product Privilege.

Amended Responses to R. Simon RFP at 6-7.[6]

At the hearing, Taylor and J. Windham argued that, although the Simons indicated in their discovery responses that they are no longer pursuing that claim, there has been no formal order from the Court or notice from the Simons to that effect. See Tr. at 52:17-25 (Linnenburger). The Court asked the Simons whether they would seek attorney's fees from the remaining Defendants in the case, and the Simons responded that they would not. See Tr. at 53:4-6 (Court, Dunn). The Court said that it would deny the requests to compel R. Simon to respond to Request for Production Nos. 8 through 10, and dismissed the Simons' remaining claims for attorney's fees. See Tr. at 53:7-10 (Court). As the Simons represented at the hearing that they will no longer seek attorney's fees in this case, the information that Request for Production Nos. 8 through 10 seek is irrelevant. Accordingly, the Court will not order R. Simon to respond to those requests and will dismiss the Simons' remaining claims for attorney's fees.

## VII.   THE COURT WILL ORDER J. SIMON TO AMEND HER ANSWER TO INTERROGATORY NO. 14.

The Court will order J. Simon to respond to Interrogatory No. 14. Interrogatory No. 14 to J. Simon states: "Identify any and all communications between you and Defendants concerning

---

[6]Neither Taylor nor J. Windham have sought any documents from J. Simon regarding her claim for attorney's fees.

this lawsuit or the subject matter thereof, including: a) the nature of the communication; b) the date of the communication; c) the persons communicating; and d) the contents of the communication." J. Simon Interrogatories at 6.  J. Simon's amended answer to Interrogatory No. 14 is as follows: "This request is overly broad and unduly burdensome.  There has been hundreds, if not thousands of communications between Plaintiffs [and] Defendants, especially through counsel.   Plaintiff objects to being asked to identify every one of these communications."  Amended Responses to J. Simon RFP at 10.

At the hearing, Taylor and J. Windham argued that, although J. Simon's objection was that the Interrogatory seeks information that the attorney-client privilege protects, Taylor and J. Windham agreed to limit the request to communications between the parties.  See Tr. at 62:23-63:7 (Linnenburger).  J. Simon said that, if the request is limited to communications between the Plaintiffs and the Defendants, she would have no objection to amending her answer with that information.  See Tr. at 64:1-3 (Dunn).  With Taylor's and J. Windham's agreement that the request is limited to that information, the Court ordered J. Simon to appropriately amend her answer.  See Tr. at 64:8-9 (Court).  As J. Simon has asserted no objection to producing the communications between the Plaintiffs and the Defendants, and that information is discoverable and no privilege otherwise protects the information from discovery, the Court will order J. Simon to amend her answer to Interrogatory No. 14.

## VIII.   THE COURT WILL NOT ORDER THE DEFENDANTS TO PRODUCE THEIR RACING LICENSE OR DISCIPLINARY HISTORIES AT THIS TIME.

The Court will not order the Defendants to produce their racing license or disciplinary histories at this time.  At the hearing, Taylor and J. Windham said that, although there had been some issues relating to the Simons' answers to Interrogatories seeking information about their licenses and disciplinary issues in racing, Taylor and J. Windham believed that both Simons had

satisfactorily answered those Interrogatories.  See Tr. at 53:16-20 (Linnenburger).  There was

then a discussion about discovery requests for Vega's and Curtis' racing licenses and

disciplinary histories, and the Simons' requests for the Defendants' racing licenses and

disciplinary histories.  See Tr. at 57:2-58:25 (Linnenburger, Dunn).  The Defendants said that the

information that the Plaintiffs seek is irrelevant to their claims.   See Tr. at 58:21-25

(Linnenburger).  The Court said that, although it would not rule at this time on any Plaintiff's

requests for the Defendants' racing licenses and disciplinary histories, if it overruled the

Defendants' relevancy objection, the Defendants would have to try to obtain that information

directly from the relevant agencies rather than forcing the Plaintiffs to subpoena those agencies

at the outset.  See Tr. at 59:1-5 (Court).

> If, in fact, the agencies don't provide it, then the party that wants the information
> will need to subpoena it.  But . . . it sounds like this information is in the control
> of the licensee or the person disciplined. . . .   [I]f I overrule any relevancy
> objection, I'll require the plaintiffs to . . .  go to the disciplinary licensing agencies
> and secure that information with your request.

Tr. at 59:6-17 (Court).

Although the Simons have not brought any requests for the Defendants' disciplinary or

licensing histories before the Court, the Court thinks it will likely be more convenient for the

parties to first attempt to obtain their own histories before the party seeking the information has

to subpoena them from the agency or entity, which has that information.  If a person can merely

request his or her information and receive it, that information is within the person's custody or

control.  Cf. Simon v. Taylor, No. CIV 12-0095 JB/WPL, 2014 WL 6633917, at *34 (D.N.M.

Nov. 18, 2014)(Browning, J.)("Control is defined as the legal right to obtain documents upon

demand.").  If this initial request is unfruitful, however, the party seeking the information must

subpoena the agency or entity that possesses the information directly.

IX.   **THE SIMONS' SUPPLEMENTAL DISCOVERY RESPONSES ARE DUE TEN BUSINESS DAYS AFTER THEY RECEIVE THE TRANSCRIPT FROM THE COURT REPORTER.**

The Simons' supplemental discovery responses are due within ten business days after the parties receive the hearing transcript from Ms. Bean.  The parties agreed to this deadline at the hearing.  See Tr. at 67:6-15 (Linnenburger, Dunn, Court).  As the transcript was filed on CM/ECF on December 5, 2014, Taylor and J. Windham should have received the Simons' supplemental responses long ago.  If the Simons have not amended their discovery responses in accordance with the Court's rulings at the hearing, they must do so immediately.

**IT IS ORDERED** that the Defendant Taylor's Motion to Compel Plaintiff Janelle Simon to Fully Respond to His First Set of Interrogatories and Requests for Production, filed July 7, 2014 (Doc. 68), and Jerry Windham's Motion to Compel Plaintiff Richard Simon to Fully Respond to His First Set of Interrogatories and Requests for Production, filed July 7, 2014 (Doc. 69), are denied in part and granted in part.  Plaintiffs Janelle Simon and Richard Simon must verify their amended Interrogatory answers under oath, as rule 33(b)(3) of the Federal Rules of Civil Procedure require.  The Court will not order J. Simon to amend her answers to Interrogatory Nos. 2 and 3, because she has asserted that she has no additional information to provide.  The Court will order the Simons to identify which documents are responsive to Interrogatory Nos. 7 and 8, as rule 33(d) requires.  The Court will order J. Simon to respond to Request for Production Nos. 2 and 3.  The Court will not order R. Simon to respond to Request for Production Nos. 8 through 10, and will dismiss the Simons' remaining claims for attorney's fees.  Finally, the Court will order J. Simon to amend her answer to Interrogatory No. 14 to fully respond to that Interrogatory.  The Simons should have submitted their supplemental discovery

responses in accordance with the Court's rulings at the hearing months ago; if they have not, they must do so immediately.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Robert H. Fritz, III
Fritz Law Firm
Houston, Texas

--and--

Chad W. Dunn
Brazil & Dunn
Houston, Texas

     *Attorneys for the Plaintiffs*

Brian O'Toole
Brian O'Toole, P.C.
Austin, Texas

--and--

Billy R. Blackburn
Blackburn Law Office
Albuquerque, New Mexico

     *Attorneys for Defendants Heath Taylor, Jerry Windham, and Pat Windham*

Gary K. King
  Attorney General of New Mexico
Sally Galanter
  Assistant Attorney General
Albuquerque, New Mexico

     *Attorneys for Defendants Marty L. Cope, Arnold J. Rael, B. Ray Willis, Thomas Fowler,*
     *Larry Delgado, and the New Mexico Racing Commission*